**KAJIMA/VJB CONSTRUCTION SERVICES LLC**
Address: 395 West Passaic Street, Rochelle Park, NJ 07662



RECEIVED
AUG 1 2002
KAJIMA CONSTRUCTIC

SUBCONTRACT
Dated: January 9, 2001

SUBCONTRACTOR: **R & J CONSTRUCTION**
44-35 Austin Boulevard
Island City, New York
                11561

CONTACT: Joe Ferrara
PHONE:    (516) 432 - 6900
FAX:       (516) 432 - 6322

SUBCONTRACTOR for:   **CARPENTRY & DRYWALL**

ACCOUNT CODE:

PROJECT:               475 9th Avenue

LOCATION:           475 9th Avenue
                        New York, NY 10018

OWNER:                475 Ninth Avenue Associates LLC acting through its Managing
                        Member, Dermot Meridian, LLC

ARCHITECT/ENGINEER:  H. Thomas O'Hara Architect, PLLC

CONSTRUCTION MANAGER:  KAJIMA/VJB CONSTRUCTION SERVICES LLC under an
Agreement for Construction Management (dated as of December 21, 2001) ("CM Contract Date")

SUBCONTRACT PRICE: **$2,950,000.00**

RETAINAGE PERCENTAGE: Retainage Percent 10% TO 50% COMPLETE, FURTHER REDUCED
TO 5% @ 90% COMPLETE  IF APPROVED BY LENDER

Payment and Performance Bond Required
Bond Premium      [ ] Included in Price  [ x ] Not included in Price

*(The foregoing terms are incorporated into and more fully explained in the provisions that
follow:)*

KAJIMA/VJB Construction Services LLC, with its principal offices at 395 West Passaic Street,
Rochelle Park, NJ 07662, hereinafter "Construction Manager", and Names of Subcontractor, a(n)
Type of Subcontractor Business, with offices at the above address, and with its principal offices in
Location of Subcontractor, "Subcontractor", agree as follows:

    1.   Work. Subcontractor shall furnish all the labor, material, tools, equipment,

FINAL 1/8/02

1.     Work. Subcontractor shall furnish all the labor, material, tools, equipment, supervision, business administration and services necessary for or incidental to successfully prosecute and complete the work identified and described in Schedule A attached hereto (the "Work"), being a portion of the work required to be performed by the Construction Manager under the Construction Manager Contract (the "Contract" and/or "Contract Documents") between the Owner and Construction Manager as that term is defined in paragraph 1.4 of the Contract. The Work shall be performed by Subcontractor in an expeditious and economical manner; consistent with industry standards, lawful construction practices and the interests of the Owner. The Work shall be performed in a good and workmanlike manner strictly in accordance with the Contract Documents, listed in Schedule B and incorporated herein by reference.

(a)     The Contract:  Subcontractor shall be bound by all the terms and conditions of the Contract Documents and assumes all the obligations and responsibilities of Construction Manager to the Owner and Architect, including, but not limited to, the responsibility of safety for the Subcontractor's work, as stated therein, which are applicable to this Subcontract. All provisions of the Contract Documents required to be inserted or incorporated into this and other subcontracts, and all such terms, definitions, time limitations, obligations and provisions of the Contract Documents are hereby inserted and incorporated into this subcontract as if more fully set forth at length herein.

(b)     Conflicts:  Subcontractor hereby affirms that it has examined all Contract Documents, and agrees that it will not plead unfamiliarity with any of said Documents in connection with any dispute which may arise hereunder or in connection with any claim for extra compensation. The Subcontractor, where appropriate, agrees that if and when permitted by the Contract and this subcontract it shall enter into similar agreements with Sub-Subcontractors requiring the Sub-Subcontractors to assume all of the obligations and responsibilities of the Subcontractor to the Construction Manager pursuant to the Contract Documents for the Sub-Subcontractor portion of the work.

(c)     Union Labor: Subcontractor shall perform all work solely by employing craft workers represented by unions affiliated with the local and/or National Building and Construction Trades Council. AFL-CIO, and/or The Building and Construction Trade

FINAL 1/8/02

2

Department, AFL-CIO, and all such employment shall conform to traditional craft jurisdictions in the area (the "Labor Covenant"). All Sub-subcontracts if and when permitted by this Subcontract and the contract Documents shall expressly include the Labor Covenant. The Subcontractor shall also take all steps necessary to avoid labor disputes; and shall be responsible for any delays and damages to Construction Manager and/or Owner caused by such disputes caused by the Subcontractor. The Subcontractor shall ensure that it and any of its Sub-subcontractors comply with all instructions by Construction Manager relating to the ingress and egress of their employees, materialmen and suppliers to the Project and the Subcontractor shall direct that each Sub-subcontractor take all necessary steps to restrain and enjoin any illegal picketing, demonstrating, violence, or similar activity against Subcontractor or Sub-subcontractor at the Project. The Subcontractor agrees that if any provision of the Contract Documents conflicts with any agreement among members of a trade association, or with a union or labor council which regulates the work to be performed by a particular trade, the Subcontractor and/or its Sub-subcontractor shall reconcile such conflict without delay or damage to Owner and/or Construction Manager.

(d)     The Project: Subcontractor acknowledges that the Project shall consist of a 13-story new building structure with a single level below grade, totaling approximately 216,500 square feet. The Project includes a two-level parking structure consisting of approximately 25,000 square feet and a ground floor retail space consisting of 5,000 square feet.

(e)     The Schedule: The Owner has established Scheduling Requirements (The Project Schedule) that call for the Project to be substantially complete on or before April 30, 2003 (the date of substantial completion). An operational leasing center office on the premises plus up to four (4) model units (in accordance with Article 15.19 of The Contract) shall be completed and fully constructed on or before February 28, 2003. Based upon a commencement date of January 14, 2002, subject to receipt of the applicable building permits (the "Date of Commencement") the date of Final Completion shall be Friday, May 30, 2003.

2.     Price. Subject to all of the other provisions of this Subcontract, Construction Manager shall pay to Subcontractor for the due and full performance of the Work the Subcontract Price set forth above (the "Price"); except that if all or a portion of the Work is to be performed

FINAL 1/8/02

on a unit price basis, then the Price set forth shall be deemed an estimated total price for the Work and the actual Price shall be computed in accordance with the lump sum price(s), if any, and the unit prices set forth in Schedule C, based on actual quantities determined in accordance with the Contract Documents. Unit prices shall not be subject to adjustment because of any variation in actual quantities from those "estimated" or "approximated" in this Subcontract or the Contract Documents regardless of the amount of variation except insofar as such unit prices may be adjustable according to any specific provisions of this Subcontract or the Contract Documents. The Price shall not be increased or decreased on account of any changes in costs of any materials or labor or on account of changes in any governmental statutes or regulations, including, but not limited to, those relating to the payment of taxes.

3.    Progress Payments. As soon as practicable after the execution of this Subcontract, Subcontractor shall submit to Construction Manager a schedule of values of the various portions of the Subcontract Work, including quantities if required by Construction Manager, to enable Construction Manager to prepare a schedule of values for the entire Contract. Subcontractor's schedule shall be prepared in such form and supported by such data as the Architect/Engineer (identified above and hereinafter called "Architect") or Construction Manager may direct, and shall be subject to Construction Manager's approval. The total of scheduled values shall equal the Price and shall be divided in such manner as will facilitate progress payments to Construction Manager and Subcontractor. Each scheduled item shall include its proportionate share of Subcontractor's overhead and profit.

(a)    On or before the progress estimate date identified on Page 1 hereof, if any, but in no event later than the 25th day of each month, Subcontractor shall submit to Construction Manager an itemized written progress statement (Subcontractor Application for payment), utilizing AIA Form G702, 703 or on such form or in such format and supported by such data as Construction Manager may require, certifying and showing in complete detail the percentage of total work to be performed under the Subcontract which has been completed and the monies due and the value of said work completed as of the period beginning on the 1st day of the current month and ending on the last day of the current month for which the application for payment is being submitted (such date being the current progress date) Said Subcontractor shall be based

FINAL  1/8/02

4

on Subcontractor's approved schedule of values and on the conditions for payment under the Contract, including without limitation conditions relating to material and equipment delivered to and suitably stored on the site and title to the materials and retainage, and equipment. Each such progress statement/certification shall also show the amount of all previous payments to Subcontractor and the amount of current retainage, and shall include evidence satisfactory to Construction Manager and submitted on such forms or in such formats as Construction Manager may require demonstrating that Subcontractor has paid all persons supplying labor, materials, equipment or services in connection with the Work.

(b)     Subcontractor's progress certification shall be used in the preparation of Construction Manager's application for payment to Owner under the Contract and shall show in complete detail all monies due under the Subcontract exceeding retainage. Construction Manager shall pay to Subcontractor, upon receipt of payment from the Owner, and only after receipt of payment from the Owner, an amount equal to the value of Subcontractor's completed Work, but only to the extent allowed and paid by Owner on account of Subcontractor's Work, less all previous payments and less the amount of current retainage. "Previous payments" shall include all amounts theretofore paid on account of the Work, all charges for materials or services furnished by Construction Manager and properly chargeable to Subcontractor and all costs incurred by Construction Manager properly chargeable to Subcontractor as obligations of Subcontractor. "Current retainage" shall be calculated by multiplying the value of the Work completed and qualified for payment by the retainage percentage of Ten (10%) percent. Under no circumstances shall the Construction Manager be required to pay the Subcontractor a sum greater than the amount received by the Construction Manager from the Owner on account of the Subcontract Work.

(c)     Construction Manager shall have the right at any time to withhold all or part of any progress or final payment to Subcontractor for any amounts due Construction Manager including but not limited to defective work not remedied or for any other breach of this Subcontract by Subcontractor, or if it becomes apparent that the cost to complete the uncompleted Work would exceed the unpaid balance of the Price. No payment either progress or final, to Subcontractor by Construction Manager shall be construed to be an acceptance of any defective or improperly performed work.

FINAL 1/8/02

from the Subcontractor to the extent reasonably necessary to protect the Construction Manager and/or the Owner, if in the Construction Manager's and/or Architect's opinion, the representations made by the Subcontractor, based upon observations made by the Construction Manager and/or Architect at the site, are inaccurate and that to the best of the Construction Manager's and/or Architect's knowledge, information and belief, the Work has not progressed to the point claimed/and certified by the Subcontractor. The Construction Manager may also withhold payment in whole or in part, from the Subcontractor if the Construction Manager or the Architect cannot certify that the quality of the work performed by the Subcontractor is in accordance with the Contract Documents including the Plans and Specifications.

(g)    The Construction Manager will notify the Subcontractor of its position regarding the status of the Work performed by the Subcontractor and if the Subcontractor and Construction Manager cannot agree on a revised amount the Construction Manager will promptly process a Certificate for Payment for which the Construction Manager can certify a payment for the value of the Subcontractor's work.

(h)    The Construction Manager may also withhold payment to a Subcontractor for work previously performed by the Subcontractor and certified by the Construction Manager, to such extent as may be necessary in the Construction Manager's opinion to protect the Construction Manager and/or Owner from loss for which the Subcontractor is responsible, including, but not limited to loss resulting from acts and omissions of the Subcontractor, its employees, agents and/or other persons or entities performing portions of the Subcontractor's Work for or on behalf of the Subcontractor.

(i)    The Construction Manager may also withhold payment from the Subcontractor for work previously performed and certified by the Construction Manager to the Owner, to the extent as may be necessary to protect the Owner and/or the Construction Manager from loss, which in the opinion of the Construction Manager, the Subcontractor is responsible including, but not limited to, loss arising and/or resulting from:

(1)    Defective Work performed by the Subcontractor but not remedied;

(2)    third-party claims filed or reasonable



evidence indicating probable filing of such claims unless security acceptable to the Construction Manager is provided by the Subcontractor;

(3)    failure of the Subcontractor to make payments properly to its Sub-Subcontractors for labor, material or equipment;

(4)    reasonable evidence that the Subcontract Work can not be completed for the unpaid balance of the Subcontract Price;

(5)    damage to the Construction Manager or another Subcontractor;

(6)    reasonable evidence that the Subcontract Work is not and/or will not be competed within the time periods set forth in the Subcontract and/or the Construction Manager's progress schedule; or

(7)    persistent failure to carry out the Work in accordance with the Contract Documents.

