21

Proceedings

1
2    settlement, indicated to me:  We're acting on behalf
3    of 475 Ninth.
4            I said:  That's absurd.  You're in a
5    conflict with 475.  First of all, I represent 475
6    Ninth.  You cannot do that.  Whatever you're doing is
7    wrong.  You're acting against the interest of my
8    client by trying to create some secret agreement in
9    bad faith with plaintiff's attorney --
10           THE COURT:  Let me just hear from the
11   attorneys who haven't spoken yet.
12           MR. RUTHERFORD:  I'm David Rutherford.  I
13   represent R & J.
14           I just want to set forth how the settlement
15   worked, so everybody understands it.
16           THE COURT:  Yes.
17           MR. RUTHERFORD:  There were two
18   settlements.  The first settlement was for seven
19   hundred fifty.  The second settlement was for eight
20   seventy-five.
21           The first settlement, R & J paid $750,000
22   to the plaintiff.  In return, the plaintiff agreed to
23   dismiss their action against 475.
24           475 didn't pay anything.  We didn't pay
25   money on behalf of 475.
26           The plaintiff can dismiss any part of his

MLB

22

Proceedings

1

2   case at any time he wants; and that's what he did.

3   So when the case proceeded to trial, 475 was out.

4            We didn't act on behalf of 475; we paid on

5   behalf of R & J.

6            The plaintiff agreed to discontinue when

7   the case went to trial, which was on damages only,

8   because VJB's answer had been stricken.

9            THE COURT:  And that decision was upheld by

10  the Appellate Division.

11           MR. RUTHERFORD:  Right.

12           THE COURT:  I just must say, for the

13  record, two things.

14           One, I'm sure the Appellate Division, if

15  this is going up on appeal, is very familiar with its

16  own decision and what it said about striking the

17  answer.

18           When I struck the answer, something,

19  frankly, I had -- I think this is the first time I've

20  ever done it.

21           Beyond that, I would also say to all of

22  you, I think it would be a good idea for all of you

23  to read yesterday's Law Journal.  There is a decision

24  in that Law Journal by Judge Baer, and I would

25  commend all attorneys to read it.

26           Next.

MLB

23

Proceedings

1    MR. RUTHERFORD:  The plaintiff had

2  voluntarily dismissed 475 Ninth Avenue.  When the

3  case went to trial, 475 was not part of the case

4  anymore.

5        At trial, plaintiff entered into a

6  settlement with VJB and Kajima only.  That eight

7  seventy-five is only paid on behalf of those two

8  entities.

9        Plaintiff has tried to tender a release for

10  only those entities and not 475.

11        475 was included in the first settlement,

12  even though they paid nothing; even though we didn't

13  act on their behalf, he dismissed them.

14        The reason that this whole settlement is

15  being hung up now is because he's trying -- being

16  Mr. Devereaux is trying to include 475 in the second

17  settlement so he can try and bring it back and get

18  some of that money back from R & J and Spieler.

19        MR. DEVEREAUX:  Can I reply, your Honor?

20        THE COURT:  No, I don't want to hear

21  anything else.

22        I was here during the settlement.  I've

23  written on this case.  I believe what was just said

24  is exactly what happened, and I am denying this

25  motion also because I do not believe the moving party

MLB

24

Proceedings

1    has standing to bring this motion.

2            MR. DEVEREAUX:  Judge, with all due

3    respect, they cannot voluntarily discontinue an

4    action by themselves; they need my consent.  That's

5    part of the reason why I have standing.

6            I represent 475, the owners, VJB and the

7    Kajima entities.

8            They have never done it; they can't

9    voluntarily discontinue things and do things secretly

10   among themselves without my consent.

11           THE COURT:  Mr. Devereaux, if you wish, we

12   can go forward with the trial against 475.

13           MR. DEVEREAUX:  No, Judge, there's a

14   settlement with the plaintiff.  LIU paid $750,000 on

15   behalf of 475 Ninth.  They don't get to make that

16   determination.

