UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

LIBERTY MUTUAL INSURANCE COMPANY,

                Plaintiff,

   -against-

TRAVELERS PROPERTY CASUALTY COMPANY
OF AMERICA f/k/a THE TRAVELERS INDEMNITY
COMPANY OF ILLINOIS,

                Defendant.

-------------------------------------------------------------------x

Civil Action No.:
07 Civ. 11292 (JFK)

**AFFIDAVIT IN
OPPOSITION TO
MOTION TO DISMISS**

STATE OF NEW YORK    )
                    ) ss.:
COUNTY OF NEW YORK   )

      **MARSHALL T. POTASHNER**, being duly sworn, deposes and says:

      1.    I am a member of the law firm of JAFFE & ASHER LLP, attorneys for plaintiff LIBERTY MUTUAL INSURANCE COMPANY ("Liberty Mutual") in the above-captioned action. Our firm also represents second third-party plaintiff 475 Ninth Avenue Associates, LLC ("475 Ninth") in the Underlying Action (as hereinafter defined). As such, I am fully familiar with the facts and circumstances set forth herein.

      2.    I submit this affidavit in opposition to defendant TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA's ("Travelers") motion to dismiss this action based upon grounds of res judicata (claim preclusion) and/or collateral estoppel (issue preclusion).

**A.    Travelers Cannot Legitimately Dispute That 475 Ninth and VJB Construction Corp. Are Additional Insureds Under Its Policy And That Its Coverage Obligations Are Primary To Liberty Mutual's Coverage Obligations**

3.    The instant action concerns whether 475 Ninth and VJB Construction Corp. ("VJB") are additional insureds under a liability policy issued by Travelers to R&J Construction Corp. ("R&J") for an underlying action entitled <u>George Santoli and Stacey Santoli v. 475 Ninth Avenue Associates LLC et al.</u>, Index No. 118596/03, which was brought in the Supreme Court of the State of New York, County of New York (the "Underlying Action").

4.    As set forth herein, notwithstanding Travelers' protestations otherwise, there can be no legitimate dispute that 475 Ninth and VJB are additional insureds under Travelers' policy and are entitled to a primary duty to defend and primary duty to indemnify for the claims alleged in the Underlying Action.  That issue is not the subject of any final determination in any other Court.

5.    The Underlying Action was commenced in 2003.  On or about February 2, 2004, an Amended Verified Complaint was served and filed in the Underlying Action.  A copy of said Amended Verified Complaint is annexed hereto as Exhibit "1".

6.    As alleged in the Amended Verified Complaint, George Santoli's ("Santoli") employer, R&J, was retained to perform certain work at the premises located at 475 Ninth Avenue, New York, New York.  Santoli alleged that "on or about April 2,

2

2003 while acting within the scope of his employment at the construction site as aforesaid,

the plaintiff was caused to fall and sustain" bodily injuries.  (See Exhibit "1".)[1]

       7.     On or about January 9, 2001, R&J entered into a Subcontract with

a Joint Venture between Kajima and VJB (the "Subcontract").  A fully executed copy of

the Subcontract is annexed to Travelers' moving papers as Exhibit "D".

       8.     With respect to insurance, the Subcontract provides, in relevant part,

as follows:

> 17.  [Note: Schedules may need to be specified]  Insurance.
> Subcontractor shall maintain and pay for insurance coverage of
> the types and with the minimum limits set forth in Schedule _
> attached hereto.  Such coverage shall be maintained in form
> and with companies acceptable to Construction Manager,
> Architect, and Owner, and shall, notwithstanding Schedule __,
> meet the applicable requirements imposed under the Contract
> or by any governmental authority having jurisdiction over the
> Work.  Subcontractor shall name all Indemnitees as Additional
> Insureds.

(See Travelers' moving papers, Exhibit "D".)

       9.     A rider entitled "Exhibit B – Subcontractor's Insurance Requirements

– NY" is attached to and part of the Subcontract.  This rider provides, in relevant part, as

follows:

> Subcontractor shall maintain during the progress of the Work,
> and any extended warranty period as required by the Contract
> Documents or by law, insurance with the minimum limits and
> coverage as shown below or, if higher, the requirements set
> forth in the Agreement between the Owner and the
> Contractor.

---

[1] Travelers acknowledges in its motion papers that "Mr. Santoli was injured on April 7, 2003 while working for R&J on the Project."  (See Travelers' Memorandum of Law in Support of its Motion to Dismiss, p. 3.)

\* \* \*

- Owner, Architect and others are additional insured as required in the Contract Documents.  Please include the following as an additional insured:

\* \* \*

♦ VJB Construction Corp. – 200 West 56th St., New York, NY 10019

\* \* \*

♦ 475 Ninth Avenue Associates LLC

\* \* \*

- Other insurance clause to be deleted and insurance is to apply on a primary basis for additional insured.  Rights of subrogation against additional insured are waived and evidence of waiver shall be in a form equivalent in all respects to ISO 1984 form CG 24 04 11 85.

While this rider is included as part of Exhibit "D" to Traveler's moving papers, a separate copy of the five-page rider is annexed hereto as Exhibit "2" for the Court's convenience.

10.    Pursuant to the rider, R&J was required to maintain Commercial General Liability Insurance coverage with "Occurrence Coverage under the Commercial General Liability ISO form" and "Limits not less than . . . $2,000,000 Each Occurrence."  (See Exhibit "2".)

11.    R&J appears to have complied with its insurance obligations under the Subcontract by obtaining a Contractors Liability policy, No. DT-CO-963K2686-TIL-03, from Travelers, with a policy period from January 1, 2003 to January 1, 2004 (the

4

"Travelers Policy"). A copy of the relevant portions of the Travelers Policy is annexed hereto as Exhibit "3".

   12. The Travelers Policy contains the following Insurance Agreement and definitions of the terms "bodily injury" and "occurrence":

  **1.** **Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

     \* \* \*

  "Bodily injury" means bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

     \* \* \*

  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(See Exhibit "3".)

   13. The Travelers Policy contains an endorsement entitled "Blanket Additional Insured (Contractors)." This endorsement provides, in relevant part, as follows:

1.    WHO IS AN INSURED – (Section II) is amended to include any person or organization **you are required to include as an additional insured on this policy by a written contract or written agreement** in effect during this policy period and executed prior to the occurrence of any loss.

2.    The insurance provided to the additional insured is limited as follows:

a)    The person or organization is only an additional insured with respect to liability arising out of "your work" for that additional insured.

\* \* \*

4.    Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis **unless a written contract or agreement specifically requires that this insurance apply on a primary or contributory basis**.  (Emphasis supplied.)

(See Exhibit "3".)

14.    The Travelers Policy defines the term "Your Work" as follows:

"Your work" means:

a.    Work or operations performed by you or on your behalf; and

b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

6

b.    The providing or failure to provide warnings or
instructions.

(See Exhibit "3".)

15.    As discussed above, R&J agreed, via written contract (the

Subcontract) to include both 475 Ninth and VJB as additional insureds on its policy.

Pursuant to the aforementioned "Blanket Additional Insured (Contractors)" endorsement,

which is part of the Travelers Policy, 475 Ninth and VJB are therefore additional insureds.

Since Santoli was injured in the course of his employment on the project with R&J, as

discussed in the accompanying memorandum of law, the liability is deemed to arise from

R&J's work as a matter of law.

16.    Finally, as noted above, the Subcontract provides that R&J's

"insurance is to apply on a primary basis for additional insured." (See Exhibit "2".)  The

"Blanket Additional Insured (Contractors)" endorsement, therefore, provides that

coverage under the Travelers Policy is primary for 475 Ninth and VJB. (See Exhibit "3".)

17.    As Travelers notes in its motion, Liberty Mutual issued a Commercial

General Liability policy, No. DGL-NY-078805-012, with a policy period from January

25, 2002 to July 25, 2003, to VJB (the "Liberty Mutual Policy").  Key excerpts of the

Liberty Mutual Policy are annexed to Travelers' moving papers as Exhibit "C".

18.    The Liberty Mutual Policy contains an "Other Insurance" provision

that provides, in pertinent part, as follows:

**b.    Excess Insurance**

7

This insurance is excess over:

* * *

(2)  Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of any endorsement.

A copy of the key pages from the Liberty Mutual Policy that include this provision is annexed hereto as Exhibit "4".

19.    As set forth in the accompanying memorandum of law, since the Travelers Policy states that it provides primary coverage to the additional insureds, 475 Ninth and VJB, under the circumstances and the Liberty Mutual Policy provides that it applies in excess of the Travelers Policy, the Travelers Policy owes the primary duty to defend and indemnify 475 Ninth and VJB for the Underlying Action and the Liberty Mutual Policy applies in excess of the Travelers Policy.

**B.    The Appeal To The First Department Establishes That The Prior Decisions And Orders Do Not Preclude This Action**

20.    The Orders and Decisions on which Travelers relies were appealed to the Appellate Division, First Department, as reported at Santoli v. 475 Ninth Avenue Assocs., LLC, 38 A.D.3d 411, 833 N.Y.S.2d 40 (1st Dep't 2007).  A copy of this decision is annexed hereto as Exhibit "5".

21.    This decision addressed appeals from the Order in the Underlying Action entered on or about March 17, 2005, the Order entered in the Underlying Action on or about April 28, 2005, the Order entered in the Underlying Action on or

about June 15, 2005, and the Order entered in the Underlying Action on or about

October 5, 2005. (See Exhibit "5".)

      22.    In its decision, the First Department held that the Trial Court

"properly exercised its discretion under CPLR 3126 in declining to vacate the striking of

VJB's answer and third-party complaint." (See Exhibit "5".)  The First Department

specifically held that the misrepresentations of VJB's counsel, both to the Trial Court and

the Appellate Division, justified its ruling.  The First Department thus stated, in relevant

part, as follows:

> **While VJB represents to us, as it did to the IAS court,
> that it produced "site safety plans, including
> certification of attendance sheets, emergency
> notification, daily safety logs, daily permit logs, [and]
> daily safety inspection logs," the pages of the record
> cited in support of this assertion set forth only blank
> forms for such documents, and are devoid of
> information about the particular project and site at
> issue.** Moreover, it is clear from the deposition testimony of
> the witness VJB finally produced on April 5, 2005 (in partial
> compliance with the March 2005 order) that VJB had control
> of such documents-indeed, the VJB witness testified that it
> would have taken only two days to retrieve them. The witness
> (a vice-president) also testified that he had not been requested
> to retrieve any documents in connection with this action, not
> even to be brought to his deposition. **In light of this
> testimony and counsel's blatantly misleading
> representations about the extent of VJB's document
> production, the IAS court properly exercised its
> discretion in finding that VJB's failure to produce such
> documents for more than a year prior to the issuance of
> the April 2005 order was willful and contumacious.**

* * *

9

> At the oral argument of the motion to vacate, which was held on June 9, 2005, the IAS court repeatedly told VJB's counsel, Michael J. Devereaux, Esq., that it would reinstate VJB's pleadings if only Mr. Devereaux would work out a plan to complete discovery with its adversaries and the court's law clerk. **Mr. Devereaux's response was to repeat his assertion-clearly inaccurate**, as discussed above-that VJB had already complied with all of its discovery obligations. Given this recalcitrance in the face of the offer of yet another chance for VJB to cure its by-then 14-month-old default, the court was justified in declining to reinstate VJB's pleadings. (Emphasis supplied.)

(See Exhibit "5".)

23.    Most important, for purposes of this motion, is that the Appellate Division, First Department, did not rule on the coverage issue. It did not address whether VJB and 475 Ninth are additional insureds under the Travelers Policy. Rather, it based its decision solely upon VJB's and its counsel's discovery failures and misrepresentations regarding discovery. The First Department thus concluded as follows:

> Since we are in any event affirming the dismissal of VJB's original third-party complaint-which, to reiterate, was asserted solely by VJB-as a penalty for VJB's contumacious flouting of its discovery obligations, **we dismiss the appeal from the June 2005 order as academic**. (Emphasis supplied.)

(See Exhibit "5".)

24.    Since the determination as to coverage under the Travelers Policy was never addressed on appeal, and the appeal from the June 2005 Order was dismissed as academic, there has been no full and fair opportunity to litigate the coverage issues in the prior proceeding and any determination was not necessary to the ultimate determination. As the Appellate Division held, it was "academic". Therefore, as addressed in the

10

accompanying memorandum of law, neither the June 2005 Order nor the First

Department decision precludes litigation of the coverage issues in this forum.

        25.     Travelers also fails to note that the Appellate Division, First

Department, specifically reinstated the third-party suit brought by 475 Ninth.  The First

Department thus held as follows:

> [S]ince, as previously discussed, the preclusion order
> apparently applied only to VJB, and not to 475 Ninth, we
> modify to reinstate the second third-party complaint solely to
> the extent it is asserted by 475 Ninth, which did not
> previously assert any third-party claims.

(See Exhibit "5".)  As the last line of the appeal decision states, "the second third-party

complaint remains pending insofar as asserted by 475 Ninth."  (See Exhibit "5".)  The

Trial Court did not subsequently rule on 475 Ninth's entitlement to coverage under the

Travelers Policy.

        26.     Finally, as the Appellate Division, First Department, noted, Liberty

Mutual was never a party to the Underlying Action.  The First Department specifically did

not rule on issues regarding Liberty Mutual, stating as follows:

> We note that the remaining entities on whose behalf the
> second third-party complaint was asserted either are no longer
> parties to the action (Kajima and VJB/475) **or never have
> been parties to the action** (K/VJB and **Liberty**).
> (Emphasis supplied.)