4.    <u>Retainage</u>. Retainage of ten (10%) percent of monies otherwise payable to the Subcontractor shall be withheld from the payments due the Subcontractor.

5    <u>Payment by Owner by and through Construction Manager</u>. Payment by the Owner through the Construction Manager with respect to any Subcontractor application for payment shall not constitute approval or acceptance of any item of Subcontract Work included therein. Subcontractor shall promptly pay each Sub-Subcontractor, materialman and/or supplier, upon receipt of payment from the Construction Manager out of the amount paid to the Subcontractor on account of such Sub-Subcontractor's portion of the Work, the amount to which said Sub-Subcontractor, materialman or supplier is entitled, reflecting percentages actually retained from payments to the Subcontractor on account of such Sub-Subcontractor's portion of the Work  The Subcontractor shall, by appropriate agreemen  with each Sub-Subcontractor, materialman or supplier require each Sub-Subcontractor to make payments to each of its Sub-Subcontractors in a similar manner.

FINAL 1/8/02

8



6.    Lien Waivers, Disbursement Back-Up Data.  No later than seven (7) days prior to the date of the submission of each completed Project Application for Payment, the Subcontractor shall furnish to the Construction Manager a statement accounting, on an itemized basis, for the disbursement of all funds previously paid by the Construction Manager.  Such statement shall be accompanied by copies of lien waivers from the Subcontractor, each Sub-Subcontractor, and materialman acknowledging receipt of payments authorized pursuant to this Agreement which have been made by the Subcontractor.  Receipts covering payments by the Subcontractors, materialmen and other parties furnishing labor and materials in connection with performance of the Work shall be accompanied by a partial waiver of mechanic's lien for all Work which was included in the previous Project Application for Payment for which payment was made by the Owner either to the Construction Manager or directly to the Subcontractors or other parties.  As a condition for receipt of Final Payment, all parties shall submit a full and final waiver of mechanic's lien rights for all sums due under their respective Sub-Subcontracts, materials contracts or this Agreement.

7.    Final Payment.  A final payment, consisting of the unpaid balance of the Price, shall be made within forty-five (45) days after the last of the following to occur:

(a) full completion of the Work by Subcontractor, including punch list;

(b) final acceptance of the work by the Architect and Owner;

(c) final payment by Owner to Construction Manager under the Contract;

(d) the furnishing of satisfactory evidence by Subcontractor to Construction Manager on such forms or in such format as Construction Manager may require that Subcontractor has paid in full all persons furnishing labor, materials or services in connection with the Work, and that neither Subcontractor nor any person claiming under or through Subcontractor has filed or has the right to maintain a lien or other claim against the Owner, Construction Manager, Construction Manager's surety, if any, or the Project premises;

(e) the return of all drawings, plans and specifications to Construction Manager or Architect when required by the Contract Documents;

(f) the delivery of all guaranties, warranties, bonds, instruction manuals,

FINAL 1/8/02



performance charts, diagrams, as-built drawings and similar items with respect to the Work;

(g) a General Release in favor of Construction Manager and the Owner; and

(h) a Consent of Surety from Subcontractor's surety, if any. The completion of the foregoing listing of items is deemed to be a condition precedent to Construction Manager's obligation to make such final payment as well as a condition precedent to Subcontractor's right to receive such final payment.

8.    Payment of Labor, Supplies and Material.  Subcontractor will receive the payments made by the Owner to the Construction Manager on account of Subcontractor's Work and Subcontractor will hold such payments in trust to be applied first to the payment of any persons furnishing labor, materials, or services for the Work and the amount due or to become due to each such person. If Subcontractor shall fail to pay promptly when due, for all labor, services, and materials furnished in connection with the performance of the Work, Construction Manager may, after five (5) days written notice to Subcontractor, pay the amount of such liabilities and recover the amount thereof from Subcontractor, directly, or by the application of any portion of the Price then, or thereafter becoming, due hereunder. Subcontractor will, at the request of Construction Manager, provide partial lien or claim waivers and affidavits on such forms or in such format as Construction Manager may require from all persons furnishing labor, materials, equipment or services to the effect that they have been paid in full.

9.    Time of Completion.

(a)    Substantial Completion Date. It is anticipated that construction shall start in or about early January 2002 and substantial completion shall be achieved on or before April 30, 2003  Such dates may only be changed in writing signed by the Owner and/or Construction Manager or as otherwise provided in this Subcontract. Each Substantial Completion Date shall be subject to approval by the Owner.

(b)    Leasing Office.  Subject to the city of New York issuing a Temporary Certificate of Occupancy on or before February 28, 2003, an operational leasing center office on the premises plus up to four (4) model units (in accordance with the provision of 15.19 of the Contract) shall be completed and fully constructed

FINAL 1/8/02



(c)    Based upon a commencement date of January 14, 2002 of the Construction Manager's Work, the date of Final Completion shall be May 30, 2003.

(d)    Delays.  Promptly after the occurrence of any delay in the Work, the Subcontractor shall furnish to the Construction Manager a written statement setting forth in detail the reason for the delay and, with a suitable breakdown by trades and work classifications, the Subcontractor's reasonable estimate of any increase in the Cost of the Subcontract Work attributable thereto and of any change(s) in any Substantial Completion Date(s) attributable thereto and of any change(s) in any Substantial Completion Date(s) attributable to such delay.

(e)    Notice of Delay.  Should the Subcontractor be or anticipate being delayed or disrupted in performing the Subcontract Work hereunder for any reason, the Subcontractor shall promptly and in no event more than seven (7) days after the commencement or discovery of any condition, whichever is later, which is causing or is threatening to cause such delay or disruption notify the Construction Manager in writing of the effect of such condition upon the progress schedule then in effect, stating why and in what respects the condition is causing or is threatening to cause a delay, provided, however, that notwithstanding the above, if such delay or disruption, or anticipated delay or disruption, should be the result of any change or anticipated change in the Subcontractor's financial condition, the Subcontractor shall notify the Construction Manager forthwith of such cause or anticipated cause.  Failure to comply strictly with this notice requirement shall be sufficient cause to deny the Subcontractor any request for relief arising from a delay, including a time extension and to require the Subcontractor to conform to the progress schedule then in effect.

(f)    Extension of Time.  An extension of time under the progress schedule then in effect may be granted by the Construction Manager, subject to the provisions hereof, upon written application by the Subcontractor to the Construction Manager.  An application for an extension of time under the progress schedule then in effect must set forth in detail the nature of each cause of delay to the performance of the Subcontract Work, the date or dates upon which each cause of delay began and ended and the number of days of delay attributable to each such cause  After the application is submitted, the Construction Manager shall supply any other data that the Owner or the Architect may request. Failure by the Subcontractor to submit a written application as required herein, within seven (7) calendar days after the end of a delay or delays

FINAL 1/8/02

11

giving rise to such application shall constitute a waiver by the Subcontractor of any right to a time extension.

(g)     Completion of the Work and its several parts within the time allotted or reasonably contemplated under the Contract is of the essence of this Subcontract.  By execution of this Agreement, the Subcontractor confirms that the time period between commencement and the date of substantial completion is a reasonable period for performing the Subcontract work. Therefore, Subcontractor agrees: (1) to provide at the Project site the materials, equipment, labor and supervision necessary to begin the Work upon Construction Manager's order to do so, (2) to perform the Work and all parts thereof promptly, diligently and in such order and sequence as Construction Manager may direct to assure the efficient, expeditious and timely prosecution of the entire work under the Contract, and (3) to furnish sufficient forces, supervision, equipment and materials, at such times and for such periods, as will result in progress according to the approved progress schedule of Construction Manager or any modification thereof.

(h)     The Owner and/or the Construction Manager reserves the right to modify any such progress schedule with respect to the required sequence or duration of the Work or any portion thereof, and Construction Manager makes no representation that Subcontractor will be able to commence, prosecute or complete the Work in accordance with any progress schedule.

(i)     Subcontractor shall furnish any information requested by the Owner and/or Construction Manager required for scheduling, monitoring or expediting the Work.

(j)     Subcontractor shall keep itself fully apprized of the status of the work under the Contract at all times and any failure to do so shall not form the basis for a claim by Subcontractor against Construction Manager and/or Owner.

(k)     Subcontractor shall promptly let all subordinate contracts and purchase orders; shall immediately notify Construction Manager of same, and shall submit the names of subordinate contractors and material suppliers for approval or comment.

(l)     Subcontractor shall furnish to Construction Manager all necessary information required for expediting and monitoring the Subcontractor's Work, and shall provide Construction Manager access to its subordinate contractors and material suppliers for the purpose of verifying or expediting their performance, and if the Work is, or will likely be, delayed by their nonperformance or delay, Subcontractor shall reimburse Construction Manager and/or

FINAL 1/8/02

12

Owner for any expenses required to secure or remedy their performance.

(m)     Subcontractor further agrees to make no claims against Construction Manager if the schedule or schedules furnished from time-to-time by the Owner through the Construction Manager is or are not adhered to, it being understood that Construction Manager will endeavor to expedite the construction as rapidly as possible and in that endeavor may prepare schedules which may not be adhered to and that, further job conditions and the rate of performance of other subcontractors, suppliers and other prime contractors, if any, may necessitate changes in schedules from time to time.

(n)     Accordingly, at the request of Construction Manager, Subcontractor shall perform certain parts of the Work before other parts, add extra manpower or order overtime labor in order to comply with the progress schedule of the Work, all without any increase in the Subcontract price (unless otherwise specifically provided in the scope of Work). Subcontractor shall be liable for all direct and consequential damages arising out of any failure to perform the Work in accordance with the terms and provisions of the Subcontract.

10.     Extensions of Time. If for reasons beyond its control Subcontractor shall be materially delayed at any time in the progress of the Work under such circumstances as would entitle Construction Manager to an extension of time or other relief under the Contract, Subcontractor shall be entitled to seek a corresponding extension of time for completion of the Work hereunder; provided that Subcontractor shall have filed with Construction Manager written claim for such extension or relief that complies with the requisites for making a claim under the Contract and within seven (7) calendar days of the event giving rise to the delay to permit Construction Manager to file such a claim against Owner for an extension or other relief under the Contract.

(a)     In the event Subcontractor's performance of this Subcontract is delayed or interfered with by acts or omissions of the Owner, Construction Manager or other subcontractors, Subcontractor may request an extension of time for the performance of this Subcontract as hereinabove provided, but shall not be entitled to any increase in the Subcontract Price or to damages or additional compensation as a consequence of such delays or interference except to the extent that the Contract entitles Construction Manager to compensation therefore and then

FINAL 1/8/02

13

only to the extent of any amounts that Construction Manager, on behalf of Subcontractor, recovers from owner for such delays or interference.

(b)    Further, if Subcontractor shall be materially delayed by wrongful act or omission of Construction Manager, the time for completion of the Work shall be extended for a period equal to the reasonably estimated period of delay as determined by Construction Manager.

(c)    Anything herein to the contrary notwithstanding, no extension of time shall be granted unless a written notice of delay therefore shall be presented to Construction Manager within forty-eight (48) hours after the commencement of the delaying event or condition and a claim for extension of time submitted by Subcontractor to the Construction Manager within 7 days thereafter in accordance with the procedure outlined in paragraph 9.

(d)    The extension of time provided herein shall be Subcontractor's sole and exclusive remedy for any delay, and Subcontractor shall have no claim for damages against Construction Manager by reason thereof.

(e)    No claim for a time extension due to weather conditions will be considered unless the weather conditions had an adverse effect on the scheduled construction and only those days up to a maximum aggregate of ten (10) working days shall qualify for an extension.