17           VJB paid $125,000 of their own money to

18   settle this case.  There's a settlement here.  That's

19   not being vacated.

20           THE COURT:  The question then becomes, you

21   have a choice.

22           If you really feel that way, then we can

23   vacate this last settlement against VJB, Kajima and

24   475 and go forward with the damages trial.  That's

25   the choice.  Or else the case is settled.

MLB

25

Proceedings

1

2          You don't have another choice.

3          MR. DEVEREAUX:  Respectfully, your Honor, I

4     disagree.  We have one motion here before us --

5          THE COURT:  Do you wish to vacate that

6     settlement?

7          MR. DEVEREAUX:  I want that to be done on

8     papers, Judge.

9          MR. ROSE:  Was that a "No"?

10         THE COURT:  Wait a minute.

11         You do not want to vacate that settlement?

12         Are you moving to vacate, because the

13     settlement is clear; it was only -- this was not

14     brought up on the day of settlement on November 9th.

15         MR. DEVEREAUX:  Sure it was, page 5

16     expressly states right there, Judge:  By the way, VJB

17     and all entities reserve their rights vis-a-vis other

18     entities.  To the extent they want to collect

19     whatever they want to, it has nothing to do with

20     this.  This is only vis-a-vis the plaintiff.

21         THE COURT:  I understand that.  But it was

22     clear from everything that preceded that; it was

23     stated that the case had been dismissed against 475

24     and that this settlement was only with VJB and

25     Kajima.

26         So I am now saying your position is

MLB

26

Proceedings

1

2  different now.  You're saying that 475 is still in

3  the case.

4          Then everybody's intent during the

5  settlement -- everybody was on a different page.  If

6  you wish, at this point, to vacate the VJB-Kajima

7  settlement because 475 was not part of it and you

8  believe 475 was still part of the case, I will now

9  vacate that settlement and we will put it down for

10  trial against 475, VJB and Kajima.

11          Is that what you want to do?

12          MR. DEVEREAUX:  Your Honor, respectfully,

13  you're inappropriate.

14          I did not make a motion here.  The only

15  motion before your Honor is the motion to reargue --

16          THE COURT:  I just want an answer.

17          Do you wish to do that or not?

18          MR. DEVEREAUX:  Judge, what we're trying to

19  do is make me do a motion now sua sponte without

20  papers and force me to respond to it.  That's

21  inappropriate.  That should be on done on papers.

22          I'll repeat it again.

23          There was a settlement here vis-a-vis the

24  plaintiff.  All other rights were expressly reserved

25  against all other entities, which was the absolute

26  right of 475, Kajima and the entities.  That's what's

MLB

27

Proceedings

1
2     on the record.  That's the settlement.

3             Judge, I have a motion pending.  I told

4     these counsel that I was going to do a motion.

5             He said:  Well, I have a motion; I'm going

6     to do it.

7             That should be done on papers, your Honor.

8             THE COURT:  At this point, again, I deny

9     the motion.  I granted reargument.  I've denied the

10    motion for everything that's been said on this

11    record --

12            MR. REAGAN:  Your Honor, I had a request

13    for motions, too, and I would ask your Honor to rule

14    on them.

15            MR. ROSE:  I need --

16            MR. DEVEREAUX:  This is a sua sponte

17    motion?

18            MR. ROSE:  Your Honor, I have a huge

19    problem right now, and the reason why I came in today

20    is because my client is about to lose his house; and

21    I think your Honor needs to be aware of that.

22            We settled for $750,000, which money we

23    cannot accept at this time because we had to sign a

24    hold harmless agreement which, if Mr. Devereaux

25    continues, my client will not get that money; he will

26    lose his house.

MLB

28

Proceedings

We went to trial because Mr. Devereaux still wouldn't settle after two mediations that we were asked to go to, where the adjuster didn't show up the first time. We had to cancel it.

My client had to fly in from Florida. He had to move his family to Florida because he can no longer work in the construction trade.