(See Exhibit "5".)

        27.     In fact, the Trial Court in its June 9, 2005 Decision and Order in the

Underlying Action, in footnote 2 on page 2, "notes that both the answer and third-party

complaint are made only on behalf of VJB Construction Corp." A copy of the June 9, 2005 Decision and Order is annexed to Travelers' moving papers as Exhibit "K".

28.    Liberty Mutual, thus, was never a party to the Underlying Action and has never had its day in Court.

## C.    The Underlying Settlement Did Not Resolve The Coverage Issues Raised By This Action

29.    Neither Liberty Mutual nor VJB or 475 Ninth released any claims for coverage against Travelers in connection with the settlement of the Underlying Action. Travelers has not, and cannot, point to any document signed by Liberty Mutual, VJB, or 475 Ninth, or their attorneys, releasing or waiving such claims. Travelers cannot point to any statement in open court, on the record, where an attorney on behalf of Liberty Mutual, VJB, or 475 Ninth agreed to release claims against Travelers.

30.    In the Underlying Action, R&J agreed to resolve all claims made by Santoli and his wife against 475 Ninth by paying $750,000 on 475 Ninth's behalf. This settlement was reached without the participation of 475 Ninth or its attorney. 475 Ninth never agreed to waive any rights against Travelers, and it never signed any settlement documents.

31.    While neither 475 Ninth nor Liberty Mutual on its behalf, was required to contribute to this settlement, Liberty Mutual still, nevertheless, had incurred defense costs on 475 Ninth's behalf in the Underlying Action. It is those defense costs, as well as defense costs incurred on behalf of VJB and Travelers' duty to indemnify VJB that are the subject of the instant lawsuit.

12

32.    Since Travelers believed that it owed indemnification to 475 Ninth (as acknowledged by its payment of $750,000 to Santoli to settle the claims against 475 Ninth), then Travelers should have assumed and paid for 475 Ninth's defense. It cannot simply avoid this defense obligation by settling the main case in the Underlying Action on the eve of trial after years of refusing to protect 475 Ninth's interests.

33.    The record in the Underlying Action establishes that the settlement did not include or release the claims asserted by 475 Ninth in the Second Third-Party action against Travelers.

34.    The "Release of All Claims" signed by Santoli and his wife specifically preserved 475 Ninth's rights to pursue recoupment of its defense costs. Thus, it provides, in relevant part, as follows:

> 9.    It is the express intent and understanding of the Releasors and Releasees that any and all rights of indemnity and/or contribution or other derivative claim that any Releasees may have against any persons, firms, or entities shall be preserved by the execution of this release.

A copy of said "Release of All Claims" is annexed hereto as Exhibit "6".

35.    As set forth in the record on November 9, 2007, the settlement related to VJB concerned payment of the sum of $875,000 to resolve Santoli and his wife's claims. Any claims by 475 Ninth and VJB, or their insurer, to recoup any part of the settlement and their defense costs was specifically reserved and was not to be part of the settlement. Only the claims between plaintiffs and 475 Ninth and VJB were to be

13

released.  Thus, Michael Devereaux, then counsel for both 475 Ninth and VJB in the

Underlying Action, specifically stated on the record as follows:

> MR. DEVEREAUX:  Judge, by the way **VJB and all the entities reserved their rights vis-à-vis other entities**.  To the extent they want to collect whatever they want to it has nothing to do with this [,] **this is only vis-à-vis the plaintiff**.  (Emphasis supplied.)

This is shown on page 5 of the transcript of the November 9, 2007 conference.  A copy

of that transcript is annexed to Travelers' moving papers as Exhibit "P".

36.    If Mr. Devereaux's statement was less than clear, VJB's General

Counsel, Howard Rubin, Esq., made the fact that the settlement was limited to the Santoli

and his wife's claims perfectly clear.  On the record at the November 9, 2007 conference,

Mr. Rubin stated as follows:

> MR. RUBIN:  I'm Howard Rubin, from Goetz, Fitzpatrick. I'm the general counsel for VJB Construction Corp.
>
> I've not appeared in this action.  I was asked to come down by defense counsel because of issues between the carrier and I think my client on payment issues not dealing with the plaintiff, that's not really the issues I'm here for. And I just want to make it clear on the record that **VJB is not waiving or compromising any of its claims against any of the parties, except plaintiff of course**, and **reserves the rights to go against parties for contribution for payment of whatever sort and any bad faith claims it may have against the carrier or carriers in this case**. And that's it.
>
> MR. DEVEREAUX:  **He represents [that on behalf of] defendants** VJB Construction Corp., **475 Ninth Associates**, VJB and Kajima Development Corp.  (Emphasis supplied.)

14

This is shown on pages 6-7 of the transcript of the November 9, 2007 conference, a copy of which is annexed to Travelers' moving papers as Exhibit "P".

37.    At that time, when the settlement was placed on the record, no counsel disputed that all claims for coverage, including claims against Travelers, were being preserved.

38.    Travelers, furthermore, ignores that the coverage claims were severed from the Underlying Action by the time of the settlement.  By Order dated October 28, 2004, the Court in the Underlying Action ruled that "the main action shall be severed from the third party action . . . for trial only."  A copy of said Order is annexed hereto as Exhibit "7".

39.    As such, as the caption on the transcripts shows, the third-party action against Travelers was not even before the Court at the time these records were made.

40.    No Judgment has ever been entered with respect to the claims alleged against Travelers in the Underlying Action.

**WHEREFORE**, this Court should deny Travelers motion to dismiss and, based upon the undisputed record, determine that 475 Ninth and VJB are additional insureds under the Travelers Policy and that Travelers owes the primary coverage and the Liberty Mutual Policy applies in excess of the Travelers Policy for the claims alleged in the

Underlying Action, and grant such other and further relief as this Court deems just and proper.

_____

**MARSHALL T. POTASHNER**

Sworn to before me this
22nd day of February, 2008

NOTARY PUBLIC

DAWN MODEST
Notary Public - State of New York
NO. 01MO6133082
Qualified in Nassau County
My Commission Expires 09/06/2009

16

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------x
GEORGE SANTOLI and STACEY SANTOLI,

                                        Index No. 118596/03

                    Plaintiff(s),

        -against-                       *AMENDED*
                                        *VERIFIED COMPLAINT*

475 NINTH AVENUE ASSOCIATES LLC, VJB
CONSTRUCTION 475 9TH AVENUE LLC, VJB
CONSTUCTION CORP., SPIELER & RICCA
ELECTRICAL CO. INC., and
KAJIMA DEVELOPMENT CORPORATION,          /

                    Defendant(s).
-------------------------------------x

        Plaintiffs, GEORGE SANTOLI and STACEY SANTOLI, by his
attorneys, Hach & Rose, L.L.P., complaining of the defendants herein,
respectfully shows to this Court, and allege as follows:

        1.    That at all times hereinafter mentioned the plaintiff(s) were
residents of the town of Marlboro, State of New Jersey.

        2.    That at all times mentioned herein, and on April 2, 2003, the
defendant, 475 NINTH AVENUE ASSOCIATES LLC, is was and has been a
domestic corporation duly organized and existing under and by virtue of
the laws of the State of New York.

        3.    That at all times mentioned herein the defendant, 475 NINTH
AVENUE ASSOCIATES LLC, is, was and has been a domestic partnership and/or
other domestic business entity doing business in the State of New York.

        4.    That at all times mentioned herein, the defendant, 475 NINTH
AVENUE ASSOCIATES LLC, transacted business within the State of New York;
regularly did or solicited business within the State of New York or
engaged in other persistent courses conduct and/or derived substantial

                                3

revenue from goods used or consumed or services rendered in the State of New York and expected or should have reasonably expected its acts to have consequences within the State of New York and/or derived substantial revenue from interstate or international commerce.

5. That at all times mentioned herein, the defendant, 475 NINTH AVENUE ASSOCIATES LLC, was the owner of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

6. That at all times mentioned herein, the defendant, 475 NINTH AVENUE ASSOCIATES LLC, was the agent of the owner of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

7. That at all times mentioned herein, the defendant, 475 NINTH AVENUE ASSOCIATES LLC, was the lessee of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

8. That at all times mentioned herein, the defendant, all times mentioned herein, the defendant, 475 NINTH AVENUE ASSOCIATES LLC, was the lessor of the land and structures thereon commonly known as 475 Ninth Avenue, New York, NY.

9. That at all times mentioned herein, the defendant, 475 NINTH AVENUE ASSOCIATES LLC, operated the premises commonly known as 475 Ninth Avenue, New York, NY.

10. That at all times mentioned herein, the defendant, 475 NINTH AVENUE ASSOCIATES LLC, controlled the premises commonly known as 475 Ninth Avenue, New York, NY.

11. That at all times mentioned herein, the defendant, 475 NINTH AVENUE ASSOCIATES LLC, maintained the premises commonly known as 475 Ninth Avenue, New York, NY.

4

12. That at all times mentioned herein, the defendant, 475 NINTH AVENUE ASSOCIATES LLC, possessed and/or occupied the premises commonly known as 475 Ninth Avenue, New York, NY.

13. That at all times mentioned herein, the defendant, 475 NINTH AVENUE ASSOCIATES LLC, was the managing agent of the premises commonly known as 475 Ninth Avenue, New York, NY.

14. That at all times mentioned herein, the defendant, 475 NINTH AVENUE ASSOCIATES LLC, was the general contractor of the premises commonly known as 475 Ninth Avenue, New York, NY.

15. That on or prior to April 2, 2003, 475 NINTH AVENUE ASSOCIATES LLC, retained plaintiff's employer, to perform certain work, labor and/or services at the premises commonly known as 475 Ninth Avenue, New York, NY.

16. That on or prior to April 2, 2003, a party that 475 NINTH AVENUE ASSOCIATES LLC, had leased the aforementioned premises to had retained plaintiff's employer, to perform certain work, labor and/or services at the premises commonly known as 475 Ninth Avenue, New York, NY.

17. That at all times mentioned herein, and on April 2, 2003, the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, is was and has been a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

18. That at all times mentioned herein the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, is, was and has been a domestic partnership and/or other domestic business entity doing business in the State of New York.

5

19.    That at all times mentioned herein, the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, transacted business within the State of New York; regularly did or solicited business within the State of New York or engaged in other persistent courses conduct and/or derived substantial revenue from goods used or consumed or services rendered in the State of New York and expected or should have reasonably expected its acts to have consequences within the State of New York and/or derived substantial revenue from interstate or international commerce.

20.    That at all times mentioned herein, the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, was the owner of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

21.    That at all times mentioned herein, the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, was the agent of the owner of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

22.    That at all times mentioned herein, the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, was the lessee of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

23.    That at all times mentioned herein, the defendant, all times mentioned herein, the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, was the lessor of the land and structures thereon commonly known as 475 Ninth Avenue, New York, NY.

24.    That at all times mentioned herein, the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, operated the premises commonly known as 475 Ninth Avenue, New York, NY.

25.    That at all times mentioned herein, the defendant, VJB

6

CONSTRUCTION 475 9TH AVENUE LLC, controlled the premises commonly known as 475 Ninth Avenue, New York, NY.

26. That at all times mentioned herein, the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, maintained the premises commonly known as 475 Ninth Avenue, New York, NY.

27. That at all times mentioned herein, the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, possessed and/or occupied the premises commonly known as 475 Ninth Avenue, New York, NY.

28. That at all times mentioned herein, the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, was the managing agent of the premises commonly known as 475 Ninth Avenue, New York, NY.

29. That at all times mentioned herein, the defendant, VJB CONSTRUCTION 475 9TH AVENUE LLC, was the general contractor of the premises commonly known as 475 Ninth Avenue, New York, NY.

30. That on or prior to April 2, 2003, VJB CONSTRUCTION 475 9TH AVENUE LLC, retained plaintiff's employer, to perform certain work, labor and/or services at the premises commonly known as 475 Ninth Avenue, New York, NY.

31. That on or prior to April 2, 2003, a party that VJB CONSTRUCTION 475 9TH AVENUE LLC, had leased the aforementioned premises to had retained plaintiff's employer, to perform certain work, labor and/or services at the premises commonly known as 475 Ninth Avenue, New York, NY.

32. That at all times mentioned herein the defendant, VJB CONSTRUCTION CORP., is, was and has been a domestic partnership and/or other domestic business entity doing business in the State of New York.

7

33. That at all times mentioned herein, the defendant, VJB CONSTRUCTION CORP., transacted business within the State of New York; regularly did or solicited business within the State of New York or engaged in other persistent courses conduct and/or derived substantial revenue from goods used or consumed or services rendered in the State of New York and expected or should have reasonably expected its acts to have consequences within the State of New York and/or derived substantial revenue from interstate or international commerce.

34. That at all times mentioned herein, the defendant, VJB CONSTRUCTION CORP., was the owner of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

35. That at all times mentioned herein, the defendant, VJB CONSTRUCTION CORP., was the agent of the owner of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

36. That at all times mentioned herein, the defendant, VJB CONSTRUCTION CORP., was the lessee of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

37. That at all times mentioned herein, the defendant, all times mentioned herein, the defendant, VJB CONSTRUCTION CORP., was the lessor of the land and structures thereon commonly known as 475 Ninth Avenue, New York, NY.

38. That at all times mentioned herein, the defendant, VJB CONSTRUCTION CORP., operated the premises commonly known as 475 Ninth Avenue, New York, NY.