11.    Changes.  Construction Manager may from time to time, without invalidating the Subcontract or any bond(s) given hereunder, order extra and/or additional work, deletions, or other modifications to the Work, such changes to be effective only upon written order of Construction Manager.  If such change is made by or in any manner results from a change, revision or requirement of the Architect or Owner, then any adjustment to the Price or to the time for completion of the Work shall be made or claimed solely in accordance with the applicable provisions of this Subcontract and the Contract.

(a)    If the provisions of the Contract require the submission of a priced proposal in response to any such change, revision or requirement and Subcontractor fails to submit such proposal in the form and within the time specified, Subcontractor shall be

FINAL 1/8/02

14



conclusively bound by such adjustment as the Construction Manager and/or Owner may thereafter determine is appropriate.

(b)    Notwithstanding any inability to agree upon any adjustment or the basis for an adjustment, Subcontractor shall, if directed by Construction Manager, nonetheless proceed in accordance with the order, and the Price and time of completion shall be adjusted in accordance with the foregoing.

(c)    Upon proposal by the Owner of a Change in the Work whether initiated by Owner or by a claim presented by a Subcontractor, the Construction Manager shall, as soon as practicable after receipt of such proposal (or, if formal drawings are required, within fourteen (14) calendar days of receipt of such drawings), furnish to the Owner, a written statement setting forth in detail, with a suitable breakdown by trades and work classifications, the Subcontractor's Cost of the Work (including 15% for the Subcontractor's Overhead and Profit for the job contractor at the tier actually performing the changed work), any increase or decrease in the Project Construction Cost and any change(s) in any Substantial Completion Date(s) attributable to the proposed Change in the Work. If, after reviewing such costs, the Owner desires to implement the Change in the Work, a formal Change Order, which shall constitute a modification of the Contract Documents, shall be prepared by the Construction Manager, approved and executed by the Owner and delivered by the Construction Manager to the appropriate Subcontractor for execution. The Project Construction Cost and the applicable Substantial Completion Date(s) shall thereby be adjusted. If the Subcontractor identified on page 1 hereof, does not actually perform such change work, it shall only receive a mark up of 8% on the cost of the work performed by its Subcontractor.

(d)    The Construction Manager shall evaluate costs of the Change Order as presented by the Subcontractor and advise the Owner's Representative and the Owner of any modifications required thereto. If the Owner and Subcontractor(s) are unable to agree on adjustments to the Construction Cost and/or Substantial Completion Date(s), the Owner shall nevertheless be entitled to issue a Change Order leaving out the disputed adjustment(s), and the Construction Manager shall prepare such Change Order for execution by the Owner and direct the appropriate Subcontractor to carry out the Work. With respect to any disputed adjusted items the parties shall follow the non-binding resolution/arbitration process contained in paragraph

FINAL 1/8/02

15

8.2.2 of the Contract

(e)    If Construction Manager directs Subcontractor to perform Work as part of this Subcontract, which Subcontractor believes is not included herein, then Subcontractor shall advise Construction Manager in writing within 48 hours of Subcontractor's receipt of said direction to proceed, setting forth in detail the reasons for the Subcontractor's contention. Pending further advice from the Construction Manager, the Subcontractor shall not proceed with the Work in dispute.

12. Termination. In addition to the provisions for termination specified above and under Paragraph 26, Default, Construction Manager may terminate all or any portion of the Work of this Subcontract, without cause, upon five (5) calendar days written notice to Subcontractor. In such event, Subcontractor shall be paid, subject to the appropriate provisions of this Subcontract relating to progress and final payments, the value of the Work performed up to the date of termination less previous payments plus an equitable disposition of materials in progress and the reasonable cost of demobilization not to exceed five (5%) percent Under no circumstances, however, shall Construction Manager be liable for anticipated profits on work not performed or materials and equipment not delivered and incorporated in the Work.

(a)    Should the Owner suspend its agreement with the Construction Manager or any part thereof which includes the Subcontractor's Work, the Construction Manager shall notify the Subcontractor and upon the issuance of said Notification the Subcontractor shall immediately suspend the Subcontractor's Work. In the event of the Owner's suspension, the Construction Manager's liability to the Subcontractor shall be limited to the extent of the Construction Manager's recovery on the Subcontractor's behalf under the Contract documents. The Construction Manager agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of the Owner's termination and/or suspension of the Work and to permit the Subcontractor to prosecute the claim, in the name of the Construction Manager, for the use and benefit of the Subcontractor, or assign the claim to the Subcontractor.

(b)    Upon the termination of the Construction Manager by the Owner, and in

FINAL 1/8/02

16

accordance with the terms and conditions in the Construction Manager's agreement with the Owner, the Construction Manager assigns to the Owner the Construction Manager's rights under the Subcontract. This contingent assignment of the Subcontract to the Owner is effective when the Owner has accepted the assignment of the Subcontract by notifying the Subcontractor in writing. This contingent assignment is subject to the prior rights of a surety that may be obligated under a bond provided by or on behalf of the Construction Manager, if any. Subcontractor consents to such assignment of the Subcontract and agrees to be bound to the assignee by the terms and conditions of this Subcontract.

13.    <u>Relationships</u>. Subcontractor shall be bound by the decisions of the Architect with respect to the quality and quantity of the Work, meaning of the Contract Documents, acceptability of persons or organizations performing the Work and other matters set forth in the Contract Documents, to the same extent that Construction Manager may be bound thereby. Subcontractor's Work shall conform to any additional specifications, drawings, or explanations furnished by the Architect for the purpose of detailing and illustrating the Work. As used in this Subcontract, the word "Architect" shall designate the architect, engineer or other comparable person designated as the Owner's representative in the relevant context of the Contract Documents, which representative shall generally be the Architect/Engineer identified on Page 1 hereof.

(a)    Construction Manager shall have the right to direct the prosecution of the Work and to coordinate such Work with the work of others; and Construction Manager shall have with respect to Subcontractor the same rights and powers as the owner has reserved to itself with respect to Construction Manager for the performance of the applicable portions of the Contract. Subcontractor shall cooperate with, and shall not delay, impede, or otherwise impair the work of others participating in the construction of the Project.

(b)    If Subcontractor is damaged by the act of the Owner or other occurrence, for which act or occurrence the Contract affords benefits and remedies solely to Construction Manager, then Subcontractor shall be derivatively entitled to the benefits to be achieved by the pursuit of such remedies, as Subcontractor's interest may appear; provided, however, Construction Manager shall not be required to file any claim or take any action against Owner on

FINAL 1/8/02

17

behalf of Subcontractor unless Subcontractor shall provide adequately for the payment of, and shall pay for, all costs and expenses, including attorney's fees, that may be incurred by Construction Manager in proportion to the amount of Subcontractor's claim, in the pursuit of such remedies. Construction Manager shall not be required on behalf of Subcontractor to file any claim or take any action against person other than Owner, nor to file any claim or take any action against any party whatsoever (including the Owner) that is not asserted in good faith or that would unreasonably extend the date for a substantial final payment under the Contract. It is agreed that the claim of Subcontractor against Construction Manager for the acts of the Owner is limited to the rights of Construction Manager against owner and when such rights have been exhausted, Subcontractor's claim is settled.

14.    <u>Assignment</u>. Subcontractor shall not assign, transfer, or otherwise dispose of this Subcontract or any part thereof including all or any portion of the Work, nor assign any monies due or to become due hereunder, except with the prior written consent of Construction Manager. Any assignment of this Subcontract consented to by Construction Manager shall not operate to relieve Subcontractor of its primary responsibility to Construction Manager for the due and full performance hereof, and Subcontractor shall be liable to Construction Manager for all acts and omissions of Subcontractor's subcontractors and assignees.

(a)    Any assignment of this Subcontract or monies under it without the prior written consent of Construction Manager will be void and of no effect. Not withstanding any other provision herein, Subcontractor shall consent to a transfer (assignment) of this Subcontract to the Owner or its Lender as set forth in the Contract.

15    Unless otherwise indicated on Page 1 hereof, Subcontractor, at its own expense, shall obtain from a commercial surety acceptable to Construction Manager separate bonds: (a) for the due and complete performance of Subcontractor's obligations hereunder (performance bond), and (b) for the timely payment of all charges for labor, services, and materials furnished for the prosecution of the Work (payment bond) Each such bond shall be for a penal sum equal to one hundred percent (100%) of the Subcontract Price; shall be provided by a surety licensed in the appropriate jurisdiction where the Work is to be performed and listed in the current US FINAL 1/8/02

Department of Treasury Circular 570 with an underwriting limitation specified therein consistent with the face amount of the bonds; shall be executed on forms provided by and in a manner satisfactory to Construction Manager, and shall be delivered to Construction Manager within seven (7) days after the execution hereof. If, in accordance with the indication on Page 1 hereof, the premium expense for such bonds is not included in the Subcontract Price, then Subcontractor shall submit to Construction Manager the actual surety's invoice for such bonds. Upon presentation of satisfactory bonds, Construction Manager shall pay the lesser of either the invoice amount or other such bond premium amount as may be stated elsewhere in this Subcontract. At Construction Manager's option, such payment may be made to Subcontractor or directly to the surety.

(a)     If, according to the foregoing provisions, Subcontractor is not required to furnish such bonds, Subcontractor shall submit to Construction Manager a current financial statement; and Construction Manager reserves the right at any time to require Subcontractor to furnish such bonds, but at Construction Manager's expense. If Subcontractor fails at any time to obtain and furnish a bond, such failure will constitute a material breach by Subcontractor, entitling Construction Manager to proceed under the provisions of paragraph 26 entitled Default, hereof.

16.     Indemnification.  To the fullest extent permitted by law, the Subcontractor hereby agrees to indemnify the Construction Manager, Owner, the Owner's parent company, its partners, affiliated and related entities and its and their respective employees, partners, principals, officers, directors and shareholders, Owner's Representative, Architect and Project Managers (the "Indemnitees") against, and hold each of them harmless from, and pay the full amount of, all Loss-And-Expense, whenever asserted or occurring, which any Indemnitee may suffer, incur or pay out, or which may be asserted against any Indemnitee in whole or in part, by reason of, or in connection with, the following:

(a)     any bodily injury, sickness, disease or death of or to any person or any damage to or destruction of any property occurring in connection with, or arising out of, or resulting from, acts or omissions of the Subcontractor its Sub-Subcontractors, or their respective employees or its breach of its obligations under this Agreement; or

FINAL 1/8/02

19



(b)    any act, error or omission of the Subcontractor in connection with its performance of its services pursuant to any claim asserted, or lien or notice of lien filed, by any Subcontractor or any other person against the Construction Manager and/or Owner in connection with the Work or the Project by reason of the failure of the Subcontractor or any of its employee(s) to comply with any obligation of the Subcontractor under this Agreement.

(c)    The Subcontractor, at its sole expense, shall defend, with counsel reasonably acceptable to the Construction Manager, any and all Legal Proceedings commenced against any Indemnitee concerning any matter which is covered by any indemnity under this Section of this Agreement. The Subcontractor shall deliver to the Construction Manager copies of documents served in such Legal Proceeding and, whenever requested, by the Construction Manager, shall advise as to the status of such Legal Proceeding. If the Subcontractor fails to defend diligently and in a timely manner any such Legal Proceeding, the Construction Manager shall have the right, but not the obligation, to defend the same at the Subcontractor's expense. The Subcontractor shall not settle any such Legal Proceeding without the Construction Manager's prior written consent unless the effect of such settlement shall be to release all Indemnities from all liability with respect to such legal Proceeding (and all claims and liabilities asserted therein).