I have -- that I'd like to mark as a Court Exhibit -- the mediation memo -- which is very important -- that is contained within the Court record; and the reason why -- it tells you why we entered into the settlement agreement.

THE COURT: Well, let's mark it as Court Exhibit 1.

(So marked.)

MR. ROSE: Your Honor struck the defendant's answer on April 28th, 2005.

Mind you, the person that hired Mr. Devereaux, Liberty Mutual International, has $1 million in insurance coverage.

On April 26th of -- well, even backing up.

MR. DEVEREAUX: Judge --

THE COURT: Let him finish.

MR. ROSE: On April 26, 2007, a disclaimer letter, which is part of Plaintiff's Exhibit 1, which

MLB

29

Proceedings

1
2  has just been marked, a disclaimer letter was issued
3  by Liberty International on April -- which is
4  Mr. Devereaux's carrier -- on April 5th, 2007.
5              There was a disclaimer letter -- excuse me.
6              April 17th of 2007, a disclaimer letter was
7  written by the excess carrier; and that is Exhibit C
8  of Plaintiff's Exhibit 1.
9              The disclaimer letter was issued --
10             MR. DEVEREAUX:  Judge, that's inappropriate
11 to submit a document that is confidential -- which he
12 expressly agreed to -- to this Court and mark it as
13 an exhibit.  That's inappropriate, unethical conduct
14 right there.
15             MR. ROSE:  This is very important, Judge.
16             The disclaimer letter was issued because,
17 on April 5th of 2007, Mr. Devereaux, for the first
18 time -- and you can check the Court records because
19 we were in Court that day -- on April 5th of 2007,
20 Mr. Devereaux for the first time provided excess
21 coverage information, April 5th of 2007.
22             That day -- and there were two different
23 excess carriers.
24             That day, I wrote to both excess carriers
25 and, in response to my letter, I got responses that
26 said:  Your letter to us was our first notice.

MLB

30

Proceedings

1

2          So my client, had we proceeded to trial

3     against Mr. Devereaux's firm and VJB and taken a

4     verdict, my client, who's on the verge of losing his

5     house right now, would have faced further appeal,

6     further delay; and he was forced to accept this          ·

7     settlement.  And this is still going on.  Because

8     now, where we finally acquiesced, where we felt he

9     had a settlement that was palatable to him so his

10    family could live, his wife and two kids, so they

11    could live, when we finally had something that he

12    could live with, then what we did is we accepted that

13    rather than taking a verdict on the case.  We

14    accepted those terms.

15          And Mr. Devereaux, despite the fact that he

16    says that 475 is paying, it's clear on the record

17    that they're not.

18          We tendered releases to him on

19    November 9th of 2007.  We tendered releases.  We

20    tendered a stipulation of discontinuance; and we

21    tendered a W-9 with my law firm's Tax I.D. number;

22    everything that I have to do.

23          And what the CPLR clearly states is that

24    after 21 days of tender of the things that I just

25    mentioned, I then have the authority and the ability,

26    without notice, to offer judgment to the Court and

MLB

31

Proceedings

1
2      have judgment entered with appropriate costs,
3      interest and sanctions.
4             Now, if we walk out of here today without
5      those things happening, then this is going to
6      continue on and my client is going to lose his house
7      after flying in for trial, because there was not a
8      fair settlement agreement reached.
9             THE COURT:  Let me just say the November
10     settlement that we're talking about, the November --
11     I'm sorry.  The November 9th, 2007 settlement was at
12     trial.  The trial would have been long over by now
13     had we not settled this case.
14            MR. DEVEREAUX:  We're here on one motion --
15     excuse me --
16            THE COURT:  Let me stop this right now.
17            Do you have a judgment?
18            MR. ROSE:  Yes, I do, your Honor.
19            THE COURT:  I will sign that judgment.
20            MR. DEVEREAUX:  Judge, I object to it.
21            May I have an argument why?
22            THE COURT:  Yes.
23            MR. DEVEREAUX:  It was never tendered
24     pursuant to the statutory requirements of CPLR
25     5003-a. (g) which requires releases and such papers
26     to be sent or personally delivered or be mailed by