39. That at all times mentioned herein, the defendant, VJB CONSTRUCTION CORP., controlled the premises commonly known as 475 Ninth

8

Avenue, New York, NY.

40.     That at all times mentioned herein, the defendant, VJB CONSTRUCTION CORP., maintained the premises commonly known as 475 Ninth Avenue, New York, NY.

41.     That at all times mentioned herein, the defendant, VJB CONSTRUCTION CORP., possessed and/or occupied the premises commonly known as 475 Ninth Avenue, New York, NY.

42.     That at all times mentioned herein, the defendant, VJB CONSTRUCTION CORP., was the managing agent of the premises commonly known as 475 Ninth Avenue, New York, NY.

43.     That at all times mentioned herein, the defendant, VJB CONSTRUCTION CORP., was the general contractor of the premises commonly known as 475 Ninth Avenue, New York, NY.

44.     That on or prior to April 2, 2003, VJB CONSTRUCTION CORP., retained plaintiff's employer, to perform certain work, labor and/or services at the premises commonly known as 475 Ninth Avenue, New York, NY.

45.     That on or prior to April 2, 2003, a party that VJB CONSTRUCTION CORP., had leased the aforementioned premises to had retained plaintiff's employer, to perform certain work, labor and/or services at the premises commonly known as 475 Ninth Avenue, New York, NY.

46.     That at all times mentioned herein the defendant, SPIELER & RICCA ELECTRICAL CO. INC., is, was and has been a domestic partnership and/or other domestic business entity doing business in the State of New York.

9

47. That at all times mentioned herein, the defendant, SPIELER & RICCA ELECTRICAL CO. INC., transacted business within the State of New York; regularly did or solicited business within the State of New York or engaged in other persistent courses conduct and/or derived substantial revenue from goods used or consumed or services rendered in the State of New York and expected or should have reasonably expected its acts to have consequences within the State of New York and/or derived substantial revenue from interstate or international commerce.

48. That at all times mentioned herein, the defendant, SPIELER & RICCA ELECTRICAL CO. INC., was the owner of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

49. That at all times mentioned herein, the defendant, SPIELER & RICCA ELECTRICAL CO. INC., was the agent of the owner of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

50. That at all times mentioned herein, the defendant, SPIELER & RICCA ELECTRICAL CO. INC., was the lessee of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

51. That at all times mentioned herein, the defendant, all times mentioned herein, the defendant, SPIELER & RICCA ELECTRICAL CO. INC., was the lessor of the land and structures thereon commonly known as 475 Ninth Avenue, New York, NY.

52. That at all times mentioned herein, the defendant, SPIELER & RICCA ELECTRICAL CO. INC., operated the premises commonly known as 475 Ninth Avenue, New York, NY.

53. That at all times mentioned herein, the defendant, SPIELER & RICCA ELECTRICAL CO. INC., controlled the premises commonly known as 475

10

Ninth Avenue, New York, NY.

54. That at all times mentioned herein, the defendant, SPIELER & RICCA ELECTRICAL CO. INC., maintained the premises commonly known as 475 Ninth Avenue, New York, NY.

55. That at all times mentioned herein, the defendant, SPIELER & RICCA ELECTRICAL CO. INC., possessed and/or occupied the premises commonly known as 475 Ninth Avenue, New York, NY.

56. That at all times mentioned herein, the defendant, SPIELER & RICCA ELECTRICAL CO. INC., was the managing agent of the premises commonly known as 475 Ninth Avenue, New York, NY.

57. That at all times mentioned herein, the defendant, SPIELER & RICCA ELECTRICAL CO. INC., was the general contractor of the premises commonly known as 475 Ninth Avenue, New York, NY.

58. That on or prior to April 2, 2003, SPIELER & RICCA ELECTRICAL CO. INC., retained plaintiff's employer, to perform certain work, labor and/or services at the premises commonly known as 475 Ninth Avenue, New York, NY.

59. That on or prior to April 2, 2003, a party that SPIELER & RICCA ELECTRICAL CO. INC., had leased the aforementioned premises to had retained plaintiff's employer, to perform certain work, labor and/or services at the premises commonly known as 475 Ninth Avenue, New York, NY.

60. That at all times mentioned herein, and on April 2, 2003, the defendant, KAJIMA DEVELOPMENT CORPORATION, is was and has been a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

11

61.   That at all times mentioned herein the defendant, KAJIMA DEVELOPMENT CORPORATION, is, was and has been a domestic partnership and/or other domestic business entity doing business in the State of New York.

62.   That at all times mentioned herein, the defendant, KAJIMA DEVELOPMENT CORPORATION, transacted business within the State of New York; regularly did or solicited business within the State of New York or engaged in other persistent courses conduct and/or derived substantial revenue from goods used or consumed or services rendered in the State of New York and expected or should have reasonably expected its acts to have consequences within the State of New York and/or derived substantial revenue from interstate or international commerce.

63.   That at all times mentioned herein, the defendant, KAJIMA DEVELOPMENT CORPORATION, was the owner of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

64.   That at all times mentioned herein, the defendant, KAJIMA DEVELOPMENT CORPORATION, was the agent of the owner of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

65.   That at all times mentioned herein, the defendant, KAJIMA DEVELOPMENT CORPORATION, was the lessee of the land and structures thereon, commonly known as 475 Ninth Avenue, New York, NY.

66.   That at all times mentioned herein, the defendant, all times mentioned herein, the defendant, KAJIMA DEVELOPMENT CORPORATION, was the lessor of the land and structures thereon commonly known as 475 Ninth Avenue, New York, NY.

67.   That at all times mentioned herein, the defendant, KAJIMA

DEVELOPMENT CORPORATION, operated the premises commonly known as 475 Ninth Avenue, New York, NY.

68.     That at all times mentioned herein, the defendant, KAJIMA DEVELOPMENT CORPORATION, controlled the premises commonly known as 475 Ninth Avenue, New York, NY.

69.     That at all times mentioned herein, the defendant, KAJIMA DEVELOPMENT CORPORATION, maintained the premises commonly known as 475 Ninth Avenue, New York, NY.

70.     That at all times mentioned herein, the defendant, KAJIMA DEVELOPMENT CORPORATION, possessed and/or occupied the premises commonly known as 475 Ninth Avenue, New York, NY.

71.     That at all times mentioned herein, the defendant, KAJIMA DEVELOPMENT CORPORATION, was the managing agent of the premises commonly known as 475 Ninth Avenue, New York, NY.

72.     That at all times mentioned herein, the defendant, KAJIMA DEVELOPMENT CORPORATION, was the general contractor of the premises commonly known as 475 Ninth Avenue, New York, NY.

73.     That on or prior to April 2, 2003, KAJIMA DEVELOPMENT CORPORATION, retained plaintiff's employer, to perform certain work, labor and/or services at the premises commonly known as 475 Ninth Avenue, New York, NY.

74.     That on or prior to April 2, 2003, a party that KAJIMA DEVELOPMENT CORPORATION, had leased the aforementioned premises to had retained plaintiff's employer, to perform certain work, labor and/or services at the premises commonly known as 475 Ninth Avenue, New York, NY.

13

75.　That at all times mentioned herein the plaintiff, GEORGE
SANTOLI, was employed and was performing his work at the construction
site as aforesaid, at 475 Ninth Avenue, New York, NY.

76.　That on or about, April 2, 2003 while acting within the scope
of his employment at the construction site as aforesaid, the plaintiff
was caused to fall and sustain the injuries as set forth more fully
below. '

77.　That the above occurrence was caused solely by and through the
negligence of the defendants herein, without any negligence on the part
of the plaintiff contributing thereto.

78.　That the defendants, and/or each of them had both actual and
constructive notice of the dangerous and defective conditions and
practices complained of herein.

79.　Plaintiff asserts an exemption from the abolition of joint and
several liability pursuant to Article 16 of the C.P.L.R.

80.　That the defendants, and/or each of them, and/or their agents,
servants, associates and/or employees were negligent, careless and
reckless, in that they:

a)　Negligently, carelessly and recklessly, failed and
omitted to properly construct, shore, equip, guard, arrange, operate and
conduct the construction activities at the construction site as
aforesaid, so as to provide reasonable and adequate protection and safety
to the persons so employed therein, and more particularly to the
plaintiff herein;

b)　Failed and omitted to provide the plaintiff with a safe
place to work and negligently maintained and separated a ladder at the

14

subject location;

c) Failed and omitted to provide the plaintiff and the workers at the construction site thereat, with adequate, ample and proper scaffolding and ladders so as to perform their labor;

d) Failed and omitted to insure that the working areas within the premises of the construction site as aforesaid were kept free of hazardous conditions and debris;

e) Failed and omitted to provide the plaintiff with a safety belt;

f) Failed and omitted to provide the plaintiff with a hardhat;

g) Failed and omitted to properly inspect the construction site as aforesaid;

h) Failed and omitted to properly and adequately coordinate the construction activities at the construction site as aforesaid so as to prevent the various trades from interfering with one another;

i) Failed and omitted to construct and/or install barricades and/or other warnings so as to apprise workers, and more particularly the plaintiff herein, of the dangerous conditions existing thereat;

j) Failed and omitted to comply with Section 240 of the Labor Law of the State of New York;

k) Failed and omitted to comply with Section 241 of the Labor Law of the State of New York;

l) Failed and omitted to comply with Section 241-a of the Labor Law of the State of New York;

m) Failed and omitted to comply with Section 200 of the

15

Labor Law of the State of New York;

n)    Failed and omitted to comply with Rule 23 of the Industrial Code;

o)    Failed and omitted to properly secure the work area so that plaintiff could perform his labor in a safe environment;

p)    Failed and omitted to keep the work areas free of debris and other material;

q)    Failed and omitted to provide the Plaintiff with the proper and necessary equipment to perform his job;

r)    Failed and omitted to provide the Plaintiff with adequate hoists or other lifting equipment.

81.   That as a result of the negligence of the defendants, and/or each of them, the plaintiff, GEORGE SANTOLI, became, still is and for a long time to come, will be sick, sore, lame, bruised, injured, disabled and wounded in and about the various parts of her head, limbs, body, blood vessels and surrounding tissues, and has suffered severe and extreme mental shock, anguish and psychic injuries, and that plaintiff was otherwise injured, and upon information and belief, said injuries are permanent. That by reason of the foregoing, the plaintiff was obligated to and did necessarily employ medical aid, hospital services, medicinals and medical supplies in an attempt to cure the aforesaid injuries, and has been prevented from his/her usual duties and will be so prevented for a long time to come.

82.   That by reason of the foregoing, the plaintiff, GEORGE SANTOLI, has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

16

AS AND FOR A SECOND CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF, GEORGE SANTOLI
BASED UPON A THEORY OF STATUTORY LIABILITY:

83.   That the plaintiff, GEORGE SANTOLI, repeats, reiterates and
realleges each and every allegation of the complaint in paragraphs
numbered "1" through "82", with the same force and effect as though each
and every allegation were set forth more fully herein at length below.

84.   That at all times mentioned herein, and on April 2, 2003,
Section 200 of the Labor law of the State of New York was in full force
and effect.

85.   That at all times mentioned herein, and on April 2, 2003, the
defendants, and/or each of them were subject to the provisions of the
statute as cited herein above.

86.   That on or about, April 2, 2003, the defendants, and/or each
of them were in violation of the Statute as cited as herein above.

87.   That as a result of the statutory violation as cited herein
above, the plaintiff, GEORGE SANTOLI, was caused to sustain the injuries
as set forth herein above.

88.   That as a result of the foregoing the plaintiff, GEORGE
SANTOLI, has been damaged in the sum of TWO MILLION ($2,000,000.00)
DOLLARS.

AS AND FOR A THIRD CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF, GEORGE SANTOLI
BASED UPON A THEORY OF STATUTORY LIABILITY:

89.   That the plaintiff, repeats, reiterates and realleges each and
every allegation of the complaint in paragraphs numbered "1" through
"88", with the same force and effect as though each and every allegation

17

were set forth more fully herein at length below.

90.   That at all times mentioned herein, and on April 2, 2003, Section 241 of the Labor law of the State of New York was in full force and effect.

91.   That at all times mentioned herein, and on April 2, 2003, the defendants, and/or each of them were subject to the provisions of the statute as cited herein above.

92.   That on or about, April 2, 2003, the defendants, and/or each of them were in violation of the Statute as cited as herein above.

93.   That as a result of the statutory violation as cited herein above, the plaintiff, GEORGE SANTOLI, was caused to sustain the injuries as set forth herein above.

94.   That as a result of the foregoing the plaintiff, GEORGE SANTOLI, has been damaged in the sum of TWO MILLION ($2,000,000.00) DOLLARS.

### AS AND FOR A FOURTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF, GEORGE SANTOLI
### BASED UPON A THEORY OF STATUTORY LIABILITY:

95.   That the plaintiff, GEORGE SANTOLI, repeats, reiterates and realleges each and every allegation of the complaint in paragraphs numbered "1" through "94", with the same force and effect as though each and every allegation were set forth more fully herein at length below.

96.   That at all times mentioned herein, and on April 2, 2003, Section 240 of the Labor law of the State of New York was in full force and effect.

97.   That at all times mentioned herein, and on April 2, 2003, the

18

defendants, and/or each of them were subject to the provisions of the statute as cited herein above.

98.    That on or about, April 2, 2003, the defendants, and/or each of them were in violation of the Statute as cited as herein above.