(d)    Additionally, to the fullest extent permitted by law, Subcontractor shall indemnify, defend, save and hold the Owner, the Owner's parent company, its partners, affiliated and related entities and its and their Construction Manager, and Architect (excluding with respect to the Architect, claims arising out of (i) the preparation or approval of maps, drawings, opinions, reports, survey, Change orders, designs or specifications, or (ii) the giving of or the failure to give directions or instructions by the Architect, its agent or employees, provided such giving or failure to give is the primary cause of the injury or damage), and their respective partners, officers, directors, employees and anyone else acting for or on behalf of any of them (herein collectively called "Indemnities") harmless from and against all liability, damage, loss, claims, demands and actions of any nature whatsoever (including attorney's fees and disbursements) which arise out of or are connected with, or are claimed to arise out of or be connected with

(1) The performance of the Work by Subcontractor, or any act or omission

of Subcontractor;



(2)  Any accident or occurrence which happens, or is alleged to have happened, in or about the place where the Work is being performed or in the vicinity thereof (a) while Subcontractor is performing the Work, either directly or indirectly through a sub-subcontractor or material agreement, or (b) while any of Subcontractor's property, equipment or personnel are in or about such place or the vicinity thereof by reason of or as a result of the performance of the Work; or

(3)  The use, misuse, erection, maintenance, operation of or failure of any machinery or equipment (including, but not limited to, scaffolds, derricks, ladders, hoists, rigging supports, etc.) whether or not such machinery or equipment was furnished, rented or loaned by the Owner or Construction Manager or their officers, employees, agents, servants or others, to Subcontractor.

(e)     Without limiting the generality of the foregoing, such defense and indemnity includes all liability, damages, loss, claims, demands and action on account of personal injury, death or property loss (including loss of use) to any Indemnitee, any of Indemnitees' employees, agents, subcontractors or sub-subcontractors, licensees or invitees, or other subcontractors or sub-subcontractors, their employees, agents, sub-subcontractors, licenses or invitees or to any other persons, whether based upon, or claimed to be based upon, statutory (including, without limiting the generality of the foregoing, workmen's compensation), contractual, tort or other liability of any Indemnitee, subcontractor, sub-subcontractor or any other persons  In addition, the liability, damages, loss, claims, demands and actions indemnified against shall include all liability, damage, loss, claims, demands and actions for trademark, copyright or patent infringement, for unfair competition or infringement of any other so-called "intangible" property rights, for defamation, false arrest, malicious prosecution or any other infringement of personal or property rights of any kind whatever or which arise out of any failure of Subcontractor to discharge its duties specified in the Contract Documents, including, without limitation, this Subcontract.

(f)     In the event more than one subcontractor is connected with an accident or occurrence covered by this indemnification, then all of such subcontractors shall be jointly and severally responsible to the Indemnitees for indemnification and the ultimate responsibility among such indemnifying subcontractors for the loss and expense of any such indemnification

shall be settled by separate proceedings and without jeopardy to any Indemnitee. The provisions of the indemnity provided for herein shall not be construed to indemnify any Indemnitee for its own negligence if not permitted by law or to eliminate or reduce any other right of indemnification which Owner, Construction Manager or Architect has by law. Subcontractor expressly understands and agrees that any performance bond or insurance protection required by any provision of the Contract Documents, or otherwise provided by Subcontractor, shall in no way limit the responsibility to indemnify, save and hold harmless and defend the Indemnitees as herein provided.

      (g)    Notwithstanding the above, wherever there is a provision in the applicable law governing this Subcontract making void and unenforceable any such indemnification of an Indemnitee hereunder where such Indemnitee is negligent or at fault, in whole or in part, then and in any event such indemnification shall apply only to the extent permitted by such applicable law but nothing herein set forth shall be deemed to preclude the indemnification of an Indemnitee hereunder form any of the foregoing damages caused by, arising out of, resulting from, or occurring in connection with the negligence or any other fault of a party other than the Indemnitee, whether or not the Indemnitee is partially negligent or at fault. Subcontractor's obligation hereunder shall not be limited by the provisions of any workmen's compensation or similar act.


      17.    **[Note: Schedules may need to be specified]** **Insurance.** Subcontractor shall maintain and pay for insurance coverage of the types and with the minimum limits set forth in Schedule _ attached hereto. Such coverage shall be maintained in form and with companies acceptable to Construction Manager, Architect, and Owner, and shall, notwithstanding Schedule ___, meet the applicable requirements imposed under the Contract or by any governmental authority having jurisdiction over the Work. Subcontractor shall name all Indemnitees as Additional Insureds. If Subcontractor fails at any time to secure and maintain any insurance coverage required hereunder, such failure will constitute a material breach by Subcontractor, entitling Construction Manager to proceed under the provisions of Article 26, Default, hereof. Subcontractor shall furnish Construction Manager certificates of the insurance required hereunder and each policy of insurance shall provide for thirty (30) days notice to Construction

FINAL 1/8/02

Manager prior to cancellation. Construction Manager may at any time require Subcontractor to reaffirm the maintenance of such coverage.

(a)    Subcontractor shall determine the adequacy, scope, limits, terms and applicability to Subcontractor's Work of any builder's risk or fire insurance, if any, which may be provided or maintained by Construction Manager or Owner. Subcontractor shall be responsible for providing any such insurance or supplemental insurance it may desire. In the event of a loss for which an Owner's or Construction Manager's builder's risk or fire insurance policy, if any, provides coverage for Subcontractor's Work, and a recovery from such insurance is subsequently secured, Construction Manager or Owner shall have sole responsibility and discretion for the allocation of such recovery. The initiation or pendency of a claim or recovery under such insurance, if any, shall not be cause for Subcontractor to delay or suspend the performance of any obligation under this Subcontract. Except when and to the extent specifically covered by such insurance, if any, which the Owner or Construction Manager may maintain, Subcontractor shall be responsible for any desired coverage against damage or loss to its own material, facilities, tools, equipment, plant, scaffolds, bracing, and similar items.

(b)    Subcontractor shall furnish Construction Manager a copy of each lost time accident report made to Subcontractor's insurance carriers and shall cooperate with insurers to facilitate the adjustment of any claim or demand arising out of operations within the scope of the Work. To the extent that Subcontractor maintains insurance coverage, Subcontractor hereby waives subrogation of claims against Construction Manager, Owner, and their agents or employees. Nothing contained in this Article 14 shall relieve the Subcontractor of any indemnity obligations required elsewhere in the Subcontract.

18.    <u>Safety and Security</u>. Subcontractor shall execute the Work under this Subcontract in a prudent, cautious and safe manner; continuously maintain a safe and secure workplace; employ at all times whatever means may be reasonably required to insure the safety and avoid the endangerment of all persons and property of itself and others; and comply with any specific safety and security-related requirements of the Owner, the Contract or the Contract Documents.

(a)    Subcontractor represents that, for the purposes of the Occupational Safety and Health Act (OSHA) of 1970 (including any state counterparts in those states authorized to

FINAL 1/8/02

23

enforce OSHA laws) and including all standards and regulations which have been or shall be promulgated by the governmental authorities which administer such Act, it is an 'employer' under the definition contained in such Act and, as an employer, is obligated to observe the requirements of that Act independent of any contractual relationship; and that, with respect to the Work and all activities associated in any manner with the Work or the Project, it will so comply with the requirements of that Act and all other requirements, standards, orders, regulations, or ordinances issued by any authority having jurisdiction over the Work. Subcontractor shall observe and comply with all laws and regulations relating to the shipment, possession, handling, labeling, packaging, storage, use, exposure, discharge, and disposal of any hazardous substance including any laws and regulations relating to record-keeping and publication, posting or communication of hazard information.

(b)    Subcontractor shall observe and comply with all environmental protection laws and regulations applicable to the Project site or the Work, including those relating to the use of water, the discharge or disposal of wastes, the control of drainage, and the protection of vegetation, wildlife, habitats, or surroundings. Subcontractor shall also observe and comply with any environmental commitments made by Owner or Construction Manager in securing any permit or authorization for the Project.

(c)    Subcontractor shall correct all unsafe conditions and recommend corrective action where any Subcontractor violates safety standards.

(d)    The Subcontractor shall perform (or cause to be performed) any work and furnish and install and materials or equipment necessary during endangering life or property.

19.    Liens. As an integral part of the process by which Subcontractor shall request and receive progress and final payments under this Subcontract, Subcontractor shall submit with each such payment request a waiver and release of liens, on such forms and in such manner as Construction Manager may require, corresponding to the work performed and labor, materials, equipment, and services furnished for which Subcontractor requests payment. Subcontractor shall defend, indemnify and hold harmless Construction Manager and Owner from the operation and effect of any lien or encumbrance. If any such lien or encumbrance is claimed, Subcontractor shall forthwith discharge same; provided, however, if such lien or encumbrance be contested in good faith by Subcontractor, Subcontractor shall so notify Construction Manager,

24

and Construction Manager shall have the right upon forty-eight (48) hours notice to require that Subcontractor furnish a suitable bond, escrow or other reasonable assurance of payment satisfactory to Construction Manager. Subcontractor, at its sole cost and expense shall unconditionally and promptly do all things necessary to cause the discharge by payment, bonding or otherwise of all liens or other encumbrances filed or in any way asserted by its sub-subcontractors and/or suppliers at any tier within twenty one (21) days after the earlier discovery or receipt of written notice thereof and any failure to do so shall constitute a default under this Subcontract.

(a) Subcontractor further agrees that, in the event any suit be brought against the Construction Manager and/or its surety under the terms of any bonds (if any) furnished by Construction Manager to the Owner by person(s) providing services, labor and/or materials to Subcontractor, its sub-subcontractors and/or suppliers at any tier, then, and in that event, Subcontractor agrees to fully indemnify and hold harmless Construction Manager from any and all claims, liability, lawsuits, actions, costs, counsel fees, expenses, damages, judgments or decrees, by reason thereof, irrespective of whether or not the persons aforementioned had any contractual relationship with Subcontractor.

(b) If and only to the extent permitted by law and required by the Contract, Subcontractor, for itself and for all persons furnishing labor, materials, equipment, or services in connection with the Work, waives and releases all mechanic's liens or right of liens or claims, now existing or hereafter arising for labor, materials, equipment or services furnished under this Subcontract or upon any monies due or to become due Construction Manager.

20.    Labor. All Work shall be performed solely by Subcontractor and Sub-Subcontractors employing craft workers represented by unions affiliated with the local and/or national Building and Construction Trades Council, AFL-CIO, and/or The Building and Construction Trades Department, AFL-CIO, and such employment shall conform to traditional craft jurisdictions in the area (the "Labor Covenant"). All Sub-Subcontracts issued by the Subcontractor shall expressly include the Labor Covenant To the fullest extent permitted by applicable law, Subcontractor agrees to comply with and to be bound by any labor agreements executed by Construction Manager and applicable to the Work under this Subcontract. Should

FINAL 1/8/02

Subcontractor's Work hereunder or the work under the Contract be stopped or interfered with by reason of strikes, picketing or other disputes, Subcontractor shall immediately resolve such dispute and terminate all such work stoppage and interference  Any failure by Subcontractor to comply with such labor agreements or to terminate such stoppage or interference shall entitle Construction Manager to proceed under the provisions of paragraph 26, Default, hereof.

(a)    Subcontractor shall remove or cause to be removed from the Project any employee, including supervision, whose presence is determined by Construction Manager or Owner to be detrimental to the orderly prosecution of the Work.

(b)    Subcontractor shall comply with all wage rates, reporting requirements and all other employer obligations established under the Contract and by applicable laws and regulations.

(c)    Subcontractor agrees to provide sufficient competent workmen, equipment and materials for prompt and diligent, prosecution of the Work and shall not directly or indirectly employ workmen, equipment or materials which are likely to cause strikes, slowdowns, or similar interruptions of such Work.  Should Subcontractor employ workmen who cause or participate in strikes, slowdowns or similar interruptions of the Work, any and all such interruptions by such workmen shall be deemed within the control of Subcontractor and shall fully entitle Construction Manager to the rights and remedies provided for in Paragraph 26 of this Subcontract

21.    Taxes  Subcontractor shall pay, or cause to be paid, when due, all taxes of every kind now or hereafter imposed, levied, or assessed by any governmental authority with respect to the Work, including taxes for labor, materials, and equipment utilized in connection therewith and expressly including all sales, use, personal property, excise, and payroll taxes. Subcontractor, upon request of Construction Manager shall furnish satisfactory evidence of such payments.