MLB

32

Proceedings

1
2   registered or certified mail.  They never complied
3   with that statutory requirement.
4               I immediately notified them they had not
5   complied with Section 5003-a, so this Court has no
6   jurisdiction or lacks the authority to execute or
7   sign a judgment because they never complied with the
8   statute.  I also told them that there were several
9   other defects with respect to their papers, and I
10  rejected them.
11              I also proffered my releases to them.
12              This should all be done on motion papers,
13  your Honor.
14              It should not be done sua sponte in
15  connection with the motion to reargue.  This is,
16  procedurally, improper before your Honor.
17              What they're trying to do is preempt and,
18  with frenetic passion, get your Honor to sign off on
19  it because they're all attacking me, which is
20  inappropriate.
21              THE COURT:  Let me say, for the record, I
22  am going to sign the judgment, if the judgment is
23  given to me today.
24              *I am shocked at what has gone on in this*
25  *case.*  I do think that this may be a case for the
26  Character Committee.

MLB

33

Proceedings

MR. REAGAN:  I was going to remind your

Honor --

THE COURT:  I do want to say also something

that may or may not be part of the record.

Although Mr. Devereaux was in Court on

November 9th, his partner -- and I believe it was

Paul Weidenbaum -- conducted all of the proceedings,

and Mr. Devereaux sat in back in the audience.

MR. DEVEREAUX:  Judge, I wasn't --

THE COURT:  And there was none of this

mentioned.  I believe that this case, the way this

case has been conducted has really pushed the

envelope of ethics.

And, I think, given what this plaintiff has

gone through and given -- this is a 2003 case, I must

say -- I am more than happy to sign the judgment in

this case to avert an injustice.

MR. DEVEREAUX:  Judge, the release itself

has a stipulation of discontinuance in it which

flatly contradicts the terms and conditions of the

open court settlement --

THE COURT:  What was that?

MR. DEVEREAUX:  Which on page 5 and 6.  It

said that VJB, 475 Ninth and all entities expressly

reserve their rights against all other entities.

MLB

34

Proceedings

1

2   On small font paper -- which I request be

3   marked, Judge, as an exhibit -- the smallest possible

4   font, all the way on the bottom, in the middle, an

5   add-on sentence said -- it's a stipulation of

6   discontinuance incorporated in a general release,

7   which is unheard of.

8   "It is agreed between releasors and

9   releasees that all claims, crossclaims,

10  counterclaims, third-party actions and declaratory

11  judgment" -- declaratory judgements, which are

12  severed and separate from this action -- "actions

13  arising out of the subject accident of 4/2/03 are to

14  be dismissed with prejudice."

15  That flatly contradicts the terms and

16  conditions of this open court settlement, Judge, and

17  it cannot be the basis of a judgment; it's

18  inappropriate.

19  That's where I'm saying they have not

20  complied with the statutory requirements of 5003-a in

21  good faith, not complied with applicable case law and

22  custom and practice.

23  THE COURT:  Okay, yes.

24  MR. RUTHERFORD:  If you look at page 2 of

25  the transcript, your Honor, line 17, that sets out

26  the settlement of the second action.

MLB

35

Proceedings

1

2          You may want to read that into the record.

3          It's very clear --

4          THE COURT:  Well, I'll read it.  This is

5     from the November 9th, 2007 transcript.  It's by

6     Mr. Carfora; and it says, quote:

7               "It is hereby agreed, stipulated by and

8     between the parties that the case of George Santoli

9     and Stacey Santoli against VJB Construction

10    Corporation/Kajima Development Corporation, a joint

11    venture, and VJB Construction Corporation,

12    individually, is settled in the amount of $875,000.