99.    That as a result of the statutory violation as cited herein above, the plaintiff, GEORGE SANTOLI, was caused to sustain the injuries as set forth herein above.

100.    That as a result of the foregoing the plaintiff, GEORGE SANTOLI, has been damaged in the sum of TWO MILLION ($2,000,000.00) DOLLARS.

### AS AND FOR A FIFTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF, STACEY SANTOLI

101.    That the Plaintiff, STACEY SANTOLI repeats, reiterates and realleges each and every allegation of the complaint in paragraphs numbered "1" through "100", with the same force and effect as though each and every allegation were set forth more fully herein at length below;

102.    That at all times hereinafter mentioned, Plaintiff, STACEY SANTOLI was the lawful spouse of the Plaintiff, GEORGE SANTOLI and as such said Plaintiff, STACEY SANTOLI was entitled to the society, services and consortium of the said Plaintiff;

103.    By reason of the afore-described negligence of the Defendants, their agents, servants and/or employees, the Plaintiff, STACEY SANTOLI was deprived of the aforesaid society, services and consortium of the Plaintiff, GEORGE SANTOLI and shall forever be deprived of said society, services and consortium;

19

104. That by reason of the foregoing negligence on the part of the Defendants, the Plaintiff STACEY SANTOLI has been damaged in a sum exceeding FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS, together with the costs and disbursements of this action.

WHEREFORE, the plaintiff, GEORGE SANTOLI, demands judgment against the defendant(s), 475 NINTH AVENUE ASSOCIATES LLC, VJB CONSTRUCTION 475 9TH AVENUE LLC, VJB CONSTRUCTION CORP., SPIELER & RICCA ELECTRICAL CO. INC., and KAJIMA DEVELOPMENT CORPORATION in the amount of FIVE MILLION ($5,000,000.00) DOLLARS, on the First Cause of Action;

WHEREFORE, the plaintiff, GEORGE SANTOLI, demands judgment against the defendant(s), 475 NINTH AVENUE ASSOCIATES LLC, VJB CONSTRUCTION 475 9TH AVENUE LLC, VJB CONSTRUCTION CORP., SPIELER & RICCA ELECTRICAL CO. INC., and KAJIMA DEVELOPMENT CORPORATION in the amount of TWO MILLION ($2,000,000.00) DOLLARS, on the Second Cause of Action;

WHEREFORE, the plaintiff, GEORGE SANTOLI, demands judgment against the defendant(s), 475 NINTH AVENUE ASSOCIATES LLC, VJB CONSTRUCTION 475 9TH AVENUE LLC, VJB CONSTRUCTION CORP., SPIELER & RICCA ELECTRICAL CO. INC., and KAJIMA DEVELOPMENT CORPORATION in the amount of TWO MILLION ($2,000,000.00) DOLLARS, and/or each of them in the amount of TWO MILLION ($2,000,000.00) DOLLARS, on the Third Cause of Action;

WHEREFORE, the plaintiff GEORGE SANTOLI, demands judgment against the defendant(s), 475 NINTH AVENUE ASSOCIATES LLC, VJB CONSTRUCTION 475 9TH AVENUE LLC, VJB CONSTRUCTION CORP., SPIELER & RICCA ELECTRICAL CO. INC., and KAJIMA DEVELOPMENT CORPORATION in the amount of TWO MILLION ($2,000,000.00) DOLLARS, on the Fourth Cause of Action.

20

WHEREFORE, the plaintiff STACEY SANTOLI, demands judgment against the defendant(s), 475 NINTH AVENUE ASSOCIATES LLC, VJB CONSTRUCTION 475 9TH AVENUE LLC, VJB CONSTRUCTION CORP., SPIELER & RICCA ELECTRICAL CO. INC., and KAJIMA DEVELOPMENT CORPORATION in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS, on the Fifth Cause of Action.

Dated:     New York, New York
           February 2, 2004

                          Yours, etc.,

                          Michael A. Rose
                          Hach & Rose, LLP
                          185 Madison Avenue, 8th Floor
                          New York, NY  10016
                          (212)779-0057

21

STATE OF NEW YORK    }
                     }  ss.
COUNTY OF NEW YORK   }

Michael A. Rose, being duly sworn, deposes and says:

That deponent is a member with HACH & ROSE, L.L.P., attorneys for the plaintiff in the within action; that the deponent has read the foregoing **SUPPLEMENTAL SUMMONS AND AMENDED COMPLAINT** and knows the contents thereof; that the same is true to deponents knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters deponent believes it to be true and the reasons that this verification is not made by the plaintiff and is made by deponent is that plaintiff does not reside in the county where the attorney for the plaintiff have their office.

Deponent further says that the source of deponent's information and the grounds of deponent's beliefs as to all matters not stated upon deponent's knowledge are from investigation made on behalf of said plaintiff.

DATED:     NEW YORK, NEW YORK
           February 2, 2004

                                                    Michael A. Rose

# EXHIBIT 2

## EXHIBIT B
### SUBCONTRACTOR'S INSURANCE REQUIREMENTS - NY

Subcontractor shall maintain during the progress of the Work, and any extended warranty period as required by the Contract Documents or by law, insurance with the minimum limits and coverage as shown below or, if higher, the requirements set forth in the Agreement between the Owner and the Contractor. The insurance coverage and limits that are required in this exhibit shall not limit the subcontractor's liability in any way

A)    *Workers' Compensation Insurance* with the following features:

- Workers' Compensation including Occupational Disease meeting the statutory requirements of the State in which the work is to be performed.

- Other States Endorsement providing coverage for all states.

- Employers' Liability with policy limits of $500,000/accident/employee. Limits also apply when work performed in monopolistic states.

- Waiver of rights of subrogation against Contractor except as prohibited by the applicable laws of the state.

- Alternate Employer Endorsement (NCCI form #WC 00 03 01 A) naming Contractor as Alternate Employer if Subcontractor is an employee leasing firm or will supply equipment with operator.

B)    *Commercial General Liability Insurance* with the following features:

- Occurrence Coverage under the Commercial General Liability ISO form.

- Limits not less than  
  | | | |
  |---|---|---|
  | $2,000,000 | General Aggregate/Per Project | |
  | $2,000,000 | products/completed operations aggregate | |
  | $2,000,000 | Each Occurrence | |
  | $1,000,000 | personal injury & advertising injury | |
  | $ 5,000 | Medical Expense | |
  | $ 250,000 | (Any one Fire) | |
  | $2,000,000 | environmental (Subcontractors involved in environmental remediation only) | |

- All named Additional Insured shall be named additional insured in a form equivalent in all respects to ISO 1992 form CG 2010. <u>Copies of policy additional insured endorsements must be provided with the certificate of insurance prior to mobilization on the site.</u>

- Owner, Architect and others are additional insured as required in the Contract Documents. Please include the following as an additional insured:


«Company»
«Contract_No»

- Kajima Construction/VJB LLC

- VJB Construction Corp. – 200 West 56th St., New York, NY 10019

- Kajima International and all its subsidiaries (Kajima Construction Services Inc., Kajima Associates Inc., Kajima Associates/Architects, A Professional Corporation).

- 475 Ninth Avenue Associates LLC

- Dermot Meridian LLC; Dermot Property Associates LP; Dermot Capital Company LLC; The Dermot Company Inc.; Meridian Realty Partners LLC; Stephen N. Benjamin; William P. Dickey – P.O. Box 2309 Del Mar, CA 92014-1609

- Mercantile-Safe Deposit and Trust Company, in its capacity as trustee of the AFL-CIO Building Investment Trust and not in its corporate capacity. – Institutional Real Estate Eighth Floor Two Hopkins Plaza, Baltimore, MD 21201 Attn: Mr. William White

- First Union National Bank and It's Successors And/Or Assigns – 12 East 49th St. 37th Fl., New York, NY 10017

- New York City Housing Development Corporation And It's Successors And/Or Assigns – 110 William St., 10th Fl., New York, NY 10038

- Fleet National Bank, As Administrative Agent And It's Successors And/Or Assigns - 1133 Avenue of Americas, New York, NY 10036

- Key Bank National Association

- H. Thomas O'Hara Architect and Gorton Associates Inc.

- The Port Authority of New York & New Jersey, General Manager, Risk Management – 241 Erie St., Rm 301, Jersey City, NJ 07310

- The City of New York, The Department of Transportation, Bureau of Permit Management – 40 Worth St., New York, NY 10013

- New York City Department of Buildings, Borough of Manhattan – 60 Hudson St., New York, NY 10003

- Other insurance clause to be deleted and insurance is to apply on a primary basis for additional insured. Rights of subrogation against additional insured are waived and evidence of waiver shall be in a form equivalent in all respects to ISO 1984 form CG 24 04 11 85. A copy of the policy endorsement for waiver of subrogation must be submitted with the insurance certificate prior to mobilization on the site.

Insurance carried by the additional insured shall be non-contributory and will apply excess of the subcontractor's insurance for the additional insured only.

- Coverage includes but is not limited to: premises/operations, underground explosion & collapse, products/completed operations, contractual liability, independent contractors, broad form property damage, personal injury, elevators.

- Products/Completed operations coverage must be maintained for a period of two years after final completion of the project or for such longer period of time as is described in the Contract. Subcontractor shall furnish Contractor with certificate of insurance annually during this period.

C)    **Commercial Automobile Liability Insurance** with the following features:

- Occurrence basis covering all owned, non-owned and hired autos.

- Minimum combined single limit of $1,000,000 per occurrence for bodily injury, including death, and property damage.

D)    **Umbrella and Excess Liability Insurance** with the following features:

- Provides excess coverage for Employers Liability, Commercial General Liability, and Auto Liability, with the same features as A, B, and C above;

- Limits not less than:

  - Excavation Subcontractors:              $5,000,000
  - Concrete Subcontractors:                $5,000,000
  - Curtain wall Subcontractors             $5,000,000
  - Electrical Subcontractors:              $5,000,000
  - Mechanical/HVAC Subcontractors:         $5,000,000
  - Plumbing Subcontractors.                $5,000,000
  - Framing & Steel Subcontractors:         $5,000,000
  - Elevator Subcontractors:                $5,000,000
  - Super Structure Concrete                $10,000,000
  - All Other Subcontractors                $2,000,000
  - Environmental Remediation               $8,000,000

E)    **Certificates of Insurance and Endorsements**

- **Prior to mobilization at the job site, a Certificate of Insurance and a copy of the Additional Insured Endorsement on forms acceptable to Contractor must be delivered to Contractor stating that coverage will not be altered, canceled or allowed to expire without (30) days written notice by registered mail to Contractor.** Language in the Certificate of Insurance making the carrier's obligation to advise Contractor of the forgoing requirements discretionary will be removed and



the words "endeavor to" shall be stricken. Insurance companies listed on the certificate must have an A.M. Best Rating of A or better.

- Failure to obtain a Certificate of Insurance prior to the commencement of work shall not be deemed to be a waiver of Contractor's right to enforce this paragraph or subcontractor's obligation to comply with this paragraph.

- If any of the above coverages are subject to or are in excess of any deductibles or self-retention, these amounts must be stated on the Certificate, and said deductibles and self-retention will be the sole responsibility of Subcontractor.

- It is understood and agreed that authorization is hereby granted to Contractor to withhold payments to Subcontractor until a properly executed Certificate of Insurance as required above is delivered to Contractor accompanied by a signed subcontract or purchase order.

F) **Sub-subcontractor Insurance Requirements**

Subcontractor shall obtain equivalent insurance coverage from each of its sub-subcontractors or suppliers prior to their commencement of work. Insurance requirements set forth herein shall become and be part of any purchase order or subcontract issued by Subcontractor as though fully set forth in said purchase order or subcontract.

G) **Property Insurance**

Contractor may furnish, erect or provide equipment, appurtenances and devices, motorized or otherwise, for its use to complete its Contract with Owner. Should Subcontractor use such items, Subcontractor shall provide:

- Insurance on a replacement cost basis for damage to the items. Such insurance shall include a provision for a waiver of subrogation in favor of Contractor. Insurance shall be on a primary basis. Contractor's insurance shall be non-contributory.

- Insurance against any claim of injury (including death) or damage arising out of the use of or existence of said items while in the care, custody or control of the Subcontractor. Limits of liability, and other provisions, shall not be less than as stated in B) above.

Subcontractor shall carry all-risk property insurance sufficient to cover any loss or damage to equipment, tools and other property owned or leased by the Subcontractor. The insurance shall contain a waiver of subrogation against the Contractor and the Owner

H) If Subcontractor or its sub-subcontractor performs design services, the Subcontractor will purchase and maintain or require its sub-subcontractor to purchase and maintain professional liability insurance with limits of at least $1,000,000 and with the following

«Company»
«Contract_No»

coverages, punitive damages (where not prohibited by law), limited contractual liability, retroactive date prior to work, extended reporting period of 36 months. A certificate of insurance must be submitted as per E) above.

I)    Should Subcontractor fail or neglect to provide the required insurance, Contractor shall have the right, but not the duty, to provide such insurance and deduct from any money that may be due or become due to Subcontractor any and all premiums paid by contractor for and on account of said insurance.