22.    Defective or Damaged Work.  Subcontractor shall provide safe, sufficient, and proper facilities at all times for the inspection of the Work by the Construction Manager, Owner, and Architect, or their representatives.  Subcontractor shall, commencing within twenty-four (24)

FINAL 1/8/02

hours after receiving written notice from Construction Manager, promptly take down and remove all portions of the Work which Construction Manager or Architect shall condemn as unsound, improper, or in any way failing to conform to the Contract or the Contract Documents and shall make good all Work and the work of others damaged or destroyed thereby, all at Subcontractor's expense  If Subcontractor shall not remove and replace such work within a reasonable time, Construction Manager may remove and replace the same at the expense of the Subcontractor.

      (a)     Subcontractor specifically agrees that it is fully responsible for the protection of all Work hereunder until full completion and final acceptance by the Owner and that it will make good or replace at no expense to Construction Manager or Owner any damage to or loss of its Work from any cause whatsoever which occurs prior to said final acceptance.

     23.    <u>Miscellaneous</u>.  Subcontractor shall, at its own expense:

      (a)     obtain all necessary permits and licenses and comply with all statutes, ordinances, rules, regulations, and orders of any governmental or quasi-governmental authority, applicable to the performance of the Work; and be responsible for and correct any violations thereof;

      (b)     prepare and submit to Construction Manager all necessary shop and erection drawings, plans, and diagrams; furnish all necessary samples, catalogue cuts, laboratory and inspection reports and engineering calculations; and perform specified tests and erect required mock-ups, all in sufficient time to permit the orderly and timely prosecution of the Work, and prepare and submit any as-built drawings, operation and maintenance manuals, warranties and all other documentation required under the Contract Documents;

      (c)     verify all control lines and benchmarks and notify Construction Manager of any discrepancy before proceeding with the Work; be responsible for all required layout, positioning and placement of all elements of the Work; familiarize itself with all Contract Documents and shop, fabrication and installation details of other trades and divisions of work, particularly those affecting or affected by the Work under this Subcontract; and verify all dimensions and take all measurements for any portion of the Work which is dependent for proper size or installation upon coordination or fit with other work or conditions without reliance on

FINAL  1/8/02

27

representations or indications of Construction Manager, the Contract Documents or other subcontractors. Should the proper and accurate performance of the Work hereunder depend upon the proper and accurate performance of other work not covered by this Subcontract, Subcontractor shall carefully examine such other work, determine whether it is in fit, ready and suitable condition for the proper and accurate performance of the Work hereunder, use all means necessary to discover any defects in such other work, and before proceeding with the Work hereunder, report promptly any such improper conditions and defects to Construction Manager, in writing and allow Construction Manager a reasonable time to have such improper conditions and defects remedied.

(d)     remove, at least weekly or more often as directed by Construction Manager, all rubbish and surplus and waste material resulting from the prosecution of the Work and all tools, scaffolding and equipment not currently required in the prosecution of the Work;

(e)     comply with the reasonable recommendations of Owner's, Construction Manager's and Subcontractor's insurance carriers or their associations;

(f)     repair all damage to the work or property of others caused by Subcontractor, its subcontractors, or their agents or employees;

(g)     furnish its own temporary facilities, including the cost of all utilities used or consumed by Subcontractor and proportionate cost of operating hoisting equipment furnished by Construction Manager, if used by Subcontractor; and

(h)     furnish adequate and competent supervision and direction and be fully liable and responsible for the safe and proper care, use and custody of any crane, hoisting equipment or other machinery, tools or equipment, with or without an operator, which Construction Manager may from time to time furnish, loan or make available to Subcontractor for Subcontractor's use or benefit; and defend and indemnify Construction Manager in accordance with the provisions of Article 16 for any injury, death or property damage which may occur during or as a result of such use or custody, including (but not limited to) any negligent act or omission of any operator.

24.     Warranty. Subcontractor warrants that the Work shall be free from defects and shall conform to and meet the requirements of the Contract and the Contract Documents

FINAL 1/8/02

28

Subcontractor warrants that all materials and equipment included in such Work will be new and, unless otherwise specified, that such Work will be of good quality, free from improper workmanship and defective materials, in conformance with the Contract and Contract Documents, and fit for the intended use and purpose. Subcontractor agrees to make good, to the satisfaction of the Owner, any portion or portions of the Work which prove defective within one year (or such longer period as may be specified in the Contract or Contract Documents) from the date of acceptance of the Project by Owner; provided, however, that this obligation to make good shall in no respect diminish the duration of aforesaid warranty which shall exist for the longest period provided by law, or exclude other warranties provided by law or the Contract Documents.

24.1    The Subcontractor shall deliver to the Construction Manager, Owner, and Architect all as-built drawings, warranties and guarantees from materialmen and others.

24.2    Any and all warranties and guarantees called for by the Contract Documents shall also be for the benefit of the Owner, and such warranties and guarantees shall so provide. It is understood and agreed that any and all warranties and guarantees required to be furnished by any Sub-subcontractors are and shall also be deemed made to and directly for the benefit of the Owner.

24.3    The provisions of this Article 24 shall survive and continue beyond the Final Payment and any completion date(s) or any termination of this Subcontract.

25.    <u>Patents.</u> Subcontractor agrees to defend, indemnify and save harmless Construction Manager and Owner from and against loss, liability, damage, cost or expense on account of infringement or alleged infringement of any patent rights by reason of the Work or any materials, equipment, process or techniques used therein by Subcontractor. Subcontractor shall pay all license fees and royalties pertaining to the Work.

26    <u>Default.</u> Should Subcontractor at any time:

(a)    fail to supply the labor, materials, equipment, supervision and other things required of it in sufficient quantities and of sufficient quality to perform the Work with skill, conformity, promptness and diligence required hereunder;

(b)    cause stoppage or delay of or interference with the Project work;



(c)      become insolvent; or

(d)      fail in the performance or observance of any of the covenants, conditions, or other terms of this Subcontract, then in nay such event, each of which shall constitute a default hereunder by Subcontractor, Construction Manager shall, after giving Subcontractor notice of default and forty-eight (48) hours within which to cure, have the right to exercise any one or more of the following remedies

(i)      require that Subcontractor utilize, at its own expense, overtime labor (including Saturday and Sunday work) and additional shifts as necessary to overcome the consequence of any delay attributable to Subcontractor's default;

(ii)      remedy the default by whatever means Construction Manager may deem necessary or appropriate, including, but not limited to, correcting, furnishing, performing or otherwise completing the Work, or any part thereof, by itself or through others (utilizing where appropriate any materials and equipment previously purchased for that purpose by Subcontractor) and deducting the cost thereof (plus an allowance for materials and equipment previously purchased for that purpose by Subcontractor) and deducting the cost thereof (plus an allowance for administrative burden equal to fifteen percent (15%) of such costs) from any monies due or to become due to Subcontractor hereunder;

(iii)      terminate Subcontractor's performance under this Subcontract, without thereby waiving or releasing any rights or remedies against Subcontractor or its sureties, and by itself or through others take possession of the Work, and all materials, equipment, facilities, plant, tools, scaffolds and appliances of Subcontractor relating to the Work, for the purposes of completing the Work and securing to Construction Manager the payment of its costs (plus an allowance for administrative burden equal to fifteen percent (15%) of such costs) and other damages under the Subcontract and for the breach thereof, it being intended that Construction Manager shall, for the stated purposes, be the assignee of and have a security interest in the property described above to the extent located on the Project site (and Construction Manager may at any time file this Subcontract as a financing statement under applicable law), and

(iv)      recover from Subcontractor all losses, damages, penalties and fines, whether actual or liquidated, direct or consequential, and all reasonable attorneys' fees

FINAL 1/8/02



suffered or incurred by Construction Manager by reason of or as a result of Subcontractor's default.

(e)    The foregoing remedies shall be considered separate and cumulative and shall be in addition to every other remedy given hereunder or under the Contract Documents, or now or hereafter existing at law or in equity.

(f)    After completion of the Work by the exercise of any one or more of the above remedies and acceptance of the Work by Architect and payment therefor by Owner, Construction Manager shall promptly pay Subcontractor any balance of the Price. In the event a termination of Subcontractor's performance under this Subcontract for default is subsequently determined by a court of competent jurisdiction to be unjustified, then such termination shall be deemed to have been a termination by Construction Manager without cause under the provisions of Article 9, Termination, and the compensation due Subcontractor, if any, shall be determined accordingly. Except as limited by this Subcontract, Subcontractor shall have the rights and remedies available at law or in equity for a breach of this Subcontract by Construction Manager. Any default by Construction Manager shall be deemed waived unless Subcontractor shall have given Construction Manager written notice thereof within seven (7) days after the occurrence of such default. Subcontractor shall not be entitled to stop the Work or terminate this Subcontract on account of Construction Manager's failure to pay an amount claimed due hereunder (including changed or extra work) so long as Subcontractor shall not have adequately substantiated the amount due or so long as a good faith dispute exists as to the amount due. Subcontractor shall not be entitled to stop the Work on account of a default by Construction Manager unless such default shall have continued for more than seven (7) days after Construction Manager's receipt of written notice of such default from Subcontractor.

27.    Disputes. In the event of any dispute or claim by Subcontractor hereunder, notice in writing of such claim shall be given to Construction Manager no later than seven (7) days following the event, decision or other action out of which the claim arises, or such less r period as may be required under the Contract. Such notice shall describe such dispute or claim in detail. If Subcontractor fails to provide such notice, the claim or dispute and all monetary and other relief associated therewith shall be deemed as waived and abandoned by Subcontractor.

FINAL 1/8/02

(a)    If any such claim or dispute as to which notice is given by the Subcontractor as above provided involves any aspect of the Contract or the correlative rights and duties of the Owner as defined therein then Subcontractor's rights as above described, then Construction Manager agrees to initiate such proceeding on Subcontractor's behalf upon Subcontractor's written request; provided, however, Subcontractor, and its sureties, shall be bound to Construction Manager to the same extent that Construction Manager is bound to Owner by the Contract and by any decisions or determinations made under the Contract by any board, court or arbitration panel. Subcontractor shall be responsible for the prosecution of any such proceeding at its own cost and expense and Construction Manager will support and cooperate with Subcontractor in such prosecution.

(b)    If any such claim or dispute as to which notice is given by the Subcontractor as above provided does not involve the Contract then it shall be determined as follows: Construction Manager shall render a written decision thereon within thirty (30) days from receipt of the written notice of such claim or dispute. If Subcontractor does not accept or agree with such decision (or any part thereof) it shall so notify Construction Manager within seven (7) days and the parties shall exert reasonable and good faith efforts to reach a satisfactory resolution. If such efforts are unsuccessful, then the parties shall submit the dispute to mediation. Unless the parties mutually agree otherwise, the mediation shall be in accordance with the Construction Industry Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof. If the dispute is not resolved pursuant to the mediation, it shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has not been resolved by mediation. In no event shall the demand for

FINAL 1/8/02

32

arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitation. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable laws in any court having jurisdiction thereof. During such arbitration proceedings, the full range of discovery procedures provided by the Federal Rules of Civil Procedure shall be available to each party.

(c)    The pendency of any such claim or dispute shall not suspend or stay in any manner the obligations under this Subcontract and Subcontractor shall continue the Work hereunder without interruption.

(d)    The prevailing party in any dispute arising out of or relating to this Agreement or that is resolved by arbitration shall be entitled to recover from the other party reasonable attorneys' fees, cost and expenses incurred by the prevailing party in connection with such arbitration.

At the option of the Construction Manager, the Subcontractor may be made a party to any arbitration to which the Construction Manger is made a party pursuant to the terms of the Contract.

28.    Notices. All written notices provided for in this Subcontract shall be deemed given only when personally delivered, given by telegram or electronic facsimile transmission with written confirmation copy following, mailed postage prepaid, or dispatched prepaid by courier or delivery service to the parties at the addresses set forth on Page 1 of this Subcontract. Either party may, from time to time, by notice as herein provided, designate a different address to which notices to it shall be sent.