13               "That amount of eight seventy-five will be

14    paid as follows:

15               "The insurance company for the

16    aforementioned entities" --

17          And then there's an interruption; and it

18    goes over to page 3, line 6.

19               "Liberty Mutual International will pay

20    750,000 and VJB Construction Corporation will pay

21    125,000 for a total of $875,000."

22          MR. DEVEREAUX:  Exactly, your Honor.

23          That's exactly --

24          THE COURT:  On line 10, by the Court, it

25    says:  "Okay.  And there was a prior settlement, am I

26    correct, with other defendants, and that was for

MLB

36

Proceedings

1  $750,000?"

2      And Mr. Carfora responds:  "Yes."

3      The Court says:

4      "And those defendants were" --

5      And then Mr. Devereaux pipes up from the

6  audience:  "R & J and, I believe, 475, all the

7  entities we expect to get a release from -- the

8  plaintiff releasing all entities.

9          "MR. CARFORA:" --

10      MR. DEVEREAUX:  That's me.  The reporter --

11      THE COURT:  Mr. Devereaux's saying:  "I

12  can't settle without getting a release from all" --

13  It states "Mr. Carfora."

14      Mr. Devereaux said:  "I can't settle

15  without getting a release from all entities."

16      MR. RUTHERFORD:  Your Honor, I think the

17  portion you just read made clear the 875 was the VJB

18  entities.

19      THE COURT:  Yes.

20      MR. RUTHERFORD:  You want a release;

21  there's two separate releases.

22      THE COURT:  There's two separate

23  settlements.

24      MR. RUTHERFORD:  Right.  And the first

25  settlement is 475 and R & J; and the second is VJB.

MLB

37

Proceedings

1
2    That's clear from the record.  And your Honor knows

3    it.  Everybody --

4              MR. DEVEREAUX:  That's not true.  That's

5    absolutely -- that's insane for him to represent that

6    he's representing 475 Ninth.  They cannot voluntarily

7    discontinue against clients I represent.

8              THE COURT:  I understand.  This is over.

9    We've been arguing for quite some time.

10             MR. DEVEREAUX:  Judge, I'd like the release

11   marked as an exhibit.

12             THE COURT:  Absolutely.  Court Exhibit 2.

13             MR. ROSE:  I'd like a clean copy.  I don't

14   understand why it's yellow-lined.

15             Mr. Devereaux, I have it.

16             What I'm offering to the Court, as

17   Plaintiff's-Court Exhibit Number 2, is the cover

18   letter from my office to Mr. Rutherford's office, as

19   well as to Mr. Devereaux's office, which tenders the

20   general release, the stip of discontinuance, as well

21   as my firm's W-9.

22             Also contained is an affidavit of service

23   of mailing, just so there's no mistake.

24             So everything shows a proper offer pursuant

25   to the CPLR of the appropriate documents.

26             THE COURT:  Okay.  I'm marking what

MLB

38

Proceedings

1
2   Mr. Devereaux wanted, but a clean copy, as 2 and what

3   you want as Court Exhibit 3.

4           MR. DEVEREAUX:  Judge, first of all, I

5   still have to preserve my objection with respect to

6   the first exhibit, which was inappropriately

7   submitted.  It's a mediation document.

8           THE COURT:  You already have preserved it.

9           MR. DEVEREAUX:  I would also like to have

10  my letter proffering the releases I wanted executed.

11          MR. REAGAN:  Before you finish, I would

12  like for you to remember that I have two requests at

13  the end.

14          Your Honor, that's all I'm saying; before

15  we end, I have asked for affirmative relief as well,

16  and I would just like to be heard on that.

17          THE COURT:  Which affirmative relief?

18          I need a clean copy.

19          MR. ROSE:  You'll agree I can submit the

20  release I mailed to you?

21          MR. DEVEREAUX:  Mailed not by virtue of the

22  statute--

23          MR. ROSE:  That's it, your Honor.

24          THE COURT:  It will be part of 3.  We'll

25  mark it as Court Exhibit 2.