# EXHIBIT 3

One Tower Square, Hartford, Connecticut 06183

**Travelers**Property Casualty
A Member of Travelers Group

CONTRACTORS
COMMON POLICY DECLARATIONS
ISSUE DATE: 01/22/03

POLICY NUMBER: DT-CO-963K2686-TIL-03

1. NAMED INSURED AND MAILING ADDRESS:
   R & J CONSTRUCTION, CORP
   R & J DRYWALL FINISHERS, INC.  (AS PER IL T8 00)
   4435 AUSTIN BLVD
   ISLAND PARK, NY 11558

2. POLICY PERIOD:  From 01/01/03 to 01/01/04 12:01 A.M. Standard Time at
   your mailing address.
3. LOCATIONS
   Premises  Bldg.
   Loc. No.  No.  Occupancy            Address

   SEE IL T0 03

4. COVERAGE PARTS FORMING PART OF THIS POLICY AND INSURING COMPANIES:
   COMMERCIAL PROPERTY COV PART DECLARATIONS          CP T0 01 02 94 TIL
   COMMERCIAL GENERAL LIABILITY COV PART DECLARATIONS  CG T0 01 03 94 TIL
   EMPLOYEE BENEFITS LIABILITY COV PART DECLARATIONS   CG T0 09 09 93 TIL
   COMMERCIAL INLAND MARINE COV PART DECLARATIONS      CM T0 01 07 86 TIL

5. NUMBERS OF FORMS AND ENDORSEMENTS
   FORMING A PART OF THIS POLICY:   SEE IL T8 01 10 93

6. SUPPLEMENTAL POLICIES: Each of the following is a separate policy
   containing its complete provisions:
   Policy                    Policy No.                Insuring Company

   DIRECT BILL                    SEE CALCULATION OF PREMIUM
7. PREMIUM SUMMARY:             COMPOSITE RATES ENDORSEMENT
   Provisional Premium   $ 1,013,073
   Due at Inception      $
   Due at Each           $

NAME AND ADDRESS OF AGENT OR BROKER:        COUNTERSIGNED BY:
   ALLIANCEPLUS INC (A0877)
   1050 FRANKLIN AVE
   SUITE 200                          Authorized Representative
   GARDEN CITY, NY 11530              DATE:

IL T0 02 11 89    PAGE 1 OF 2          OFFICE: LONG ISLAND NY



**Travelers**PropertyCasualty
*A Member of TravelersGroup*

TAXES AND SURCHARGES

POLICY NUMBER: DT-CO-963K2686-TIL-03

EFFECTIVE DATE: 01/01/03

ISSUE DATE: 01/22/03

DESCRIPTION                                                   AMOUNT

NEW YORK FIRE INSURANCE FEE                                    40.00

IL TO 02 11 89        PAGE  2 OF  2

OFFICE: LONG ISLAND NY         075
PRODUCER NAME: ALLIANCEPLUS INC                    A0877



TravelersPropertyCasualty
A Member of Travelers Group

## COMMERCIAL INSURANCE

### A Custom Insurance Policy Prepared for:

R & J CONSTRUCTION, CORP
R & J DRYWALL FINISHERS, INC.
4435 AUSTIN BLVD
ISLAND PARK NY 11558

Presented by:  ALLIANCEPLUS INC


TravelersPropertyCasualty
A Member of TravelersGroup

POLICY NUMBER: DT-CO-963K2686-TIL-03

EFFECTIVE DATE: 01-01-03

ISSUE DATE: 01-22-03

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

```
IL T0 02 11 89    COMMON POLICY DECLARATIONS
IL T8 01 10 93    FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS
IL T0 01 12 94    COMMON POLICY CONDITIONS
IL T0 03 04 96    LOCATION SCHEDULE
IL T3 02 07 86    CALCULATION OF PREMIUM-COMPOSITE RATE(S)
IL T8 00          GENERAL PURPOSE ENDORSEMENT
```

COMMERCIAL PROPERTY

```
CP T0 01 02 94    COMMERCIAL PROPERTY DECLARATIONS
CP T0 05 04 94    MORTGAGEE SCHEDULE
CP 03 21 06 95    WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE
CP T0 00 08 92    TABLE OF CONTENTS
CP 00 90 07 88    COMMERCIAL PROPERTY CONDITIONS
CP T1 00 06 95    BUILDING & PERSONAL PROPERTY COV FORM
CP T1 04 06 95    BUSINESS INCOME COV FORM W/EE
CP T1 08 06 95    CAUSES OF LOSS-SPECIAL FORM
CP T3 38 06 95    PROPERTY EXTRA
CP T3 81 11 02    TERRORISM RISK INS ACT 2002 DISCLOSURE
CP 01 33 04 97    NEW YORK CHANGES
```

GENERAL LIABILITY - CONTRACTORS

```
CG T0 01 03 94    COMM'L GENERAL LIABILITY DEC
CG T0 07 09 87    DECLARATIONS PREMIUM SCHEDULE
CG T0 08 07 86    KEY TO DECLARATIONS PREMIUM SCHEDULE
CG T0 66 01 98    TABLE OF CONTENTS-CONTRACTOR COV FORM
GN C0 01 01 98    COMM GENERAL LIAB COV FORM-CONTRACTORS
CG T8 04          GENERAL PURPOSE ENDORSEMENT
CG D1 30 10 95    ADDL INSURED-LESSOR OF LEASED EQUIPMENT
CG D2 03 12 97    AMEND-NON CUMULATION OF EACH OCC
CG D2 10 07 98    BLANKET ADDITIONAL INSURED (CONTRACTOR)
CG D2 11 08 98    DESIGNATED PROJECT(S) GEN AGGR LIMIT
GN C0 39 02 01    AMENDED CONDITIONS
CG 21 54 01 96    EXCL - OPERATION BY A CONSOLIDATED INS
CG 22 79 01 96    EXCLUSION-CONTRACTORS-PROFESSIONAL LIAB
CG A0 07 04 98    EXCL-CONSTRUCT MANAGE ERRORS & OMISSIONS
CG A0 10 04 98    EMPLOYMENT-RELATED PRACTICES EXCLUSION
CG D1 42 01 99    EXCLUSION-DISCRIMINATION
CG D2 04 06 01    EXCL-EXTERIOR INSULATION & FINISH SYSTEM
CG T4 78 02 90    EXCLUSION-ASBESTOS
GN C0 30 01 98    AMEND-POLL EXCL-INCL LTD COV POLL COST
GN C0 42 01 02    EXCLUSION - WAR
CG 01 63 01 96    NY CHANGES-COM GENERAL LIAB COV FORM
```

IL T8 01 10 93                                          PAGE:   1 OF   2



**TravelersPropertyCasualty**
A Member of TravelersGroup

**POLICY NUMBER:** DT-CO-963K2686-TIL-03

**EFFECTIVE DATE:** 01-01-03

**ISSUE DATE:** 01-22-03

GENERAL LIABILITY - CONTRACTORS (CONTINUED)

```
CG 26 21 10 91    NY CHANGES-TRANSFER OF DUTIES
GN C0 45 07 02    AMENDED CONDITION - NEW YORK
CG F2 10 06 01    WEB XTEND - NEW YORK
CG T0 09 09 93    EMPLOYEE BENEFITS LIAB COV PART DEC
CG T0 43 11 88    EMPLOYEE BENEFITS LIAB TABLE OF CONTENTS
CG T1 01 07 86    EMPLOYEE BENEFITS LIABILITY COV FORM
CG T5 30 06 89    AMENDMENT-EBL
CG D0 38 03 95    EXCLUSION-IRC VIOLATIONS
CG T4 85 11 88    ADDITIONAL EXCLUSION-EBL
CG T9 14 09 87    NY-AMENDATORY ENDORSEMENT-EBL
CG 01 04 04 97    NEW YORK CHANGES-PREMIUM AUDIT
CG 26 24 08 92    NY CHANGES-LEGAL ACTION AGAINST US
```

INLAND MARINE

```
CM A0 28 08 96    IMPAK COVERAGE PART DECLARATIONS
CM T3 71 08 96    IM PAK COVERAGE SUMMARY
CM T0 29 08 96    IM PAK COV SCHEDULED PROPERTY SCHEDULE
CM T0 11 01 88    TABLE OF CONTENTS
CM 00 01 06 95    COMMERCIAL INLAND MARINE CONDITIONS
CM T1 43 08 96    IMPAK COVERAGE FORM
CM T3 98 11 02    TERRORISM RISK INS ACT 2002 DISCLOSURE
```

INTERLINE ENDORSEMENTS

```
IL T3 68 11 02    FEDERAL TERRORISM RISK INSURANCE ACT
IL 00 23 04 98    NUCLEAR ENERGY LIABILITY EXCLUSION END
IL 01 83 04 98    NEW YORK CHANGES - FRAUD
IL 02 68 07 00    NY CHANGES-CANCELLATION AND NONRENEWAL
IL T0 11 03 96    LENDERS' CERTIFICATE OF INSURANCE-FORM B
```

IL T8 01 10 93                                        PAGE:    2 OF    2




One Tower Square, Hartford, Connecticut 06183

**Travelers**Property Casualty
A Member of Travelers Group

**COMMERCIAL GENERAL LIABILITY** CONTRACTORS    **POLICY NO.:** DT-CO-963K2686-TIL-03
**COVERAGE PART DECLARATIONS**    **ISSUE DATE:** 01-22-03

**DECLARATIONS PERIOD:** From 01-01-03 to 01-01-04 12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Commercial General Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

1. **COVERAGE AND LIMITS OF INSURANCE:**

| COMMERCIAL GENERAL LIABILITY COVERAGE FORM | LIMITS OF INSURANCE |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $ 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ 2,000,000 |
| Personal & Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Fire Damage Limit (any one fire) | $ 300,000 |
| Medical Expense Limit (any one person) | $ 5,000 |

2. **AUDIT PERIOD:** ANNUAL

3. **FORM OF BUSINESS:** C

4. **NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING PART OF THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.**

## COMMERCIAL GENERAL LIABILITY COVERAGE
## IS SUBJECT TO A GENERAL AGGREGATE LIMIT

CG T0 01 03 94    Page 1 of 1

**TABLE OF CONTENTS**

# COMMERCIAL GENERAL LIABILITY – CONTRACTORS COVERAGE FORM (GN C0 01 01 98)

SECTION I – COVERAGES

Beginning on Page

| | | |
|---|---|---|
| Coverage A –<br>Bodily Injury<br>and Property<br>Damage Liability | Insuring Agreement | 1 |
| | Exclusions | 1 |
| Coverage B –<br>Personal and<br>Advertising<br>Injury Liability | Insuring Agreement | 4 |
| | Exclusions | 5 |
| Coverage C –<br>Medical Payments | Insuring Agreement | 5 |
| | Exclusions | 5 |
| Supplementary Payments | | 6 |

SECTION II – WHO IS AN INSURED ................................................................ 7

SECTION III – LIMITS OF INSURANCE ........................................................... 8

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS ........................ 9
  Bankruptcy ............................................................................................. 9
  Duties in the Event of Occurrence, Claim or Suit ........................................ 9
  Legal Action Against Us ........................................................................... 10
  Other Insurance ...................................................................................... 10
  Premium Audit ........................................................................................ 11
  Representations ...................................................................................... 11
  Separations of Insureds ........................................................................... 11
  Transfer of Rights of Recovery Against Others To Us .................................. 11
  Motor Vehicles Laws ............................................................................... 11
  When We Do Not Renew ........................................................................... 11

SECTION V – DEFINITIONS ........................................................................... 11

CG T0 66 01 98



# COMMERCIAL GENERAL LIABILITY
# COVERAGE FORM – CONTRACTORS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   (2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

a. Expected or Intended Injury

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. Contractual Liability

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   (1) That the insured would have in the absence of the contract or agreement; or

   (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

      (a) Liability to such party for, or for the cost of, that party's defense has also

been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.** Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**d.** Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**e.** Pollution

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraph (a) does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

Subparagraphs (a) and (d) (i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

    Copyright, The Travelers Indemnity Company, 1998

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

f.  Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

g.  Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

h.  Damage to Property

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Tools or equipment loaned to you;

(4) Property on the premises of the insured for the purpose of having operations performed on it by any insured or on behalf of any insured;

(5) Property in the custody of the insured which is to be installed, erected or used in construction by any insured or on behalf of any insured;

(6) That particular part of any property:

(a) On which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(b) That must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6)(b) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

i.  Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.



**j.** Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**k.** Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**l.** Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**3. Additional Coverage – Fire Damage Liability**

**a.** Exclusions c. through l. in 2. Exclusions above do not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner caused by:

**(1)** Fire;

**(2)** Explosion;

**(3)** Lightning;

**(4)** Smoke resulting from such fire, explosion or lightning; or

**(5)** Water.

A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

**b.** This insurance does not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner caused by explosion:

**(1)** Due to the rupture, bursting, or operation of pressure relief devices;

**(2)** Due to rupture or bursting from the expansion or swelling of contents of any building or structure, caused by or resulting from water; or

**(3)** Of steam boilers, steam pipes, steam engines or steam turbines.

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding ad-

    Copyright, The Travelers Indemnity Company, 1998    GN C0 01 01 98



vertising, publishing, broadcasting or tele-casting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

**(5)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**b.** "Advertising injury" arising out of:

**(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality of performance; or

**(3)** The wrong description of the price of goods, products, or services.

**c.** Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying

or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of the premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a



workers compensation or disability benefits law or a similar law.

e.  To a person injured while taking part in athletics.

f.  Included within the "products-completed operations hazard".

g.  Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1.  All expenses we incur.