29.    Inspection of Site. Subcontractor acknowledges that its authorized representatives have personally inspected the Project site and satisfied itself as to the physical condition thereof and the locally prevailing labor, transportation, utilities, weather and storage conditions.

30.    General.

(a)    As regards the subject matter hereof, this writing including documents

FINAL  1/8/02

33

incorporated herein by reference, constitutes the entire agreement between the parties.

(b)     This Subcontract shall not be modified or amended in any way except (i) by writing executed by both parties, or (ii) as otherwise expressly provided herein.

(c)     This Subcontract and the Contract Documents are intended to supplement and complement each other and shall where possible be thus interpreted. If, however, any provision of this Subcontract irreconcilably conflicts with a provision of the Contract Documents, the provision imposing the greater duty on Subcontractor shall govern.

(d)     The failure of Construction Manager to insist in any one or more instances upon a strict compliance with any provision of this Subcontract, or to exercise any option herein conferred, including but not limited to provisions relating to insurance, bonds, and default, shall not be construed as a waiver or relinquishment of the right of Construction Manager thereafter to require compliance with such provision or to exercise such option, but such provision or option will remain in full force and effect.

(e)     All matters relating to the validity, performance, or interpretation of this Subcontract shall be governed by the law of the State in which the Project is located.

(f)     If any of the provisions of this Subcontract shall contravene or be invalid under the laws of the jurisdiction where it is to be performed, such contravention or invalidity shall not invalidate the whole Subcontract or any other provision thereof, but the contravening or invalid provision or portion of such provision shall be deemed amended to conform with the governing law but in such a manner as to most nearly reflect the intent of the parties.

(g)     The rights of the parties shall be construed pursuant to the laws of the State in which the Project is located, notwithstanding any contrary provision of the General Contract unless specifically stated otherwise in a modification to this Subcontract. Subcontractor agrees that it will not commence, whether in law or in equity, against Construction Manager or its sureties or bonds, if any, because of any matter whatsoever arising out of the alleged breach of performance of this Subcontract, in any courts other than those in the county in which the Work is located. All other options with respect to the selection of a place of filing are hereby waived, provided however, this shall not constitute a waiver by a party against whom any such suit, action or proceeding is filed of any statutory right which such party may have to transfer or remove such suit, action or proceeding to the federal (or state) court in that district. It is further

FINAL 1/8/02

34

agreed that each party shall, and hereby does waive trial by jury in any such suit, action or proceeding.

(h)     This Subcontract shall be binding upon and shall inure to the benefit of the parties hereto and their heirs, successors and assigns.

(i)     Where the context requires, the neuter shall include the masculine and feminine and the singular shall include the plural, and *vice versa*.

(j)     No action shall lie or be maintained by Subcontractor or anyone claiming under Subcontractor upon any claim arising out of or based upon this Subcontract or the performance of the Work thereunder, or by reason of any act or omission or requirement of the Owner or Construction Manager or its representatives, unless such action be commenced within one year after the date of filing by the Owner of the Certificate of Completion and Acceptance of the Work performed under the General Contract or the receipt by the Owner of a temporary Certificate of Occupancy, or the receipt of final payment by Subcontractor, whichever is the earlier.

31.     <u>Owner Termination/Suspension</u> Should the Owner suspend its agreement with the Construction Manager or any part thereof which includes the Subcontractor's Work, the Construction Manager shall notify the Subcontractor and upon the issuance of said Notification the Subcontractor shall immediately suspend the Subcontractor's Work. In the event of the Owner's suspension, the Construction Manager's liability to the Subcontractor shall be limited to the extent of the Construction Manager's recovery on the Subcontractor's behalf under the Contract documents. The Construction Manager agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of the Owner's termination and/or suspension of the Work and to permit the Subcontractor to prosecute the claim, in the name of the Construction Manager, for the use and benefit of the Subcontractor, or assign the claim to the Subcontractor.

Upon the termination of the Construction Manager by the Owner, as provided, and in accordance with the terms and conditions in the Construction Manager's agreement with the Owner, the Construction Manager assigns to the Owner the Construction Manager's rights under the Subcontract This contingent assignment of the Subcontract to the Owner is effective when the Owner has accepted the assignment of the Subcontract by notifying the Subcontractor in writing. This contingent assignment



is subject to the prior rights of a surety that may be obligated under a bond provided by or on behalf of the Construction Manager, if any. Subcontractor consents to such assignment of the Subcontract and agrees to be bound to the assignee by the terms and conditions of this Subcontract.


**IN WITNESS WHEREOF,** the Parties hereto have executed this Subcontract on or as of the date appearing on the first page hereof.


**CONSTRUCTION MANAGER:**

KAJIMA/VJB CONSTRUCTION
SERVICES LLC

By: _____

Title: _____


**SUBCONTRACTOR:**

R+S Construction Corp

By: _____

Title: _____


**WITNESS:**

By: _____

Title: _____



**EXHIBIT "A"**          **DATED: March 1, 2001**
**475 9ᵀᴴ Avenue**          **DRAWING LIST**

| DRAWING # | DESCRIPTION | LATEST DATE |
|---|---|---|
| | | |

**Specifications dated December 10, 2001**

**ARCHITECTURAL:**

| | | |
|---|---|---|
| A-00 | Cover Sheet | |
| A-001 | General Notes | 12/10/01 |
| A-002 | General Notes & Multiple Dwelling | 12/10/01 |
| A003 | Abbreviations, Legends & Symbols | |
| A-004 | Site Plan | 12/10/01 |
| Z-01 | Zoning Notes & Plot Plan | 12/10/01 |
| Z-02 | Height & Setbacks Regulations & Lot Coverage | |
| Z-03 | Zoning Notes & Dormer Diagram | 12/10/01 |
| Z-04 | Zoning Plan, Diagram & Deductions | 12/10/01 |
| Z-05 | Zoning Plan, Diagram & Deductions | 12/10/01 |
| Z-06 | Zoning Plan, Diagram & Deductions | 12/10/01 |
| Z-07 | Zoning Plan, Diagram & Deductions | 12/10/01 |
| | | |
| A-100 | 1/8" Cellar Floor Plan | 12/10/01 |
| A-101 | 1/8" First Floor Plan | 12/10/01 |
| A-102 | 1/8" Second Floor Plan | 12/10/01 |
| A-103 | 1/8" 3rd Through 9th Floor | 12/10/01 |
| A-104 | 1/8" 9th Floor Plan | 12/10/01 |
| A-105 | 1/8" 10th & 11th Floor Plan | 12/10/01 |
| A-106 | 1/8" 12th & 13th Floor Plan | 12/10/01 |
| A-107 | 1/4" Roof Plan | 12/10/01 |
| A-108 | 1/4" 2nd – 13ᵗʰ Floors South Wing Plan | 12/10/01 |
| A-109 | 1/4" 2nd Floor North Wing Plan | 12/10/01 |
| A-110 | 1/4" 2ⁿᵈ Floor North East Plan | 12/10/01 |
| A-111 | 1/4" 2nd Floor South East Plan | 12/10/01 |
| A-112 | 1/4" 3rd - 8th Floor North Wing Plan | 12/10/01 |
| A-113 | 1/4" 3rd - 8th Floor North East Plan | 12/10/01 |
| A-114 | 1/4" 3rd - 8th Floor South East Plan | 12/10/01 |
| A-115 | 1/4" 9th Floor North Wing Plan | 12/10/01 |
| A-116 | 1/4" 9th Floor North East Plan | 12/10/01 |
| A-117 | 1/4" 9th Floor South East Plan | 12/10/01 |
| A-118 | 1/4" 10th & 11th Floor North Wing Plan | 12/10/01 |
| A-119 | 1/4" 10th & 11th Floor North East Plan | 12/10/01 |
| A-120 | 1/4" 10th & 11th Floor South East Plan | 12/10/01 |
| A-121 | 1/4" 12th & 13th Floor North Wing Plan | 12/10/01 |
| A-122 | 1/4" 12th & 14th Floor North East Plan | 12/10/01 |
| A-123 | 1/4" 12th & 14th Floor South East Plan | 12/10/01 |



EXHIBIT "A"                                          DATED: March 1, 2001
475 9TH Avenue                            DRAWING LIST

| DRAWING # | DESCRIPTION | LATEST DATE |
|---|---|---|
| **ARCHITECTURAL** – continued | | |
| A-200 | North Elevation | 12/10/01 |
| A-201 | East Elevation | 12/10/01 |
| A-202 | South Elevation | 12/10/01 |
| A-203 | West Elevation | 12/10/01 |
| A-204 | Courtyard South & West Elevations | 12/10/01 |
| A-205 | Courtyard North Elevation | 12/10/01 |
| A-206 | Bulkhead Elevation | 12/10/01 |
| A-207 | Canopy Elevations & Details | 12/10/01 |
| A-208 | Entrance Light Fixture Details & Elevations | 12/10/01 |
| A-300 | East/West Building Sections | 12/10/01 |
| A-301 | North/South Building Sections | 12/10/01 |
| A-302 | Parking Ramp Section | 12/10/01 |
| A-303 | Bulkhead Sections | 12/10/01 |
| A-400 | Typical Wall Section | 12/10/01 |
| A-401 | Typical Wall Section | 12/10/01 |
| A-402 | Wall Sections | 12/10/01 |
| A-403 | Wall Sections | 12/10/01 |
| A-404 | Misc. Exterior Details | 12/10/01 |
| A-405 | Misc. Exterior Plans & Section Details | 12/10/01 |
| A-406 | Entrance Plan Details & Sections | 12/10/01 |
| A-407 | Window Schedule | 12/10/01 |
| A-408 | Window Section Details | 12/10/01 |
| A-409 | Window Section Details | 12/10/01 |
| A-500 | Partition Types | 12/10/01 |
| A-501 | Finish Schedule | 12/10/01 |
| A-502 | Door Schedule & Details | 12/10/01 |



EXHIBIT "A"                                          DATED: March 1, 2001
475 9TH Avenue                                          DRAWING LIST

| DRAWING # | DESCRIPTION | LATEST DATE |
|---|---|---|
| **ARCHITECTURAL** – continued | | |
| A-503 | Bathroom Plans & Elevations | 12/10/01 |
| A-504 | Bathroom Plans & Elevations | 12/10/01 |
| A-505 | Kitchen Plans & Elevations | 12/10/01 |
| A-506 | Kitchen Plans & Elevations | 12/10/01 |
| A-506A | Kitchen Section Detail & Schedule | 12/10/01 |
| A-507 | Lobby & Mail Room Elevations | 12/10/01 |
| A-508 | Laundry Room, Gym & Trash Room Elevations | 12/10/01 |
| A-509 | Stair Details | 12/10/01 |
| A-510 | Core & Stair Details | 12/10/01 |
| | | |
| A-701 | 1st Floor Reflected Ceiling Plan | 12/10/01 |
| A-702 | 2nd Floor Reflected Ceiling Plan | 12/10/01 |
| A-703 | 3rd - 8th Floor Reflected Ceiling Plan | 12/10/01 |
| A-704 | 9th Floor Reflected Ceiling Plan | 12/10/01 |
| A-705 | 10th & 11th Floor Reflected Ceiling Plan | 12/10/01 |
| A-706 | 12th & 13th Floor Reflected Ceiling Plan | 12/10/01 |
| | | |
| A-800 | Cellar Column Locations | 12/10/01 |
| A-801 | 1st Floor Slab Opening | 12/10/01 |
| A-802 | 2nd Floor Slab Opening | 12/10/01 |
| A-803 | 3rd thru 8th Floor Slab Opening | 12/10/01 |
| A-804 | 9th Floor Slab Openings | 12/10/01 |
| A-805 | 10th & 11th Floor Slab Openings | 12/10/01 |
| A-806 | 12th & 13th Floor Slab Openings | 12/10/01 |