26          MR. ROSE:  Okay.  Now, as Court Exhibit --

MLB

39

Proceedings

MR. DEVEREAUX:  I would like to mark this
as 4 --

THE COURT:  Everybody is interrupting
everybody else, and I think we've made enough of a
record at this point.

Give me the judgment.  I will sign the
judgment.

MR. DEVEREAUX:  Judge, I would like my
releases that I submitted to the Court marked as
well.  If he's going to be submitting his releases, I
want my releases.

THE COURT:  What release?

MR. DEVEREAUX:  I submitted releases to the
plaintiff to effectuate the settlement vis-a-vis the
plaintiff.

I would like, since he's submitting his
releases, which I say do not comply with the terms
and conditions of the settlement, which was reached
in open court and, which I think is totally
inappropriate and without authority, I would like to
submit my releases that I submitted to him to have
executed.

THE COURT:  We'll mark that Court
Exhibit 4.

Now, may I have the judgment; and I will

MLB

40

Proceedings

1  sign it.

2      MR. ROSE:  Yes, your Honor.

3      As I'm giving -- there's just one point

4  that I need to make with the judgment.

5      THE COURT:  And what is that?

6      MR. ROSE:  The point is, as your Honor

7  knows, with a judgment, it is important that a

8  liability date be affixed; and also, on behalf of my

9  client, I feel that there has to be teeth to this

10  judgment; otherwise we're going to be talking about

11  years of further litigation.

12      Now, your Honor struck the defendant's

13  answer on April 28th of 2005.  I would ask that the

14  Court affix the interest date on the judgment at that

15  date because the defendant's conduct is what's caused

16  this delay for the last two-and-a-half years;

17  therefore prejudicing my client.  And if they

18  continue with this frivolous conduct, we can go on

19  indefinitely.

20      So the appropriate way to handle this

21  judgment would be to award interest, based on the

22  striking of the defendant's answer as of April 28th

23  of 2005, and interest on the total amount of the

24  settlement, because we cannot take the money from the

25  other party.

MLB

41

Proceedings

THE COURT:  Wait a minute.  I don't understand your request.

The interest would be against who from the date I struck the answer?

MR. ROSE:  The interest against VJB Construction Corp., the entity that is holding up my client from recovering.  And the interest that should be awarded should be based on the entire settlement amount, because my client has not seen the benefit of any of that money.

So the interest should be calculated based on the number, $1,625,000.

THE COURT:  Well, I'm willing --

MR. ROSE:  And that's the only way we have any chance of justice here.

THE COURT:  Well, this is what I'm willing to do.  I am willing to use the date you suggest as against VJB only, and only use that settlement amount.

However, in terms of the entire settlement amount, what I will do is I will, in terms of sanctions, because I believe this is --

MR. ROSE:  And I misspoke before.  The total judgment is $875,000.

MR. DEVEREAUX:  Judge, I think this is

MLB

42

Proceedings

1

2      highly inappropriate.

3                  THE COURT:  I understand.

4                  And in terms of sanctions, I am willing to

5      sanction for frivolous conduct; and I believe there

6      has been tremendous amounts of frivolous conduct here

7      which have prejudiced and impacted on the plaintiff;

8      I am willing to sanction VJB, from today's date

9      onward, interest on the entire settlement.

10                 MR. ROSE:  Thank you.

11                 MR. REAGAN:  Your Honor, he's spoken for 15

12     minutes --

13                 MR. DEVEREAUX:  This is inappropriate,

14     Judge.

15                 THE COURT:  At this point, I'm closing the

16     record.

17                 (Discussion off the record).

18                 THE COURT:  On the record.

19                 MR. REAGAN:  First of all, I would just

20     request about three minutes without interruption.

21                 THE COURT:  You can have one minute.

22                 MR. REAGAN:  One minute.  I understand your

23     Honor's frustration.  Believe me; on this side of the

24     aisle, we all do.