2.  The cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

5.  All costs taxed against the insured in the "suit".

6.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7.  Interest on that part of any judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.  This insurance applies to such liability assumed by the insured;

c.  The obligation to defend, or the cost of the defense of, that indemnitee has also been assumed by the insured in the same "insured contract";

d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.  The indemnitee:

(1) Agrees in writing to:

(a)  Cooperate with us in the investigation, settlement or defense of the "suit";

(b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c)  Notify every other insurer whose coverage is available to the indemnitee; and

(d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a)  Obtain records and other information related to the "suit"; and

(b)  Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I – COVERAGES), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a.  We have used up the applicable limit of insurance in the payment of judgments or settlements; or

---

      Copyright, The Travelers Indemnity Company, 1998      GN C0 01 01 98




b. Any of the conditions set forth above, or any of the terms of the agreement described in paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if your are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay some-

one else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

   e. The manager or lessor of premises leased to you, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you. However, no manager or lessor of premises leased to you is an insured for:

      (1) Liability arising out of any "occurrence" or offense which takes place after you cease to be a tenant in that premises; or

      (2) Structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessor.

   f. Any state or political subdivision, but only with respect to:

      (1) Operations performed by you or on your behalf for which the state or political subdivision has issued a permit; or



(2) The following hazards for which the state or political subdivision has issued a permit in connection with premises you own, rent or control:

(a) The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners, or decorations and similar exposures.

(b) The construction, erection, or removal of elevators.

(c) The ownership, maintenance, or use of any elevators covered by this insurance.

However, no state or political subdivision is an insured for:

(1) "Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of operations performed for the state or political subdivision; or

(2) "Bodily injury or "property damage" included within the "products-completed operations hazard".

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

5. You are an insured for your interest in a joint venture, limited liability company or partnership which terminated or ended prior to the policy effective date but only to the extent of your interest and only on an excess basis.

No person or organization is an insured with respect to the conduct of any current partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

    Copyright, The Travelers Indemnity Company, 1998

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a.  Damages under Coverage A; and

   b.  Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A. for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, caused by:

   a.  Fire;

   b.  Explosion;

   c.  Lightning;

   d.  Smoke resulting from such fire, explosion or lightning; or

   e.  Water.

   The Fire Damage Limit will apply to all damage proximately caused by the same "occurrence", whether such damage results from fire, explosion, lightning, smoke resulting from such fire, explosion or lightning, or water, or any combination of these.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

   a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. Knowledge of an "occurrence" or an offense by your "employees" shall not, in itself, constitute knowledge to you unless your partners, executive officers, directors, members or insurance manage shall have actually received notice. To the extent possible, notice should include:

      (1)  How, when and where the "occurrence" or offense took place;

      (2)  The names and addresses of any injured persons and witnesses; and

      (3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

   We will not deny coverage based solely on your delay in reporting an "occurrence" or offense unless we are prejudiced by your delay.

   This condition does not apply as respects the specific number of days within which you are required to notify us in writing of the abrupt commencement of a discharge, release or escape of "pollutants" which causes "bodily injury" or "property damage" which may otherwise be covered under this policy.

   b.  If a claim is made or "suit" is brought against any insured, you and any other involved insured must:

      (1)  Immediately record the specifics of the claim or "suit" and the date received, and

      (2)  Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c.  You and any other involved insured must:

      (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2)  Authorize and assist us to obtain records and other information and to obtain a special verdict as to covered and uncovered claims in any lawsuit in which you request our defense and/or indemnification;

      (3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.



### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance or Self-Insurance

If other valid and collectible insurance, including any type of self-insurance such as a deductible or self-insured retention, or other mechanism by which an insured arranges for funding of legal liability, is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a.** Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b.** Excess Insurance

This insurance is excess over any of the other insurance, including any type of self-insurance such as a deductible or self-insured retention, or other mechanism by which an insured arranges for funding of legal liability, whether primary, excess, contingent or on any other basis:

**(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2)** That is insurance for fire, explosion, lightning, smoke resulting from such fire, explosion or lightning or water, for premises rented to you or temporarily occupied by you with permission of the owner;

**(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion f. of Coverage A (Section I).

**(4)** That is valid and collectible insurance available to the insured as an additional insured under any other policy;

**(5)** That is valid and collectible insurance available under a contractor controlled insurance program or owner controlled insurance program, "wrap-up" or other similar insurance program; or

**(6)** That is valid and collectible insurance available to you for your interest in any past partnership, joint venture or limited liability company that is not listed in the Declarations.

When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.** Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each in-

Copyright, The Travelers Indemnity Company, 1998

GN C0 01 01 98



surer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we will need for premium computation, and send us copies at such times as we may request.

### 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us;

c. We have issued this policy in reliance upon your representations; and

d. You represent that you do not know of any losses, claims, or "suits" pending against you that have not already been reported to us.

### 7. Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer of Rights of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or

transfer those rights to us and help us enforce them.

We will not enforce our right of recovery against any person or organization with whom you have waived your rights of subrogation in writing before the time of loss. However, our waiver applies only to the extent required of you by such written contract.

### 9. Motor Vehicle Laws

a. When this Coverage Part is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the Coverage Part for "bodily injury" or "property damage" liability will comply with the provisions of the law to the extent of the coverages and limits of insurance required by that law.

b. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverages required by any motor vehicle insurance law. We will provide the required limits for those coverages.

### 10. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".



3. "Bodily injury" means bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you or temporarily occupied by you with permission of the owner caused by fire, explosion, lightning, smoke resulting from such fire, explosion, or lightning or water is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement;

d. Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(2) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failing to render professional services, including those listed in paragraph (1) above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform



duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     (1) Power cranes, shovels, loaders, diggers or drills; or

     (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     (2) Cherry pickers and similar devices used to raise or lower workers.

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

     (a) Snow removal;

     (b) Road maintenance, but not construction or resurfacing; or

     (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The actual wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of it's owner, landlord or lessor;

   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

     (1) Products that are still in your physical possession; or

     (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

       (a) When all of the work called for in your contract has been completed.



**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Wrap-up" means any agreement or arrangement under which some or all the contractors working on a specific project are insured under one or more policies issued specifically for "bodily injury", "property damage", "personal injury", and "advertising injury" arising out of the project.

**19.** "Your product" means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(1)** You;

**(2)** Others trading under your name; or

**(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**20.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing or failure to provide warnings or instructions.

     Copyright, The Travelers Indemnity Company, 1998     GN C0 01 01 98




COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED (CONTRACTORS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY – CONTRACTORS COVERAGE PART

1. WHO IS AN INSURED – (Section II) is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the occurrence of any loss.

2. The insurance provided to the additional insured is limited as follows:

   a) The person or organization is only an additional insured with respect to liability arising out of "your work" for that additional insured.

   b) In the event that the limits of liability stated in the policy exceed the limits of liability required by the written contract or written agreement, the insurance provided by this endorsement shall be limited to the limits of liability required by the written contract. This endorsement shall not increase the limits stated in Section III – LIMITS OF INSURANCE.

   c) The insurance provided to the additional insured does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of an architect's, engineer's or surveyor's rendering of or failure to render any professional services including:

      I. The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

      II. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

   d) Except when required by written contract or written agreement, the coverage provided to the additional insured by this endorsement does not apply to "bodily injury" or "property damage" arising out of acts or omissions of the additional insured other than in connection with the general supervision of "your work".

   e) This insurance does not apply to "bodily injury" or "property damage" arising out of "your work" included in the "products-completed operations hazard" unless you are required to provide such coverage by written contract or written agreement and then only for the period of time required by the contract and in no event beyond the expiration date of the policy.

3. Subpart (1)(a) of the Pollution exclusion under Paragraph 2., Exclusions of Bodily Injury and Property Damage Liability Coverage (Section I – Coverages) does not apply to you if the "bodily injury" or "property damage" arises out of "your work" performed on premises which are owned or rented by the additional insured at the time "your work" is performed.

4. Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or agreement specifically requires that this insurance apply on a primary or contributory basis.

5. As soon as practicable, each additional insured must give us prompt notice of any "occurrence" which may result in a claim, forward all legal papers to us, cooperate in the defense of any actions, and otherwise comply with policy conditions.

# EXHIBIT 4



**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW INSURANCE LAW AND REGULATIONS.

POLICY NUMBER: DGL-NY-078805-012

RENEWAL OF: NEW

# LIBERTY MUTUAL INSURANCE COMPANY

(A Mutual Insurance Company)

## COMMERCIAL GENERAL LIABILITY DECLARATIONS PAGE

1. NAMED INSURED AND ADDRESS:
   VJB Construction Corp.
   200 West 56th Street
   New York, NY. 10019

THE NAMED INSURED IS: Individual_____ Partnership_____ Corporation__x___ Other_____

2. POLICY PERIOD:  From: 1/25/02                To: 7/25/03
   12:01 A.M. Standard time at the address of the Named Insured shown above.

3. PRODUCERS NAME AND ADDRESS:
   Stewart Smith East, Inc.
   Wall Street Plaza
   88 Pine Street
   New York, NY. 10005

4. LIMITS OF INSURANCE STATED BELOW ARE EXCESS OF THE SELF-INSURED RETENTION

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Products-completed Operations) | $ 2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 |
| BODILY INJURY AND PROPERTY DAMAGE LIABILITY – EACH OCCURRENCE | $ 1,000,000 |
| DAMAGES TO PREMISES RENTED TO YOU LIMIT – EACH OCCURRENCE | $   100,000 |
| PERSONAL AND ADVERTISING INJURY LIMIT – EACH OFFENSE | $ 1,000,000 |
| POLICY AGGREGATE LIMIT | $ N/A |

5. SELF-INSURED RETENTION
   The Self-Insured Retention is $_N/A_____ each Occurrence and each Offense

6. Policy Premium: $350,000_____ Minimum and Deposit.
   Policy Premium is: Flat _____ Adjustable $ 8.75___ per $1000 Based on $40,000,000 Cost of Job

   Taxes:        _____
   Surcharge:    _____

Forms and Endorsements attached ES 207 RG R6 & GL SIR 5001 07/01 (see Declarations Extension Schedule Attached)

In consideration of the payment of premium and in reliance upon statements made in the application, this policy including all endorsements issued herewith shall constitute the contract between the Company and the Named Insured. This policy is valid only if signed below by a duly authorized representative of the company.

_____        _____
Authorized Representative                 Issue Date

GL SIR 5001 (07/01)



**Policy No:** DGL—NY-078805-012

**Insured:** VJB Construction Corp.

## DECLARATION EXTENSION SCHEDULE

Schedule of forms and Endorsements attached at issuance date:

| Number | Name and Form Number | | |
|--------|----------------------|---|---|
| 1. | Designated Construction Projects General Aggregate | GL SIR 5014 | 7/01 |
| 2. | Named Insured Endorsement | GL SIR 5012 | 7/01 |
| 3. | Designated Professional Services- Exclusion | GL SIR 5022 | 7/01 |
| 4. | Premium Computation Endorsement | GL SIR 5006 | 7/01 |
| 5. | Special Conditions for Subcontractors Endorsement | GL SIR 5028 | 7/01 |
| 6. | Total Pollution Exclusion | GL SIR 5017 | 7/01 |
| 7. | Asbestos  Exclusion Endorsement | GL SIR 5003 | 7/01 |
| 8. | Nuclear Energy Liability Exclusion | GL SIR 5004 | 7/01 |
| 9. | Employment-Related Practices Exclusion | GL SIR 5005 | 7/01 |
| 10. | Lead Liability Exclusion | GL SIR 5015 | 7/01 |
| 11. | Mold Exclusion Endorsement | GL SIR 5016 | 7/01 |
| 12. | Limitation of Coverage to Designated Projects | GL SIR 5030 | 7/01 |
| 13. | Medical Payments Exclusion Endorsement | GL SIR 5031 | 7/01 |



NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW INSURANCE LAW AND REGULATIONS.

GL 5000

    **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.  Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a.  Primary Insurance**

    This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b.  Excess Insurance**

    This insurance is excess over:

    (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

        (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work;"

        (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        (d) If the loss arises out of the maintenance or use of aircraft, autos or watercraft to the extent not subject to Exclusion g. of **SECTION I - Coverage A - Bodily Injury and Property Damage Liability.**

    (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of any endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.  **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.  Premium Audit.**

a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b.  Premium shown in this Coverage Part as advance premium is a deposit premium only.  At the close of each audit period we will compute the earned premium for that period.  Audit premiums are due and payable on notice to the first Named Insured.  If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.  Representations.**

By accepting this policy, you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

**7.  Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.  As if each Named Insured were the only Named Insured; and

b.  Separately to each insured against whom claim is made or "suit" is brought.

# EXHIBIT 5

38 A.D.3d 411
38 A.D.3d 411, 833 N.Y.S.2d 40, 2007 N.Y. Slip Op. 02596
**(Cite as: 38 A.D.3d 411)**

**H**Santoli v. 475 Ninth Ave. Associates, LLC
N.Y.A.D. 1 Dept.,2007.

Supreme Court, Appellate Division, First Department,
New York.
George **SANTOLI**, et al., Plaintiffs-Respondents,
v.
475 NINTH AVENUE ASSOCIATES, LLC, et al.,
Defendants-Appellants,
Spieler & Ricca Electrical Co., Inc.,
Defendant-Respondent.
VJB Construction Corp., et al., Third-Party
Plaintiffs-Appellants,
v.
R & J Construction Corp., et al., Third-Party
Defendants-Respondents.
[And a Second Third-Party Action].
March 27, 2007.

**Background:** Carpenter sued general contractor
and property owner for common-law and Labor Law
causes of action for personal injuries allegedly
suffered working on a construction project. General
contractor filed third-party complaint against two
subcontractors and various insurers. The Supreme
Court, New York County, Shirley Werner Kornreich,
J., denied manager's motions for summary judgment
on certain of claims in third-party complaint, granted
motion to strike third-party complaint as discovery
sanction, and denied motions to vacate orders striking
third-party complaint. General contractor appealed.

**Holdings:** The Supreme Court, Appellate
Division, held that:

(1) declining to vacate order striking of general
contractor's answer and third-party complaint was
proper exercise of trial court's discretion;

(2) carpenter had adequately particularized the
alleged injuries and damages in the papers served on
general contractor; and

(3) contractor's appeals from order denying its
motions for summary judgment and granting cross
motions for summary judgment on third-party
complaint were academic.

Affirmed as modified.

West Headnotes

[1] Appeal and Error 30 €—358

30 Appeal and Error
    30VII Transfer of Cause
        30VII(B) Petition or Prayer, Allowance, and
Certificate or Affidavit
            30k358 k. Necessity of Allowance or Leave.
Most Cited Cases
Orders striking general contractor's third-party
complaint as discovery sanction, which were not
issued on motions made on notice, were not
appealable as of right.

[2] Appeal and Error 30 €—876

30 Appeal and Error
    30XVI Review
        30XVI(B) Interlocutory, Collateral, and
Supplementary Proceedings and Questions
            30k876 k. On Appeal from Order Enforcing,
Vacating, or Modifying, or Refusing to Enforce,
Vacate, or Modify Previous Judgment or Order. Most
Cited Cases
Propriety of striking of general contractor's third-party
complaint as discovery sanction was reviewable on
the appeal from order which denied application, made
on notice, to vacate orders striking third-party
complaint.

[3] Pretrial Procedure 307A €—434

307A Pretrial Procedure
    307AII Depositions and Discovery
        307AII(E) Production of Documents and
Things and Entry on Land
            307AII(E)6 Failure to Comply; Sanctions
                307Ak434 k. In General. Most Cited
Cases
Declining to vacate order striking of general
contractor's answer and third-party complaint as
discovery sanction in action filed by injured carpenter
was proper exercise of trial court's discretion, where

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

contractor had failed, for the entire year that had passed since the first preliminary conference order in the case was issued, to produce documents relating to the progress of construction project and condition of the site of the kinds preliminary conference order had specifically directed contractor to produce, manager had control of such documents, and contractor and its counsel made blatantly misleading representations about extent of its document production. McKinney's CPLR 3126.

[4] **Pretrial Procedure 307A** ⛒42

307A Pretrial Procedure
    307AII Depositions and Discovery
        307AII(A) Discovery in General
            307Ak42 k. Sufficiency of Disclosure; Supplementation of Responses. Most Cited Cases
As between his original and supplemental verified bills of particulars, injured carpenter had adequately particularized the alleged injuries and damages in the papers served on general contractor in action alleging common-law and Labor Law claims for personal injuries allegedly suffered working on a construction project.

[5] **Pretrial Procedure 307A** ⛒434

307A Pretrial Procedure
    307AII Depositions and Discovery
        307AII(E) Production of Documents and Things and Entry on Land
            307AII(E)6 Failure to Comply; Sanctions
                307Ak434 k. In General. Most Cited Cases
Even if injured carpenter's complaint had been amended, to add general contractor's joint venture entity, as an additional defendant, the amendment would not have relieved general contractor of the consequences of its violation of conditional preclusion order, requiring it to produce requested documents, which was a determination on the merits.

[6] **Appeal and Error 30** ⛒781(1)

30 Appeal and Error
    30XIII Dismissal, Withdrawal, or Abandonment
        30k779 Grounds for Dismissal
            30k781 Want of Actual Controversy
                30k781(1) k. In General. Most Cited

Cases
General contractor's appeals from order which denied its motions for summary judgment on certain claims in its original third-party complaint and granted cross motions by subcontractors and insurers for summary judgment dismissing third-party complaint were rendered academic by Appellate Division's affirmance of the dismissal of contractor's original third-party complaint as a penalty for its contumacious flouting of its discovery obligations.

**41 Devereaux & Associates, LLP, New York (Michael J. Devereaux of counsel), for appellants.
Shayne, Dachs, Stanisci, Corker & Sauer, Mineola (Jonathan A. Dachs of counsel), for **Santoli** respondents.
O'Connor, O'Connor, Hintz & Deveney, LLP, Melville (Michael T. Reagan of counsel), for Spieler & Ricca Electrical Co., Inc., respondent.
Rutherford & Christie, LLP, New York (Veronica LaValle of counsel), for R & J Construction Corp., respondent.
Lazare Potter Giacovas & Kranjac LLP, New York (Andrew M. Premisler of counsel), for Travelers respondents.
Furey, Kerley, Walsh, Matera & Cinquemani, P.C., Seaford (Lauren B. Bristol of counsel), for Republic Franklin Insurance Company and Utica respondents.

MAZZARELLI, J.P., FRIEDMAN, BUCKLEY, SWEENY, McGUIRE, JJ.

*412 Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered October 5, 2005, which, insofar as appealed from, denied the motions by defendant and third-party plaintiff VJB Construction Corp. (VJB) and defendants 475 Ninth Avenue Associates, LLC (475 Ninth), Kajima Development Corporation (Kajima), VJB Construction 475 Ninth Avenue LLC (VJB/ 475), and Liberty International Underwriters (Liberty) as subrogee of the foregoing, to vacate orders entered herein on or about March 17 and on or about April 28, 2005, and to strike plaintiffs' bill of particulars, and granted the motion by certain third-party defendants to strike the second third-party complaint filed by VJB, 475 Ninth, Kajima, VJB/475, and Liberty as subrogee of the foregoing, unanimously modified, on the law, to deny the motion to strike the second third-party complaint insofar as that pleading is asserted by 475 Ninth, the second third-party complaint reinstated

38 A.D.3d 411

Page 3

38 A.D.3d 411, 833 N.Y.S.2d 40, 2007 N.Y. Slip Op. 02596
**(Cite as: 38 A.D.3d 411)**

solely to that extent, and otherwise affirmed, with costs to respondents against VJB. Appeals from orders, same court and Justice, entered on or about March 17, 2005, which conditionally struck VJB's answer and third-party complaint, and entered on or about April 28, 2005, which struck VJB's answer and third-party complaint, unanimously dismissed, without costs, as taken from orders that are not **42 appealable as of right. Appeal from order, same court and Justice, entered June 15, 2005, which denied VJB's motions for summary judgment on certain of the claims in the third-party complaint, and granted third-party defendants' cross motions for summary judgment dismissing the third-party complaint, unanimously dismissed, without costs, as academic in light of the disposition of the appeal from the order entered October 5, 2005.

The complaint in this action asserts common-law and Labor Law causes of action for personal injuries allegedly suffered by a carpenter while he was working on a construction project. Defendants VJB and Kajima evidently were joint venturers in an entity (nonparty Kajima/VJB Services, LLC [K/VJB] ) that served as construction manager for the project in question; defendant 475 Ninth was the owner. VJB answered the amended verified complaint in March 2004, and served a third-party *413 complaint against two subcontractors and various insurers in or about April 2004.[FN1]

> FN1. As plaintiffs acknowledge on appeal, two of the four named defendants-Kajima and VJB/475 (the latter of which may not exist)-never answered the complaint and, since plaintiffs failed to enter a default judgment against either of these entities within one year, the action must be deemed abandoned as against them (seeCPLR 3215[c] ). The remaining defendant-appellant, 475 Ninth, answered separately from VJB, by different counsel, and did not join in VJB's April 2004 third-party complaint. The record reflects, however, that VJB's counsel subsequently took over 475 Ninth's defense and represents it on the present appeal. K/VJB, the joint venture entity that served as construction manager, was not named as a defendant in any complaint plaintiffs filed with the court. As more fully discussed below, a proposed

further amended complaint plaintiffs circulated in April 2005 would have added K/VJB as a defendant, but plaintiffs never filed that amended complaint, and have disavowed it.

At a preliminary conference held on March 18, 2004, the IAS court issued an order that, inter alia, directed VJB to produce, within 45 days, daily construction logs, safety meeting minutes, progress photos and other construction records for a period of three months up to and including the date of the incident, among other documents. As of the beginning of 2005, VJB still had not produced the aforementioned categories of documents, notwithstanding that two intervening compliance conference orders, issued in June and October of 2004, had directed the parties to complete all outstanding document discovery by stated deadlines. Accordingly, a further order, dated January 13, 2005, directed that all outstanding document discovery be completed by February 4, 2005, and provided that failure to comply with the order's directives would result in a conditional order of preclusion.

A conference was held on March 17, 2005, at which the court determined that VJB still had not complied with its outstanding discovery obligations. Accordingly, the court issued an order dated March 17, 2005 (the March 2005 order), which directed VJB to "respond to *all* discovery requested on or before March 31, 2005, or its answer and 3d [*sic* ] party complaint will be stricken" (emphasis in original).[FN2]

> FN2. Although the March 2005 order is described in subsequent documents as being dated March 18, 2005, the order appears in fact to be dated March 17, 2005, with March 18 being set as the date by which plaintiffs were to serve it on VJB. We note that the March 2005 order separately required VJB to produce a witness for deposition on or before April 8, 2005, with failure to comply with this requirement independently subject to the penalty of the striking of the pleadings. It is undisputed that VJB complied with the deposition prong of the March 2005 order.

On April 28, 2005, yet another compliance conference was held. At the conclusion**43 of this conference, the court issued an *414 order (the April

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

38 A.D.3d 411                                                                                      Page 4
38 A.D.3d 411, 833 N.Y.S.2d 40, 2007 N.Y. Slip Op. 02596
**(Cite as: 38 A.D.3d 411)**

2005 order) striking VJB's answer and third-party complaint based on the following findings:

"[VJB] has not provided any [documentary] discovery after 3/18/05 except: (1) [a document entitled] Compliance with March 18th Court Order dated March 29, 2005; (2) [a document entitled] Amended Compliance with March 18th Court Order dated March 31, 2005; (3) Notice dated March 24, 2005 that Gary C. Wall is no longer employed by Kajima. Upon reading (1) and (2) and taking notice of (3), the Court determines that its order dated 3/18/05 has not been complied with."

The "compliance" documents referenced in the April 2005 order, which are part of the record, do not themselves provide any requested discovery, but, rather, set forth counsel's representation, based on VJB's prior discovery responses, that VJB had already "responded to each and every discovery demand and notice served on [it] and therefore complied with the [March 2005 order]."

By order to show cause dated June 3, 2005, VJB, along with the other parties with which it was then jointly represented (475 Ninth, Kajima, K/VJB, VJB/475, and, as subrogee of the foregoing, Liberty), moved to vacate the March 2005 and April 2005 orders and to strike plaintiffs' bill of particulars, among other relief. Also in June 2005, certain third-party defendants moved to dismiss a second third-party complaint that VJB and the aforementioned parties jointly represented with it had filed and served in May 2005. By order entered October 5, 2005 (the October 2005 order), the IAS court denied VJB's motions, and granted the motion to strike the second third-party complaint. VJB, 475 Ninth, Kajima, VJB/475 and Liberty now appeal from the March 2005 order, the April 2005 order, and the October 2005 order.

[1][2] To begin, we note that the March 2005 and April 2005 orders, which were not issued on motions made on notice, are not appealable as of right (*see Postel v. New York Univ. Hosp.*, 262 A.D.2d 40, 41, 691 N.Y.S.2d 468 [1999] ), and the appeals from such orders are therefore dismissed. The propriety of the striking of VJB's pleadings is reviewable, however, on the appeal from the October 2005 order, which denied the application, made on notice, to vacate the March 2005 and April 2005 orders (*id.* at 42, 691 N.Y.S.2d 468).

[3] We conclude that the IAS court properly exercised its discretion under CPLR 3126 in declining to vacate the striking of VJB's answer and third-party complaint. The record establishes that, at the time of the March 17, 2005 conference, VJB had failed, for the entire year that had passed since the first preliminary conference order in the case was issued in March 2004, to produce documents relating to the progress of the project and **\*415** condition of the site of the kinds the March 2004 preliminary conference order had specifically directed VJB to produce-daily construction logs, safety meeting minutes, and progress photos.[FN3] While VJB represents to us, as it did to the IAS court, that it produced "site safety plans, including certification of attendance sheets, emergency notification, daily safety logs, daily permit logs, [and] daily safety inspection logs," the pages of the record cited in support of this assertion set forth only *blank forms* for such documents, and are **\*\*44** devoid of information about the particular project and site at issue. Moreover, it is clear from the deposition testimony of the witness VJB finally produced on April 5, 2005 (in partial compliance with the March 2005 order) that VJB had control of such documents-indeed, the VJB witness testified that it would have taken only two days to retrieve them. The witness (a vice-president) also testified that he had not been requested to retrieve any documents in connection with this action, not even to be brought to his deposition. In light of this testimony and counsel's blatantly misleading representations about the extent of VJB's document production, the IAS court properly exercised its discretion in finding that VJB's failure to produce such documents for more than a year prior to the issuance of the April 2005 order was willful and contumacious (*see Diane v. Ricale Taxi*, 291 A.D.2d 320, 321, 739 N.Y.S.2d 8 [2002] ).

> FN3. We acknowledge, however, that, prior to the issuance of the March 2005 order, VJB had produced certain responsive documents, chiefly subcontracts for the project and insurance materials, although, even in this area, its production apparently was not complete.

We are not persuaded by VJB's argument that the March 2005 and April 2005 orders should have been vacated based on plaintiffs' failure to prove that they served the March 2005 order in accordance with its

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

terms, which required plaintiffs to "serve this order upon VJB by 3/18/05 in hand and by mail." The record does not contain any proof that such service was made, although it does establish that VJB's counsel received the March 2005 order from plaintiffs no later than March 21, 2005.[FN4] At the oral argument of the motion to vacate, which was held on June 9, 2005, the IAS court repeatedly told VJB's counsel, Michael J. Devereaux, Esq., that it would reinstate VJB's pleadings*416 if only Mr. Devereaux would work out a plan to complete discovery with his adversaries and the court's law clerk. Mr. Devereaux's response was to repeat his assertion-clearly inaccurate, as discussed above-that VJB had already complied with all of its discovery obligations. Given this recalcitrance in the face of the offer of yet another chance for VJB to cure its by-then 14-month-old default, the court was justified in declining to reinstate VJB's pleadings.

> FN4. March 21, 2005 is the date of receipt indicated by VJB's counsel's stamp on plaintiffs' notice of entry of the March 2005 order. Given this proof of VJB's receipt of the March 2005 order on March 21, 2005 (10 days before the order's document discovery deadline of March 31), it is clear that VJB would not have been prejudiced by any failure by plaintiffs to serve the order in strict compliance with its terms. We note that plaintiffs' appellate brief contains a representation by their counsel, not supported by record evidence, that the order was timely served by hand on VJB's counsel.

VJB's remaining arguments for reinstatement of its pleadings are also unavailing. Contrary to VJB's argument that its pleadings should not have been stricken as against those parties that had not served any discovery demands upon it, all parties to the action were entitled to expect VJB to comply with discovery obligations that had been incorporated in court orders for a year before the conditional order of preclusion was finally issued. We note that it would have served no purpose for each party to the action to serve a duplicative demand for documents that VJB was already obligated to produce. VJB's contention that the documents it failed to produce were not under its control, but under the control of K/VJB, is both unpreserved, since it was not raised before the IAS court, and thoroughly refuted by the transcript of the deposition of VJB's vice-president, who, to reiterate,

testified that he would have been able to retrieve such documents on two days' notice. The contention that the order for the conditional preclusion of VJB's answer and third-party complaint did not give it notice that its affirmative defenses and cross claims were **45 also at risk is without merit, since cross claims and affirmative defenses are both pleaded in the answer. While VJB accurately states that it complied with the portion of the March 2005 order directing it to produce a witness for deposition by April 8, 2005, such partial compliance does not save VJB from the consequences of its failure to comply with the order's separate and independent directive that it complete document discovery by March 31, 2005 or face preclusion. Similarly without merit are VJB's attempts to excuse its discovery default by pointing to alleged deficiencies in other parties' discovery compliance; its claim that the IAS court struck its pleadings based solely on the unsupported assertions of opposing counsel; and its claim that it was entitled to have a stenographer record the April 28 conference (see *Feuer v. HASC Summer Program*, 247 A.D.2d 429, 430, 668 N.Y.S.2d 700 [1998] ).

We note that the March 2005 order expressly applied only to "VJB, the general contractor," and the subsequent April 2005 order, by its terms, struck the pleadings of "VJB" only, not of all parties represented by the same counsel. Thus, it appears *417 that the answer of 475 Ninth, the owner, was never stricken and remains pending. As previously indicated, plaintiffs acknowledge that, due to their failure to enter a default judgment against Kajima and VJB/475, which never answered the complaint, the action has been abandoned as against those two entities pursuant to CPLR 3215(c).

[4] The October 2005 order is also being appealed to the extent it denied a motion by VJB and the parties jointly represented with it to strike plaintiffs' original and supplemental verified bills of particulars. To the extent the denial of relief regarding plaintiffs' bills of particulars is not rendered academic by our affirmance of the striking of VJB's pleadings, the IAS court properly denied the motion on the ground that plaintiffs have "adequately particularized the alleged injuries and damages" in the papers they have served to date.

[5] This appeal also challenges the portion of the October 2005 order that granted the motion by certain

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

38 A.D.3d 411                                                                                                    Page 6
38 A.D.3d 411, 833 N.Y.S.2d 40, 2007 N.Y. Slip Op. 02596
**(Cite as: 38 A.D.3d 411)**

third-party defendants to strike the second third-party complaint that VJB and the parties jointly represented with it filed and served in May 2005, after VJB's pleadings had been stricken. VJB's pretext for filing a second third-party complaint was plaintiffs' circulation in April 2005 of a proposed further amended complaint adding K/VJB, the joint venture entity, as an additional defendant. However, it is undisputed that plaintiffs merely circulated this proposed complaint among the other parties with a proposed stipulation agreeing to the amendment. The stipulation was never executed, and, as previously indicated, the proposed complaint was never filed, nor did plaintiff ever move for leave to amend. In any event, even if the complaint had been amended, that would not have relieved VJB of the consequences of its violation of the conditional preclusion order, which was a determination on the merits (*see Tejeda v. 750 Gerard Props. Corp.*, 272 A.D.2d 124, 125, 707 N.Y.S.2d 174 [2000] ). However, since, as previously discussed, the preclusion order apparently applied only to VJB, and not to 475 Ninth, we modify to reinstate the second third-party complaint solely to the extent it is asserted by 475 Ninth, which did not previously assert any third-party claims.[FN5] We **46 note that the remaining entities on whose behalf the second third-party complaint was asserted either are no longer parties to the action (Kajima and VJB/475) or never have been parties to the action (K/VJB and Liberty).

> FN5. We note that the second third-party complaint is being reinstated insofar as asserted on behalf of 475 Ninth solely on the ground that the striking of VJB's pleadings apparently does not have a preclusive effect on 475 Ninth. We express no view as to the viability of 475 Ninth's third-party claims on the merits.

[6]*418 Finally, VJB also appeals from an order entered June 15, 2005, which denied its motions for summary judgment on certain of the claims in its original third-party complaint, and granted cross motions by the third-party defendants for summary judgment dismissing the third-party complaint. Since we are in any event affirming the dismissal of VJB's original third-party complaint-which, to reiterate, was asserted solely by VJB-as a penalty for VJB's contumacious flouting of its discovery obligations, we dismiss the appeal from the June 2005 order as

academic. Again, the second third-party complaint remains pending insofar as asserted by 475 Ninth.

N.Y.A.D. 1 Dept.,2007.
Santoli v. 475 Ninth Ave. Associates, LLC
38 A.D.3d 411, 833 N.Y.S.2d 40, 2007 N.Y. Slip Op. 02596

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 6**



rec'd 12/26/07
by ____

# RELEASE OF ALL CLAIMS

For and in consideration of the total sum of SEVEN HUNDRED AND FIFTY THOUSAND DOLLARS ($750,000) payable as follows:

"George Santoli and Stacey Santoli,
Hach & Rose, L.L.P., as attorneys"

as payees, the receipt and sufficiency of which is hereby acknowledged, the undersigned on behalf of the undersigned, and on behalf of all and each of the heirs, executors, administrators, successors, assigns and insurers of the undersigned (hereinafter referred to as "Releasors"), hereby releases and forever discharges 475 Ninth Avenue Associates, LLC and R & J Construction Corp., and all and each of its parent corporations, subsidiaries, affiliates, insurers, officers, directors, agents, employees, successors and assigns, and all other persons, individuals, firms, organizations, corporations, entities, associations or governments and each of them, as well as their attorneys, Rutherford & Christie, LLP, Travelers Property Casualty Company of America, St. Paul Fire & Marine Insurance Company, and any other related or excess insurers of R & J Construction Corp. (hereinafter referred to as "Releasees"), of and from any and all claims, liens, demands, damages, actions and causes of action of every kind, known or unknown, including but not limited to any and all claims for personal injuries arising out of or in any way connected with an incident which occurred on April 2, 2003.

The undersigned hereby certifies that the relationship listed beneath the undersigned's signature is true. In further consideration of the above mentioned sum, the undersigned agrees as follows:

1.     There is a risk that subsequent to the execution of this release the undersigned will incur or suffer personal bodily discomfort, monetary or other loss, death, damages or any of these which are in some way caused by or related to the occurrence referred to above, but which are unknown and unanticipated at the time this release is signed, and further there is a risk that the damages presently known may be or may become more extensive than the undersigned now expects or anticipates.

2.     The undersigned shall assume the above mentioned risks, and this release shall apply to all unknown or unanticipated results of the occurrence described above as well as those known and anticipated, and the undersigned hereby waives any and all rights under any code, statute or law of any state or territory of the United States or of any foreign nation which provides in form or substance that "a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by her must have materially affected his settlement with the debtor."

3.     The above mentioned sum is the entire and only consideration for this release and the undersigned shall be responsible for the payment of the attorneys' fees and expenses and any outstanding medical bills or liens of the undersigned.

4.     It is intended by the undersigned and by Releasees and each of them, that this release shall be complete and shall not be subject to any claim of mistake of fact or law by the undersigned, and that it expresses a full and complete settlement of liability claimed and denied, as against Releasees and, regardless of the adequacy or inadequacy of the amount paid, this release is intended to avoid litigation and to be final and complete.

5.     This release is the result of a compromise of a disputed claim and shall never at any time for any purpose be considered as an admission of liability of the parties hereby released, who continue to deny such liability and to disclaim such responsibility, nor shall this be deemed an admission of coverage under the aforementioned Travelers Property Casualty Company of America and St. Paul Fire & Marine Insurance Company policies.

6.     It is intended by the undersigned and by Releasees and each of them, that this settlement and release shall be and shall remain confidential, and shall not be disclosed without the prior written consent of the undersigned and Releasees and each of them, unless ordered to be disclosed by a court of competent jurisdiction.

7.     A division, if any, of the above mentioned sum between the undersigned and anyone else shall in no way affect the validity of this release.

8.     This settlement is intended to, and Releasors warrant that it will, dispose of all liability of Releasees, and each of them, to Releasors and to any other person or entity that might now or in the future have a claim as a result of the injury to Releasors, including claims between the Releasees themselves. Such claims include, but are not limited to, any and all claims by or on behalf of 475 Ninth Avenue Associates, LLC, VJB Construction 475 9th Avenue LLC, VJB Construction Corp., Kajima Development Corporation, Kajima/VJB Construction Services, LLC and their insurers against Releasees. Should any such further claim be made by any person or entity for which Releasees, or any of them, might be liable, directly or indirectly, Releasors agree to and will hold harmless and indemnify Releasees, and each of them, from any and all liability for such claim or lien, known or unknown, including all costs, expenses and attorneys' fees in defending such claim.

9.     It is the express intent and understanding of the Releasors and Releasees that any and all rights of indemnity and/or contribution or other derivative claim that any Releasees may have against any persons, firms or entities shall be preserved by the execution of this release.



10.    It is also the express intent and understanding of the Releasors and the Releasees that in consideration of said payment and all of the foregoing, Releasors hereby assigns, transfers, sets over and subrogates to Releasees, their successors and assigns, all of Releasors' rights, title and interests in and to any and all such claims of Releasors arising in any manner or associated in any way with the accident described above.

GEORGE SANTOLI

STACEY SANTOLI

State of New York

County of New York                ) ss.

On this 9th day of November 2007, before me, George Santoli Stacey Santoli                , a duly commissioned and sworn Notary Public in and for the above State and County, George Santoli and Stacey Santoli did appear and before me signed the within instrument. I know that each said signer of the within instrument is the person whose name is subscribed.

IN WITNESS WHEREOF, I have hereunto signed my name and affixed my official seal on the date named above.

> **FILOMENA PESCE**
> Notary Public, State of New York
> Registration #01PE6067299
> Qualified in Kings County
> Commission Expires Feb. 18, 2011

NOTARY PUBLIC

I am an attorney licensed to practice law in the State of New York, and have acted as the attorney for Releasors in the matter described above. I hereby represent and declare that I have fully explained the foregoing release to each signing Releasor, who in turn acknowledged to me an understanding of said release and the legal effect thereof.

11/9/07

Date

By: _____

Michael A. Rose
HACH & ROSE, L.L.P.

Federal Tax Identification No.:

74-3026745

# EXHIBIT 7

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____    PART S4
_____
*Justice*

0118596/2003

SANTOLI, GEORGE
vs
475 NINTH AVENUE ASSOCIATES

SEQ 1

SEVER    ACTION

INDEX NO. _____

MOTION DATE 10/28/0Y

MOTION SEQ. NO. _____

MOTION CAL. NO. _____

The following papers, numbered 1 to 4 were read on this motion to/for _Sever the_
_third party action and cross - motion to sever_
_trial_

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | 1, 2, |
| Answering Affidavits — Exhibits _____ | 3 |
| Replying Affidavits _____ | 4 |

Cross-Motion:  ☒ Yes    ☐ No

Upon the foregoing papers, it is ordered that this motion _and cross-motion_
_are denied. The Court denies severance_
_of the third party action but orders_
_that the main action shall be_
_severed from the third_
_action by trial ONLY. The case_
_will proceed as one through_
_discovery. Moreover, the parties are_
_directed to continue with discovery_
_despite the fact that a summary judgment motion_

Dated: _____

_____ J.S.C.

Check one:  ☐ FINAL DISPOSITION    ☒ NON-FINAL DISPOSITION

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):