**STRUCTURAL:**

| | | |
|---|---|---|
| S-001 | General Notes | 12/11/01 |
| S-101 | Foundation Sections | 12/11/01 |
| S-102 | Typical Foundation Details | 12/11/01 |
| S-103 | Foundation Sections & Details | 12/11/01 |



**EXHIBIT "A"**
**475 9ᵀᴴ Avenue**

**DATED: March 1, 2001**
**DRAWING LIST**

| DRAWING # | DESCRIPTION | LATEST DATE |
|---|---|---|

**STRUCTURAL: - continued**

| | | |
|---|---|---|
| S-104 | Foundation Sections & Details | 12/11/01 |
| S-105 | Foundation Sections & Details | 12/11/01 |
| S-106 | Foundation Sections & Details | 12/11/01 |
| S-107 | Foundation Sections & Details | 12/11/01 |
| S-108 | Foundation Sections & Details | 12/11/01 |
| S-201 | Column Schedule | 12/11/01 |
| S-202 | Column Schedule | 12/11/01 |
| S-202A | Column Schedule | 12/11/01 |
| S-203 | Shear Wall Plan | 12/11/01 |
| S-204 | Shear Wall Plan | 12/11/01 |
| S-204A | Shear Wall Plan | 12/11/01 |
| S-205 | Shear Wall SW2 Plans | 12/11/01 |
| S-206 | Shear Wall SW3 Plan & Elevations | 12/11/01 |
| S-207 | Shear Wall SW4 Plan & Elevations | 12/11/01 |
| S-301 | 1st   Floor Plan | 12/11/01 |
| S-302 | 2nd   Floor Plan | 12/11/01 |
| S-303 | 3rd through 8th Floor Plan | 12/11/01 |
| S-303A | 9th   Floor Plan | 12/11/01 |
| S-304 | 10th Floor Plan Transfer | 12/11/01 |
| S-305 | 11th  Floor Plan | 12/11/01 |
| S-306 | 12th  Floor Plan | 12/11/01 |
| S-306A | 13th  Floor Plan | 12/10/01 |
| S-307 | Main Roof Floor Plan | 12/11/01 |
| S-308 | EMR Roof Floor Plan | 12/11/01 |
| S-401 | Typical Concrete Details | 12/11/01 |
| S-402 | Typical Concrete Details | 12/11/01 |
| S-403 | Typical Concrete Details | 12/11/01 |
| S-404 | Concrete Sections & Details | 12/11/01 |
| S-405 | Concrete Sections & Details | 12/11/01 |
| S-406 | Concrete Sections & Details | 12/11/01 |
| S-450 | Masonry Sections & Details | 12/11/01 |

**MECHANICAL:**

| | | |
|---|---|---|
| M-1 | Cellar Mechanical Plan | 12/10/01 |
| M-2 | 1st Floor Mechanical Plan | 12/10/01 |
| M-3 | 2nd Floor Mechanical Plan | 12/10/01 |
| M-4 | 3rd - 9th  Floor Mechanical Plan | 12/10/01 |
| M-5 | 10th - 11th Floor Mechanical Plan | 12/10/01 |
| M-6 | 12th -13th Floor Mechanical  Plan | 12/10/01 |



| EXHIBIT "A" | | DATED: March 1, 2001 |
|---|---|---|
| 475 9TH Avenue | | DRAWING LIST |

| DRAWING # | DESCRIPTION | LATEST DATE |
|---|---|---|

**MECHANICAL: - continued**

| | | |
|---|---|---|
| M-7 | Mechanical Roof Plan | 12/10/01 |
| M-8 | Mechanical Air Riser Diagram | 12/10/01 |
| M-9 | Mechanical Water Riser Diagram | 12/10/01 |
| M-10 | Mechanical Schedules | 12/10/01 |
| M-11 | Mechanical Schedules | 12/10/01 |
| M-12 | Mechanical Details | 12/10/01 |
| M-13 | Mechanical Details | 12/10/01 |
| M-14 | Mechanical Details | 12/10/01 |

**FIRE ALARM SYSTEM:**

| | | |
|---|---|---|
| FA-1 | Cellar, 1st Floor Plan | 12/10/01 |
| FA-2 | 1st Floor Plan Life Safety System | 12/10/01 |
| FA-3 | 2nd Floor Plan Life Safety System | 12/10/01 |
| FA-4 | 3rd - 9th Floor Plan Life Safety System | 12/10/01 |
| FA-5 | 10th - 11th Floor Plan Life Safety System | 12/10/01 |
| FA-6 | 12th - 13th Floor Plan Life Safety System | 12/10/01 |
| FA-7 | Roof Plan Life Safety System | 12/10/01 |
| FA-8 | Life Safety System Riser, Notes & Symbols | 12/10/01 |

**PLUMBING:**

| | | |
|---|---|---|
| P-1 | Plumbing Site Plan | 12/10/01 |
| P-2 | Cellar Floor Plumbing Plan | 12/10/01 |
| P-3 | 1st Floor Plumbing Plan | 12/10/01 |
| P-4 | 2nd Floor Plumbing Plan | 12/10/01 |
| P-5 | 3rd - 9th Floor Plumbing Plan | 12/10/01 |
| P-6 | 10th - 11th Floor Plumbing Plan | 12/10/01 |
| P-7 | 12th - 13th Floor Plumbing Plan | 12/10/01 |
| P-8 | Plumbing Roof Plan | 12/10/01 |
| P-9 | Plumbing Sanitary Riser Diagram No.1 | 12/10/01 |
| P-10 | Plumbing Sanitary Riser Diagram No.2 | 12/10/01 |
| P-11 | Plumbing Sanitary Riser Diagram No 3 | 12/10/01 |
| P-12 | Plumbing Storm Water Riser Diagram | 12/10/01 |
| P-13 | Plumbing Gas Riser Diagram | 12/10/01 |
| P-14 | Plumbing Domestic Water Riser Diagram No.1 | 12/10/01 |
| P-15 | Plumbing Domestic Water Riser Diagram No.2 | 12/10/01 |
| P-16 | Plumbing Details Sheet No.1 | 12/10/01 |
| P-17 | Plumbing Details Sheet No.2 | 12/10/01 |
| P-18 | Plumbing RPZ Plan Elevation & Notes | 12/10/01 |

EXHIBIT "A"                                        DATED: March 1, 2001
475 9TH Avenue                                     DRAWING LIST

| DRAWING # | DESCRIPTION | LATEST DATE |
|---|---|---|

**SPRINKLER:**

| | | |
|---|---|---|
| SP-1 | Cellar Floor Sprinkler Plan | 12/10/01 |
| SP-2 | 1st Floor Sprinkler Plan | 12/10/01 |
| SP-3 | 2nd Floor Sprinkler Plan | 12/10/01 |
| SP-4 | 3rd - 9th Floor Sprinkler Plan | 12/10/01 |
| SP-5 | 10th - 11th Floor Sprinkler Plan | 12/10/01 |
| SP-6 | 12th - 13th Floor Sprinkler Plan | 12/10/01 |
| SP-7 | Sprinkler Details | 12/10/01 |
| SP-8 | Sprinkler Notes & Symbols | 12/10/01 |
| SP-9 | Fire Protection Riser Diagram | 12/10/01 |

**ELECTRICAL:**

| | | |
|---|---|---|
| E-1 | Cellar Lighting Plan | 12/10/01 |
| E-1A | Cellar Power Plan | 12/10/01 |
| E-2 | 1st Floor Lighting Plan | 12/10/01 |
| E-2A | 1st Floor Power Plan | 12/10/01 |
| E-3 | 2nd Floor Electrical Plan | 12/10/01 |
| E-4 | 3rd - 9th Floor Electrical Plan | 12/10/01 |
| E-5 | 10th - 11th Floor Electrical Plan | 12/10/01 |
| E-6 | 12th - 13th Floor Electrical Plan | 12/10/01 |
| E-7 | Electrical Roof Plan | 12/10/01 |
| E-8 | Telephone/Data and TV System Riser Diagram | 12/10/01 |
| E-9 | Power Riser Diagram & Schedule | 12/10/01 |
| E-10 | Electrical Symbol List & General Notes | 12/10/01 |
| E-11 | Panel Schedules | 12/10/01 |
| E-12 | Electrical Panel Schedules | 12/10/01 |
| E-13 | Electrical Panel Schedules | 12/10/01 |
| E-14 | Electrical Panel Schedules | 12/10/01 |
| E-15 | Electrical Panel Schedules | 12/10/01 |
| E-16 | Electrical Panel Schedules | 12/10/01 |

**INFORMATION & TECHNOLOGY:**

| | | |
|---|---|---|
| IT-1 | Communications Specifications | 12/10/01 |
| IT-2 | Cellar Cable Plan | 12/10/01 |
| IT-3 | 1st Floor Electrical Cable Plan | 12/10/01 |
| IT-4 | 2nd Floor Electrical Cable Plan | 12/10/01 |
| IT-5 | 3rd - 9th Floor Electrical Cable Plan | 12/10/01 |

EXHIBIT "A"                                      DATED: March 1, 2001
475 9TH Avenue                        DRAWING LIST

| DRAWING # | DESCRIPTION | LATEST DATE |
|---|---|---|
| **INFORMATION & TECHNOLOGY:** - continued | | |
| IT-6 | 10th - 11th  Floor Electrical Cable Plan | 12/10/01 |
| IT-7 | 12th - 13th Floor Electrical Cable Plan | 12/10/01 |
| IT-8 | Telephone/Data & TV System Riser Plan | 12/10/01 |
| IT-9 | Coaxil Cable Riser Diagram | 12/10/01 |
| IT-10 | Roof Plan | 12/10/01 |
| IT-11 | Cellar Communications Room Detail | 12/10/01 |
| | | |
| **ADT – SECURITY:** | | |
| A-101 | Cellar Floor Plan | 10/25/01 |
| A-102 | 1st  Floor Plan | 10/25/01 |
| A-103 | 2nd  Floor Plan | 10/26/01 |
| A-104 | Roof Plan | 10/26/01 |
| A-105 | Riser Diagram | 10/25/01 |
| | | |
| **BUILDERS PAVEMENT PLAN DRAWINGS:** | | |
| 01 | Builders Pavement Plan | 10/22/01 |
| 02 | Builders Pavement Plan | 10/22/01 |
| 03 | Sidewalk Plans  (L-01) | 10/22/01 |



**EXHIBIT "B"**                                    **DATE:** January 25, 2002
**PROJECT: 475 9th Avenue**              **TRADE: CARPENTRY & DRYWALL**

## Scope of Work

This Scope of Work is intended to define, but not limit, the Scope of Work to be performed. The Scope shall include all necessary labor, materials, taxes, accessories, equipment, hardware, fasteners, tools, layout, engineering, supervision, hoisting, scaffolding, shop drawings, packaging, trucking, freight, delivery, insurance, and **all other services** required for the complete performance of the work for this project in accordance with this Scope of Work and the Drawings and Specifications as listed in Exhibit "A" attached hereto.

The Scope of Work shall include everything required to furnish and install all **Carpentry & Drywall** work in accordance with this Scope and the Drawings and Specifications. The Drawings and Specifications are to be treated by the Contractor as "Scope" documents which indicate the general scope of the project in terms of the architectural design concept, the overall dimensions, the type of structural, mechanical, electrical, utility and other systems, and an outline of the major architectural elements.

As "Scope" documents, the Drawings and Specifications **do not necessarily indicate or describe all items required** for proper completion of the work. The following items are not intended to exclude any other construction practice. **The Scope of Work has been prepared without the benefit of complete architectural and engineering drawings and specifications, but with the understanding that the intent is a complete job in every respect**.

The work shall be furnished and installed in accordance with the Drawings and Specifications prepared by the Architect and/or Engineers for the project. Any deviations from said Drawings and Specifications shall require prior written approval from the Construction Manager. Any corrective work required as a result of unapproved deviations shall be charged to this Contractor. This Contractor shall not perform any extra or unit price work without prior notifications to the Construction Manager, and any extra work performed without such notification and approval shall not be reimbursed.

The work of this Contractor shall be installed per the most stringent codes which apply to this whether shown or not on drawings and/or specifications. Contractor is aware that the work performed within the building line shall be subject to Building Department approvals and/or sign-off. The Contractor will provide all services which will meet or exceed these requirements and this Contractor will be required to comply with said requirements prior to final acceptance and payment.

This contract shall be all-inclusive for all carpentry & drywall work ~~that can be reasonably~~ SHOWN IN ✓ ~~inferred from~~ the drawings and specifications. ~~This shall include any and all carpentry & drywall work that is shown or required on~~ not only the Architectural drawings, but the ~~Structural, Electrical, Mechanical, Plumbing, and Sprinkler drawings as well. No extra cost shall be paid to this contractor for carpentry & drywall work shown or required on the Structural, Electrical, Mechanical, Plumbing, and Sprinkler drawings.~~

**EXHIBIT "B"**                           **DATE:  January 25, 2002**
**PROJECT:  475 9th Avenue**              **TRADE:  CARPENTRY & DRYWALL**

It is the intent of this contract to provided for the complete installation of all the **Carpentry &
Drywall** work in complete conformance with the drawings and specifications including, but not
limited to, the following:

The items listed below are grouped into two sections for ease of reference. The meaning of these
items will in no way be limited by their location within a given category.

**NOTE:**      Retention for this work shall be Ten (10 %) percent and it will be held ~~50%~~ *until
~~complete~~. 50% complete the retainage reduced to 2%
at 90% complete if approved by landlord*

**GENERAL ITEMS**

1.    This Contractor shall provide a 100% Performance and Payment Bond. Cost of the
      Bond shall be the responsibility of the Owner. Submit Alternate price on the form
      attached to this Exhibit.

2.    Include all insurance requirements in accordance with the "contract".

3.    This Contractor is responsible for handling and rigging his material and equipment.
      The job site hoist is available for use by this Contractor. If this Contractor reserves
      the hoisting time and does not use it, he will be charged $350.00 per hour regular
      time and $450.00 per hour overtime.

4.    All materials are subjected to the approval of the Architect and Owner.

5.    Shop drawings, samples, catalogue cuts, etc., to be submitted by this Trade
      Contractor within two (2) weeks after award of contract.

6     Included is the complete coordination of this work with the work of other trades. This
      Contractor shall attend Coordination Meetings and provide information for
      review by other trades, as well as review information provided by other trades in
      such time as not to delay progress of the project as schedule by the Construction
      Manager.

7.    This Contractor shall place and relocate his field office when and where directed
      and provide all necessary fireproof facilities for his workers. It is understood that
      this Contractor is responsible for the acquisitions, maintenance and subsequent
      removal of all utility and telephone service required for his field offices  Each
      structure this Contractor maintains must contain a minimum of one (1) 20 lb. Dry
      ABC Fire Extinguisher.

**EXHIBIT "B"**
**PROJECT: 475 9ᵗʰ Avenue**

**DATE: January 25, 2002**
**TRADE: CARPENTRY & DRYWALL**

## SCOPE ITEMS

1.  Include furnishing, installing, maintaining and removing perimeter protection at all slab edge locations exterior or interior of building including shafts, stairwells and other drop-offs. Perimeter protection to consist of the following:

    a.  Include furnishing, installing, maintaining and subsequently removing perimeter cables, orange vertical netting.

    b.  Three rows of 1/4" steel cable at required height with MESH to comply with OSHA requirements.

    c.  Cables are to be stretched from column to column wherever possible.

    d.  Where columns are not available for support 4 x 4 posts are to be used properly secured at the floor and at the ceiling with cables attached to assure that they will stay tight and not slip down.

    e.  Each perimeter protection cable is to be no longer than 2 column bays and to have a turn buckle with a hook attached to the end of the cable to allow for tightening up, removal and reinstallation.

    f.  Each cable end is to be jointed to itself by a cable clamp to form a loop.

    g.  Each two bays of perimeter protection cable are to be installed so as to act independently of other perimeter protection cables.

    h.  Fluorescent ribbons must be attached to the cable as directed by the Project Superintendent.

    i.  Cables to be installed and re-installed at balcony doors after door frames are installed. These are to be made removable with hooks so as to allow passage to and from the balcony.

2.  Furnish, install, maintain and remove toe board protections at the perimeter of each floor slab above grade as well as at major slab openings. Toe board shall be a 4" high continuous wood strip placed on its edge. Toe board shall be fastened to a 1"x 1"x 4" block laid flat, spaced 4' on center and attached to the concrete slab by power driven nails. Toe board shall be located no further than 1" back from slab edge. Coordinate with Superintendent. Toe Board may be part of Mesh



EXHIBIT "B"                           DATE:  January 25, 2002
PROJECT:  475 9ᵗʰ Avenue              TRADE:  CARPENTRY & DRYWALL

3.  Furnish, install and maintain temporary handrails for all stairs, floor slab elevation changes, garage ramps and around grade floor at ramp.

4.  Furnish and install a temporary loading dock platform on the first floor around three sides of the rack and pinion personnel/material hoist tower.  This platform must be of sufficient strength to handle the off loading of trucks.  Top of platform shall be approximately  3'-6" high.  Platform to be continuous 6' wide and extending the full width of the hoist opening at each end of each hoist cab. Platform shall not obstruct car travel.  Construction of stairs and ramp up to platform are to be included as part of this contract.  Furnish and install overhead protection planking directly over loading platform at rack and pinion and masons materials hoist.  Protection to be high enough to clear trucks off loading at platform.

5.  Include the furnishing, installation and maintenance of all temporary protection required for the hoisting equipment at the project.  Equipment includes on rack and pinion combination material and man hoists.  These items must include doors, handrails, toe board, plywood, cable enclosures, planking, weather-protections, threshold, overhead protection, etc.  The rack and pinion hoists will service all floors.

6.  Furnish and install and maintain doors for the personnel hoist openings in line with the face of the exterior window, extending from the top of t the runway to the underside of the construction above.  These protective doors to have a 9" x 9" vision cut-out with wire mesh.  Included a 6' ± plank ramp to complete entries.

7.  Include weather tight plywood enclosure at hoist support cables and brackets through window openings at every second floor.  Cut-outs for cables and brackets are required.

8.  Furnish and install waterproof and insulated hoist shanty structure full enclosure, with a roof and with door hardware for the door, and 2' x 2' window fully glazed Location will be as directed by the Construction Manager.

9.  Include the dismantling and removal of all temporary work installed under this contract when directed by the Construction Manager.



**EXHIBIT "B"**                         **DATE:  January 25, 2002**
**PROJECT:  475 9th Avenue**          **TRADE:  CARPENTRY & DRYWALL**

10.   Include the construction of <u>6</u> ea. Temporary toilet enclosures with raised floors, doors, hardware, insulation etc.  Temporary toilets will be located as directed by Construction Manager's personnel.  Each toilet to have three (3) separate compartments with doors and hardware for each (1 compartment 5'-0" with for urinal trough).   Temporary toilet enclosures to be constructed of fireproof plywood, ½" thick or permanent toilets to be built out and repaired by R & J.

11.   Contractor is aware that failure to erect and maintain temporary protection at timely manner or failure of protection to meet OSHA or legal requirements will make this Contractor solely responsible for any subsequent fines levied.

12.   Provide field offices for the Construction Project Manager, Superintendent, **Teamster, and Owners** shanty.  Limited to two (2) offices at <u>150</u> Sf. each to include windows, doors, plan tables, etc., **30 Lf.** of partition shelves & racks.

13.   Furnish, install and maintain temporary protection inside finished elevator cabs to be used during late stages of construction.  (include the protection for all cabs). (Homosote & Plywood).

14.   Furnish and install storage locker for all hardware including shelving, door, lock, etc., in a location directed by Contractor Manager. ~~If this option is taken, all hardware deliveries by supplier will be directly to location directed by this Contractor.~~

15.   This Contractor shall provide protection to the roof of the cab of the personnel hoist.

16.   This Contractor shall supply <u>20</u> temporary doors as required by the **Construction Manager.**

17.   This Contractor, in his performance of the temporary protection work, fully agrees to comply with the requirements of OSHA and fully agrees to assume all responsibility for any OSHA citation, penalties, work stoppages and resultant legal fees imposed upon the **Construction Manager** as a result of this Contractor's non-compliance. The amount of the cost of any of the aforementioned penalties, work stoppages and resultant legal fees imposed upon the **Construction Manager** as a result of this Contractor's non-compliance.  The amount of the cost of any of the aforementioned penalties, work stoppages and legal fees shall be charged to the Contractor's account



**EXHIBIT "B"**  **DATE: January 25, 2002**
**PROJECT: 475 9ᵗʰ Avenue**  **TRADE: CARPENTRY & DRYWALL**

18. Provide and maintain approved protection separating the elevators if required. No credit if not required. The protection shall consist of wire cloths of not less than 14 gauge wire space 1/2" on center in both directions and securely fastened in place with suitable frame.

19. This Contractor shall provide a ramp and platform at the material hoist and shall install overhead protection at the ground floor to protect during the loading operation.

20. The following items are included in this contract:

    a. All interior ramps required (5) 20' x 10'.
    b. All perimeter fence and gates are to be maintained (exclude damage by others).
    c. All floor to floor ladders and temporary stairs as required. IS LOC NAK
    d. One security shanty 4 x 4 with doors and windows.
    e. All required enclosures for temporary services such as fire pumps, electrical closets, water meters with temporary doors.
    g. Protection of finished lobby floor area, concierge desk, mail boxes.

21. The installation of millwork, hollow metal frames and doors, medicine cabinets kitchen cabinets and plastic laminate counter tops, both base and wall cabinets, bi-fold doors, vanities and tops. It is this Contractor's responsibility to receive, hoist, store on each floor, distribute and install the aforementioned items. It is this Contractors responsibility to notify Construction Manager of all damaged items by submitting a written list. Grounds for all above, if required, are included.

22. All hardware and interviewers furnished under the hardware section of the specification shall be received, checked, stored, distributed and installed and supplied to this Contractor and he shall be responsible for such hardware and interviewers until their installation.

23. This Contractor shall perform all Engineering and layout for all Drywall partitions from axis line to be provided by the Construction Manager. However, this Contractor is to check these axis lines for location before proceeding with his work and assume all responsibility for their proper location.



**EXHIBIT "B"**                                    **DATE: January 25, 2002**
**PROJECT: 475 9th Avenue**                        **TRADE: CARPENTRY & DRYWALL**

24.  This Contractor shall provide and install all interior caulking as indicated on drawings. Caulking shall include to of base, door bucks, kitchen cabinets, window sill, plastic laminate kitchen counter tops and back and side splashes, vanity tops, back splashes, etc.

25.  The chasing or notching of insulation for conduit, pipes, BX or electrical boxes at exterior walls or other areas where insulation is to be placed is include in this contract.

26.  This Contractor shall supply and install approved insulation to be applied to all exterior and interior walls as shown in the contract documents.

27.  This contract includes all taping of gypsum walls and ceilings. SKIN COAT SURFACES THAT ARE TO BE PAINTED

28.  The installation of all weatherstripping is included in this contract for exterior doors.

29.  In addition to plans and specifications, the following items are included in this contract:

   a.  All blocking for the mail boxes.
   b.  All roof blocking as shown
   c.  Installation of toilet shelves and mirrors in public toilets in carpenters jurisdiction.
   d.  Installation of weatherstripping and STC 35 items.
   e.  All suspended gypsum board and acoustic ceilings where called for on the plans and in the specifications
   f.  The Contractor shall provide his own scaffolding for his work.
   g.  Erection of project sign.
   h.  All openings for bath & kitchen and library exhaust shafts are to be cut.
   i.  Penetrations as required in the kitchen cabinets to allow for hook-up of the dishwashers and ranges.
   j.  Installation of mail box platforms including blocking and plywood platform.

30   Include all grounds, shims, nailers, roof blocking, blocking at parapets, gravel stops, roof curbs, etc., with wolmanized or fireproof lumber as shown