25                 However, when your Honor said you had never

26     stricken an answer before, apparently that wasn't

MLB

43

Proceedings

enough of a lesson.

All of this is unnecessary.  If counsel had separate counsel for 475 and VJB, as there should have been, none of this conflict would have arisen and none of this would have happened.  It all stems from the fact that counsel represented two clients who have materially adverse positions.

THE COURT:  I think you've said this already.

MR. REAGAN:  I would request that based upon the frivolous conduct and the material false allegations that counsel's put on the record, that are demonstrably false, I would request that sanctions be imposed to the defendants as well so that we can be recompensed for all of this unnecessary time and money that we have had to expend coming here time and time and time again.

THE COURT:  At this point, I made my rulings and the record is the record.

MR. ROSE:  The entire case needs to be discontinued.

THE COURT:  This case is discontinued.  It has been settled.

MR. ROSE:  The entire case, including third-party actions --

MLB

44

1          Proceedings

2          THE COURT:  Please, everybody, you have my

3  rulings.  I believe as a result of my denial of the

4  motion that was before me today, the case is over.

5          Take your appeals, if you need to appeal.

6          (Record closed.)

7          *          *          *

8  Certified to be a true and accurate
   transcript of my stenographic notes

9

10

11

12          MARK L. BOWIN
            Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MLB

STATE OF NEW YORK      }
                       } ss.
COUNTY OF NEW YORK  }

    **Filomena Pesce**, duly sworn, deposes and says:  deponent is not a party to the action, is over 18 years of age, and resides in Brooklyn, New York.

On ___12/13/___, 2007, deponent served the within **NOTICE OF ENTRY** on:

*Devereaux & Weidenbaum, LLP*
*Michael J. Devereaux*
*39 Broadway, Suite 910*
*New York, New York 10006*

*O'Connor O'Connor*
*Hintz & Deveney, LLP*
*Michael T. Reagan*
*One Huntington Quadrangle, Suite 1C07*
*Melville, NY 11747*

*Rutherford & Christie*
*David S. Rutherford*
*300 East 42nd Street*
*New York, New York 10017*

*Lazare Potter Giacovas & Kranjac, LLP*
*Andrew M. Premisler*
*950 Third Avenue*
*New York, New York 10022*

*Furey Kerley Walsh Matera & Cinquemani*
*Stephen E. Rich, II*
*2174 Jackson Avenue*
*Seaford, New York 11783*

Said address(es) designated by said attorney)s) for the purpose by depositing a true copy of same enclosed in a post paid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

                                Filomena Pesce

Sworn to before me this

_13th_ day of _December_, 2007.

_____
Notary Public

Shirley Soares
Notary Public, State of New York
No. 01SO6144667
Qualified in Bronx County
Commission Expires April 24, 201O

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

GEORGE SANTOLI,

                                        Plaintiff(s),

        -against-

VJB CONSTRUCTION CORP.,

                                        Defendant(s).

## HACH & ROSE, LLP
### Attorneys for Plaintiff(s)
*GEORGE SANTOLI and STACEY SANTOLI*

185 Madison Ave, 8th Floor
New York, NY 10038
Tel. (212) 779-0057
Fax. (212) 779-0028

To:
Attorneys for:

Service of a copy of the within          **NOTICE OF ENTRY**
is hereby admitted.
Dated:

                    ........................................................................................
                    Attorneys for:

*PLEASE TAKE NOTICE*

☐  That the within is a (certified) true copy of a
    Entered in the office of the Clerk of the within named court on        _____20_____

☐  That an Order of which the within is a true copy will be presented for settlement to the Hon.
                            one of the judges of the within named Court,
    at
    on        _____20_____    at            M.

Dated:                  **HACH & ROSE, LLP**
                        **Attorneys for Plaintiff(s)**
                        **GEORGE SANTOLI and STACEY SANTOLI**
185 Madison Avenue, 8th Floor
New York, New York 10016

To:
Attorney(s) for: